Robert S. Arns, State Bar No. 65071
rsa@arnslaw.com
Jonathan E. Davis, State Bar No. 191346
jed@arnslaw.com
Kevin M. Osborne, State Bar No. 261367
kmo@arnslaw.com
Julie C. Erickson, State Bar No. 293111
jce@arnslaw.com
THE ARNS LAW FIRM
A Professional Corporation
515 Folsom St., 3rd Floor
San Francisco, CA 94109
Tel: (415) 495-7800
Fax: (415) 495-7888

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| JONATHAN HUSTING, MATTHEW CLAYTON, LADIA ARMSTRONG, STEPHANIE WEIDNER, MARGARET CONNOLLY, MATTHEW PARSONS, SARAH LESTER, NATHAN RAINES, BENJAMIN BOVEN, AMY NOSEK, JAMES RICHIE, and ANDREW KENDRICK, Individually and On Behalf of All Others Similarly Situated Employees, <br><br> Plaintiffs, <br><br> vs. <br><br> MAPLEBEAR, INC., dba INSTACART; AND DOES 1 THROUGH 100, inclusive, <br><br> Defendants. | COLLECTIVE ACTION COMPLAINT [29 U.S.C. §§ 201, *et seq.*] AND CLASS ACTION COMPLAINT [F.R.C.P. 23] FOR DAMAGES AND DECLARATORY JUDGMENT [28 U.S.C. § 2201(a)] |

# INTRODUCTION

Plaintiffs, JONATHAN HUSTING ("HUSTING"), MATTHEW CLAYTON ("CLAYTON"), LADIA ARMSTRONG ("ARMSTRONG"), STEPHANIE WEIDNER ("WEIDNER"), MARGARET CONNOLLY ("CONNOLLY"), MATTHEW PARSONS ("PARSONS"), SARAH LESTER ("LESTER"), NATHAN RAINES ("RAINES"), BENJAMIN BOVEN ("BOVEN"), AMY NOSEK ("NOSEK"), JAMES RICHIE ("RICHIE"), and ANDREW KENDRICK ("KENDRICK"), on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"), bring this class and collective action against Defendants MAPLEBEAR, INC., doing business as INSTACART ("Instacart"), and Does 1 through 100 (collectively "Defendants"), and allege, upon information and belief, except as to their own actions, the investigation of their counsel, and the facts that are a matter of public record, as follows:

1.      Plaintiffs bring this action to obtain damages and restitution, as well as declaratory, injunctive, and other relief, individually and on behalf of the proposed classes defined below ("Classes"), against Instacart, which Plaintiffs contend misclassified them as independent contractors.

2.      Made simple, Instacart is a grocery shopping and delivery service company whose workers shop for groceries from various stores, including Safeway, Whole Foods, and Costco, then deliver them to Instacart customers.

3.      Plaintiffs worked or continue to work as shoppers, drivers and delivery persons for Instacart (collectively, "Shoppers").  Shoppers are dispatched through a mobile phone application to shop, purchase, and deliver groceries to customers at their homes and businesses.

4.      Instacart does not recognize itself as a grocery delivery service, instead calling itself a "technology company that offers a proprietary communications and logistics platform."  In reality, its "platform" assigns customer orders to workers, such as Plaintiffs, just as any dispatcher would assign work orders.  Instacart uses these tech-heavy buzzwords to brand itself as something other than what it really is – a grocery delivery service subject to the same employment laws as any other employer.

5.      In practice, Instacart controlled the "when," "where," and "how" of Plaintiffs' jobs, making them presumptive employees entitled to labor law protections such as minimum wage guarantees, overtime compensation, workers' compensation insurance coverage, payroll tax

contributions, and other employee benefits.   By misclassifying Plaintiffs as independent contractors, however, Instacart denied them these rights, shifting all risk to Plaintiffs and saving itself millions in overhead in the process.

6.     Defendants intentionally misrepresented to Plaintiffs that they were not entitled to wages for non-productive time, reimbursements for expenses incurred in relation to their employment, workers' compensation insurance benefits, and tax benefits enjoyed by employees.

7.     This action asserts causes of action under federal and state law for failure to pay minimum wage and overtime, denial of reimbursements for business-related expenses, denial of meal breaks and rest periods, failure to pay spread and call-in pay, unfair competition, fraud, tortious interference with prospective economic advantage, and conversion.

8.     By misclassifying Plaintiffs and others similarly situated as independent contractors and, in turn, failing to pay them minimum wage and overtime for all time worked, Instacart has violated the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* Plaintiffs assert this claim under the FLSA on behalf of all similarly situated Shoppers in the United States who may choose to opt in to this action pursuant to 29 U.S.C. § 216(b).

9.     Plaintiffs also assert claims for various state law violations pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of the following respective putative classes of similarly situated Instacart Shoppers who have performed work for Instacart in the following states:

   a.  Plaintiffs Husting and Clayton on behalf of a class of all California Instacart Shoppers;

   b.  Plaintiff Armstrong on behalf of a class of all New York Instacart Shoppers;

   c.  Plaintiff Weidner on behalf of a class of all Pennsylvania Instacart Shoppers;

   d.  Plaintiff Connolly on behalf of a class of all Colorado Instacart Shoppers;

   e.  Plaintiff Parsons on behalf of a class of all Illinois Instacart Shoppers;

   f.  Plaintiff Lester on behalf of a class of all Washington Instacart Shoppers;

   g.  Plaintiff Raines on behalf of a class of all Indiana Instacart Shoppers;

   h.  Plaintiff Boven on behalf of a class of all Texas Instacart Shoppers;

   i.  Plaintiff Nosek on behalf of a class of all Georgia Instacart Shoppers;

   j.  Plaintiff Richie on behalf of a class of all Oregon Instacart Shoppers; and

k.  Plaintiff Kendrick on behalf of a class of all Massachusetts Instacart Shoppers.

10.  Plaintiffs seek actual and/or compensatory damages, civil penalties, restitution, equitable relief, costs and expenses of litigation, including attorneys' fees, and all additional and further relief that may be available and that the Court may deem appropriate and just under all of the circumstances.

## JURISDICTION AND VENUE

11.  This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and section 16(b) of the Fair Labor Standards Act ("the FLSA"), 29 U.S.C. § 216(b).

12.  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state wage and hour and associated claims because the claims originate from a common nucleus of operative fact.

13.  CAFA Jurisdiction: This Court also has diversity jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and 1453(b). This action is a class action as defined by 28 U.S.C. §1332(d)(1)(B). The complaint is brought as a "Class Action" and Plaintiffs bring it "individually and on behalf of the proposed classes." ¶ 1.

a.  <u>Minimal Diversity</u>: As alleged herein, Instacart is a Delaware corporation with its principal place of business at 50 Beale Street, San Francisco, CA. ¶ 27.  Additionally, Plaintiffs are residents of eleven different states and the proposed class consists of thousands of workers nationwide.  ¶¶ 8-9, 15-26.  Instacart has previously pled that there were 7,696 individuals who performed grocery delivery work for Instacart between January 2012 and February 2015 alone.  *See* Instacart's Notice of Removal of Class Action to Federal Court, ¶ 8, *Cobarruviaz v. Maplebear, Inc. dba Instacart*, Case No. 3:15-cv-00697-EMC (N.D. Cal. Feb. 13, 2015). This number has undoubtedly increased between February 2015 and the present. This satisfies the requirement of 28 U.S.C. § 1332(d)(5) that the proposed class include at least 100 persons. Further, because at least one Plaintiff is from a state other than California, and Instacart is a citizen of both Delaware and California, the diversity requirement of 28 U.S.C. § 1332(d)(2)(A) is met.

b.  <u>Amount in Controversy Exceeds $5 Million</u>: The amount in controversy in the underlying dispute exceeds $5 million, thus satisfying 28 U.S.C. § 1332(d)(2). Plaintiffs believe there to be more than 14,000 members of the proposed class.  Plaintiffs allege that they and the

proposed class have been regularly denied proper minimum wage and overtime since December 1, 2012. Instacart has previously pled that:

- From July, 2014 through the first week of February, 2015, putative class members worked on-duty for 2,580,054 hours, for which they were compensated. Furthermore, during this time period, there were 2,229 grocery deliverers any given week, working an average of 35 hours a week each.
- Conservatively assuming that for every five hours worked, putative class members were not compensated for one additional "non-productive" hour, potential damages for non-productive hours worked would total $4,644,097.20 from July 2014 through the first week of February, 2015 *alone*.
- Similarly, conservatively assuming that putative class members worked 5 hours of overtime per week for the 33 week period from July, 2014 through the first week of February, 2015, putative class members could be entitled to aggregate damages totaling at least $1,655,032.

*See* Instacart's Notice of Removal of Class Action to Federal Court, ¶¶ 13-15, *Cobarruviaz*, Case No. C-15-cv-00697 (N.D. Cal. Feb. 13, 2015).

In addition to the non-productive time and overtime wages, Plaintiffs also seek expense reimbursement; restitution and disgorgement; various penalties; an order enjoining Instacart from continuing to engage in the alleged conduct described in the Complaint; and other further relief as the Court deems just and proper. Given these requests for relief, the amount in controversy far exceeds $5,000,000 in the aggregate, and this Court has jurisdiction under CAFA.

c.      No Exceptions Apply: None of the exceptions to CAFA jurisdiction are met here. The "home-state" and "local-controversy" exceptions do not apply because less than two thirds of the proposed class is from California. On information and belief, Plaintiffs allege that approximately half of the proposed class members are from California with the other half being from elsewhere in the United States. The other exceptions are inapplicable here.

14.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, inter alia, Defendant Instacart is headquartered in and engages and performs business activities in and throughout San Francisco County. Additionally, many of Defendants' services involve San Francisco County residents, and many of the acts complained of herein occurred in this judicial district.

## PARTIES

15.      Plaintiff Husting is a resident of Fremont, California.  Defendants continuously employed Husting as a Shopper since October 2014.  During the course of his employment by Defendants,

Husting incurred expenses related to his work, including vehicle maintenance, fuel, insurance, and other driving related expenses, for which he was not reimbursed. Husting also regularly worked in excess of eight (8) hours per day or forty (4) hours per week but was not compensated at the required overtime wage rates. Husting regularly was not paid at or above the minimum wage for the applicable jurisdiction for the hours he worked.

16.     Plaintiff Clayton is, and at all times relevant herein was, a resident of Los Angeles, California.  Defendants have continuously employed Clayton as a Shopper since approximately July 2015. During the course of his employment by Defendants, Clayton incurred expenses related to his work, including vehicle maintenance, fuel, insurance, and other driving related expenses, for which he was not reimbursed. Clayton also regularly worked in excess of eight (8) hours per day or forty (4) hours per week but was not compensated at the required overtime wage rates. Clayton was regularly not paid at or above the minimum wage for the applicable jurisdiction for the hours he worked.

17.     Plaintiff Armstrong is a resident of Brooklyn, New York.  Defendants continuously employed Armstrong as a Shopper since October 2015. During the course of her employment by Defendants, Armstrong incurred expenses related to her work, including vehicle maintenance, fuel, insurance, and other driving related expenses, including public transportation fares, for which she was not reimbursed.  Armstrong regularly was not paid at or above the minimum wage for the applicable jurisdiction for the hours she worked.

18.     Plaintiff Weidner is a resident of Philadelphia, Pennsylvania.  Defendants continuously employed Weidner as a Shopper from March 2014 to December 2014. During the course of her employment by Defendants, Weidner incurred expenses related to her work, including vehicle maintenance, fuel, insurance, and other driving related expenses, for which she was not reimbursed.  Weidner also regularly worked in excess of forty (40) hours per week but was not compensated at the required overtime wage rates.  Weidner regularly was not paid at or above the minimum wage for the applicable jurisdiction for the hours she worked.

19.     Plaintiff Connolly is a resident of Boulder, Colorado.  Defendants continuously employed Connolly as a Shopper since August 2014. During the course of her employment by Defendants, Connolly incurred expenses related to her work, including vehicle maintenance, fuel, insurance, and other driving related expenses, for which he was not reimbursed.  Connolly also regularly

worked in excess of forty (40) hours per week but was not compensated at the required overtime wage rates.  Connolly regularly was not paid at or above the minimum wage for the applicable jurisdiction for the hours she worked.

20.     Plaintiff Parsons is a resident of Chicago, Illinois.  Defendants continuously employed Parsons as a Shopper since July 2015. During the course of his employment by Defendants, Parsons incurred expenses related to his work, including vehicle maintenance, fuel, insurance, and other driving related expenses, for which he was not reimbursed.  Parsons also regularly worked in excess of forty (40) hours per week but was not compensated at the required overtime wage rates.  Parsons regularly was not paid at or above the minimum wage for the applicable jurisdiction for the hours he worked.

21.     Plaintiff Lester is a resident of Seattle, Washington.  Defendants continuously employed Lester as a Shopper since November 2015. During the course of her employment by Defendants, Lester incurred expenses related to her work, including vehicle maintenance, fuel, insurance, and other driving related expenses, for which she was not reimbursed.  Lester also regularly worked in excess of forty (40) hours per week but was not compensated at the required overtime wage rates.  Lester regularly was not paid at or above the minimum wage for the applicable jurisdiction for the hours she worked.

22.     Plaintiff Raines is a resident of Indianapolis, Indiana.  Defendants continuously employed Raines as a Shopper since September 2015. During the course of his employment by Defendants, Raines incurred expenses related to his work, including vehicle maintenance, fuel, insurance, and other driving related expenses, for which he was not reimbursed.  Raines also regularly worked in excess of (40) hours per week but was not compensated at the required overtime wage rates.  Raines regularly was not paid at or above the minimum wage for the applicable jurisdiction for the hours he worked.

23.     Plaintiff Boven is a resident of Houston, Texas.  Defendants continuously employed Boven as a Shopper since October 2014. During the course of his employment by Defendants, Boven incurred expenses related to his work, including vehicle maintenance, fuel, insurance, and other driving related expenses, for which he was not reimbursed.  Boven also regularly worked in excess of (40) hours per week but was not compensated at the required overtime wage rates.  Boven regularly was not paid at or above the minimum wage for the applicable jurisdiction for

the hours he worked.

24.     Plaintiff Nosek is a resident of Atlanta, Georgia.  Defendants continuously employed Nosek as a Shopper since September 2014. During the course of her employment by Defendants, Nosek incurred expenses related to her work, including vehicle maintenance, fuel, insurance, and other driving related expenses, for which she was not reimbursed.  Nosek also regularly worked in excess of forty (40) hours per week but was not compensated at the required overtime wage rates.  Nosek regularly was not paid at or above the minimum wage for the applicable jurisdiction for the hours she worked.

25.     Plaintiff Richie is a resident of Portland, Oregon.  Defendants continuously employed Richie as a Shopper since September 2015. During the course of his employment by Defendants, Richie incurred expenses related to his work, including vehicle maintenance, fuel, insurance, and other driving related expenses, for which he was not reimbursed.  Richie also regularly worked in excess of forty (40) hours per week but was not compensated at the required overtime wage rates. Richie regularly was not paid at or above the minimum wage for the applicable jurisdiction for the hours he worked.

26.     Plaintiff Kendrick is a resident of Boston, Massachusetts. Defendants continuously employed Kendrick as a Shopper since September 2015. During the course of his employment by Defendants, Kendrick incurred expenses related to his work, including vehicle maintenance, fuel, insurance, and other driving related expenses, for which he was not reimbursed.  Kendrick also regularly worked in excess of forty (40) hours per week but was not compensated at the required overtime wage rates.  Kendrick regularly was not paid at or above the minimum wage for the applicable jurisdiction for the hours he worked.

27.     Defendant Instacart is a Delaware corporation with its principal place of business located at 50 Beale St. Suite #600 in San Francisco, California.  Instacart maintains substantial ongoing business operations throughout the United States, including San Francisco County, and is in the business of providing online grocery shopping and delivery service.

28.     The true names and capacities of DOES 1 through 100, inclusive, are unknown to Plaintiffs who sue such Defendants by use of such fictitious names. Plaintiffs will amend this complaint to add the true names when they are ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is legally responsible for the

occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by their conduct.

## FACTUAL ALLEGATIONS

**Instacart's Business Model Deprived Plaintiffs the Benefits and Protections of Employment**

29.     Instacart provides grocery delivery services to customers in cities throughout the country via an on-demand dispatch system.

30.     Instacart offers customers the ability to purchase groceries from specified stores on a mobile phone application or over the Internet and have them delivered by "personal shoppers" within one or two hours.

31.     Instacart's website advertised that "Instacart is a grocery delivery service that delivers in a little as an hour!"

32.     Instacart operates by hiring and employing an extensive workforce of individuals who perform the functions of shopping for and purchasing the groceries ordered by the customers and/or delivering said groceries to the customers.  The shoppers' and drivers' services are fully integrated into Instacart's business, and without them, Instacart's business would not exist.

33.     However, at all relevant times, Defendants treated Plaintiffs like independent contractors to the detriment of Plaintiffs in various manners, including but not limited to, requiring Plaintiffs to use their own vehicles to make deliveries, pay for driving-related expenses, refusing to provide liability insurance for the operation of Plaintiffs' motor vehicles, refusing to provide workers' compensation insurance, and requiring Plaintiffs to pay increased tax rates mandatory for independent contractors.

34.     Additionally, Defendants required Plaintiffs to use their own smart phones and data from their personal cell phone service plans in order to receive and carry out work orders.

35.     Further, despite requiring that Plaintiffs use its mobile phone application to perform their job, Instacart charges—or at least retains the right to charge—Plaintiffs twenty-five cents ($0.25) per order (or "batch") they delivered as consideration for their use of the "proprietary 'Instacart Shopper' app."

36.     Instacart voluntarily and knowingly misclassified Plaintiffs and other Instacart shoppers as independent contractors for the purpose of avoiding the significant responsibilities associated with the employer/employee relationship, including, *inter alia*, the payment of wages for non-

productive time, expense reimbursements, provision of workers' compensation insurance, payment of state and federal taxes, and other benefits.

37.     At all relevant times, Defendants issued Plaintiffs Form 1099s, indicating Plaintiffs were independent contractors and were not Defendants' employees.

38.     At all times during their employment with Defendants, Plaintiffs were misclassified as independent contractors by Defendants, were in fact employees of Defendants, and suffered actual economic harm as a consequence of this misclassification.

**Instacart Extensively Controlled All Aspects of Plaintiffs' Jobs**

39.     Despite Defendants' explicit and implicit classification of Plaintiffs as independent contractors, Plaintiffs were in fact employees of Defendants.  Plaintiffs were required to follow a litany of detailed requirements imposed on them by Instacart and they were graded and subject to termination based on their failure to adhere to these requirements.

40.     At all relevant times, Defendants exerted control over Plaintiffs in a manner consistent with an employer-employee relationship, including but not limited to, generating the work orders for Plaintiffs; controlling their wages; enforcing behavioral codes of conduct; controlling the means, manner, and method by which they perform their work; and controlling the conditions of employment.  Instacart directed Plaintiffs precisely when and where they were to collect and deliver groceries to Instacart customers, how they were to interact with Instacart customers, and had the right to terminate them from Instacart's employment at Instacart's discretion.

41.     Defendants even referred to Plaintiffs and its other Shoppers as "employees" and members of the Instacart "team" and "fleet."

42.     When working for Instacart, Plaintiffs were expected to hold themselves out as Instacart employees and to wear clothing and use equipment emblazoned with the Instacart logo, such as Instacart t-shirts, shopping bags, and lanyards.

43.     Instacart trained and directed Plaintiffs on how to evaluate and select produce and how to bag items.

44.     Instacart also directed Plaintiffs as to the order in which to shop for various items within the grocery store. For example, if an order included items from the deli, Instacart directed Plaintiffs to first go to the deli to take a number, then, while waiting for the number to be called, go collect other items then return to the deli.

45.     Plaintiffs were also to follow Instacart protocol if an item was unavailable. Instacart directed Plaintiffs to try to match the quantity ordered and prioritize health features. For example, if the requested but unavailable item was gluten-free, Plaintiffs were directed to purchase a gluten-free substitute.

46.     Instacart also controlled how Plaintiffs were to interact with customers. Instacart provided instructions on what Plaintiffs was to say when leaving voicemails for customers, what to say when on the phone with a customer to add a substitute item for an unavailable item, and what to say when delivering the groceries to the customer.

47.     Additionally, Plaintiffs were required to accept (or "acknowledge") every job (also called a "batch") that Instacart sent to her smartphone within a set time. If Plaintiffs failed, for whatever reason, to acknowledge even a single shift and Plaintiffs would receive no compensation for the rest of the pre-determined shift regardless of whether they were one minute or six hours into their shift. After acknowledging an order, Plaintiffs were required to start picking the groceries within a certain timeframe. If shoppers repeatedly did not meet Instacart's expectations as to the time within which to commence picking, Instacart would schedule them for fewer shifts or not at all.

**Instacart's Onboarding and Training of Plaintiffs**

48.     As a prerequisite to being hired as Instacart Shoppers, Plaintiffs had to undergo training by Instacart regarding how to perform their duties, including how to use the Instacart mobile application, how to replace out of stock items, how to select various types of fruit, and how to interact with customers.  Instacart required further training regarding delivering alcohol as part of a work order.  Plaintiffs had to take multiple tests regarding applicable rules and regulations.

49.     Plaintiffs were asked to attend an interview and orientation at an Instacart office.  At these interviews and orientations, an Instacart employee gave Plaintiffs an orientation presentation about the job and trained them on how to operate the Instacart mobile application on their smartphones. Instacart hired Plaintiffs upon completion of the interview and orientation.

50.     Plaintiffs also underwent on-the-job training sessions during which they shadowed other Instacart Shoppers. Plaintiffs were further directed to watch Instacart videos or presentations, hosted on the mobile application, for additional instruction on how to perform their job duties in accordance with Instacart's standards and objectives.

51.     Instacart also required that Plaintiffs submit proof of personal automobile insurance, have

a smartphone and driver's license, and pass Instacart's background check.   Instacart did not require Plaintiffs have commercial car insurance.

**Independent Contractor Agreement**

52.     Also as a condition of employment, Plaintiffs were required to sign an agreement between him/herself and Instacart titled the "Independent Contractor Agreement." This document, which Plaintiffs were required to sign to be eligible for employment, was drafted by Instacart, was not subject negotiation, and was presented to Plaintiffs at the end of the application process as a condition of employment.

53.     Among other things, it stated that Plaintiffs were to be treated as independent contractors and not employees of Instacart.   On that basis, Instacart denied Plaintiffs and thousands of other Instacart Shoppers basic employment rights, benefits, and protections.

54.     The Independent Contractor Agreement also represented to Plaintiffs that they would "be solely responsible for the performance of the Services and shall determine the method, details, and means of performing the Services."  *See* Ex. 1, Independent Contractor Agreement, § 5.1.[1] In reality, Plaintiffs had no control over the method, details, and means of their work.   Plaintiffs relied on this misrepresentation to their detriment.   Had they known that Instacart would have total control, they would not have accepted the job offer.

55.     At the time Instacart presented the Independent Contractor Agreement to Plaintiffs, Instacart knew that this representation was false and that Plaintiffs would not control their work.

56.     At the time, Instacart had management and operations teams in place that would supervise, manage, and control Plaintiffs' work.   Further, at all relevant times the Instacart Application precluded Plaintiffs from having any control over their work.

57.     The Independent Contractor Agreement also contains an arbitration provision. This provision states that any controversy, dispute, or claim arising out of or relating to the services performed by Plaintiffs for Instacart must be brought exclusively in binding arbitration. Further, the arbitration provision contains an express waiver of the right to a jury trial and does not provide for class arbitration. It is Plaintiffs' position that this arbitration provision is unenforceable under *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016). This

---

[1]  Plaintiffs allege, upon information and belief, that the Independent Contractor Agreement attached hereto as Exhibit 1 is a true and accurate copy of each of the agreements they signed and that Instacart possesses and is able to produce a copy of each agreement signed by Plaintiffs.

contention is the subject of Plaintiffs' First Cause of Action for Declaratory Judgment.

**Instacart Dictated All the Particulars of Plaintiffs' Work**

58.     At all relevant times, Plaintiffs were assigned their work by Defendants via a mobile phone application ("Instacart App") on a daily basis.   The only way to perform any work for Instacart was through the Instacart App, which could only be used as determined by Instacart.

59.     As a result, Plaintiffs did not know where they were to be assigned to work, the type of deliveries they were to be performing, or the length of time any given assignment was expected to require until they received Defendant's work order text message.   Plaintiffs were not permitted to collect the materials from locations of their choosing or deliver them at a time or a price negotiated by Plaintiffs.

60.     Instacart imposed strict job-performance rules that controlled every aspect of Plaintiffs' means and mode for accomplishing the order fulfillment and delivery.   For example, Instacart directed its Shoppers to call the customer if an order item is unavailable.   It also imposed protocol on what item to purchase as a substitute if the customer is unreachable.   Instacart directed its shoppers to try to match the quantity ordered and prioritize health features like if the requested but unavailable item was gluten-free, the shopper should purchase a gluten-free substitute.

61.     Instacart monitored and managed Plaintiffs' job performance down to the minute. Plaintiffs were required to notify Instacart, by way of the Instacart App, when they were starting to shop for an order, when the purchase was complete, when they were starting the delivery process, and when delivery was complete.

62.     Instacart used a letter or number grading system to evaluate Plaintiffs and all other Shoppers.   The grades or scores were comprised of at least three components: reliability, accuracy, and speed.   Plaintiffs were expected to have a "picking speed" within a set time range of "minutes per item." Instacart also told Plaintiffs that they were expected to have a certain minimum accuracy score and minimum reliability score.

63.     Instacart monitored and tracked the location and speed of Plaintiffs while they were completing orders and communicated directly with Plaintiffs via text message or phone call if they deviated from the enumerated protocols or timing requirements to inquire why they were running late, even if only by a minute or two. Instacart also sent text messages requesting that Plaintiffs provide minute-by-minute updates on the delivery status of their assigned orders.

64.    If Plaintiffs did not comply with Instacart's work requirements, they were subject to reduced effective pay, discipline, and "deactivation" - a tech industry euphemism for being fired. If Plaintiffs' shopper grades/scores were outside Instacart's expectations, Instacart would assign them fewer or smaller batches and fewer or shorter shifts.

65.    Instacart also directed its Shoppers to assist in the maintenance of Instacart's online interface by compiling and updating the grocery inventory for its partner grocery stores while they are shopping in the stores.

66.    Instacart communicated its expectations, protocols, and rules to Plaintiffs and other shoppers via regular e-newsletters, communications through the Shopper App, training manuals, videos, emails, and phone calls. Instacart managers also sent text messages to Plaintiffs about their performance of deliveries, messages about their shifts, directions on how to shop, and other managerial issues.

67.    Plaintiffs had multiple "City Managers" from Instacart. These City Managers communicated with Plaintiffs by phone call, text message, and email about specific orders, as well as to inquire whether Plaintiffs were able to work extended shifts.

68.    At times, Instacart managers were stationed in the grocery stores to help Plaintiffs and other Shoppers with any ongoing issues, answer questions, and improve its shopping/checkout/delivery process.

**Instacart's "Shopper Happiness Team" Was the Mouthpiece of Much of Instacart's Control Over Plaintiffs**

69.    At all relevant times, Instacart provided a shopper support team within its Operations division to provide instruction to Plaintiffs both during their shifts as to questions about carrying out their job functions and off-shift about all other questions.

70.    The Instacart Shopper Support Team and Shopper Happiness Team (collectively "Shopper Support") fielded questions, complaints, job issues, and requests from Plaintiffs and other Shoppers. The Shopper Support team provided answers to the questions, instructions, or took other follow-up action.

71.    During these calls, Shopper Support team members took notes and saved them in a database containing "Shopper Profiles" for each shopper. Shopper Support team members also accessed the Shopper Profiles to locate various pieces of information in order to answer questions and address job issues the shoppers reported to Shopper Support.

72.    Each Shopper Profile contains extensive information about that Shopper, including their "star ratings," links to every order with which that Shopper was involved, all payments made to that Shopper (with line item descriptors), customer feedback, and communication logs. The communication log section of the Shopper Profile includes notes from the Shopper Support members based on the calls or emails with that Shopper and an archive of instant messages between Shopper Support and the Shopper.

73.    The Instacart database also contained a page called the "City Page." There is a different City Page for each city in which Instacart operates and contains information as to whether an hourly guarantee is in effect for that particular city and if so, the hourly rate, as well as any item commissions or bonuses in effect for that city during a shift. Instacart used the information from the applicable City Page to address complaints from Plaintiffs and other shoppers about the amount of their paychecks.

74.    The Instacart database also had a feature called "Batch Replay." This was a function that illustrated the path taken by Plaintiffs and other Shoppers with respect to a batch of orders. The Shopper Happiness Team would run Batch Replays in response to various shopper issues. For example, Shoppers called to report if they were running behind the Instacart time requirements. Some of these Shoppers reported that they were delayed due to traffic. The Shopper Support team used Batch Replay to identify the Shopper's location and to verify whether there was, in fact, traffic in the area. Through the Batch Replay function, Instacart was able to track each delivery from store to customer and the distance travelled.

75.    The Shopper Support team communicated with Plaintiffs and other Shoppers about issues regarding the number, size, and contents of the orders assigned to them. The Shopper Support team also communicated with Plaintiffs and other Shoppers about the frequency and duration of the shifts they were assigned. Shopper Support received calls from Shoppers with complaints that they were not being assigned enough orders or that the orders were very small. Shopper Support also received complaints from Shoppers that they were not being scheduled for the number of hours they wanted. In response to these complaints, the Shopper Support team was trained to explain that the Shoppers' ratings, which included their speed rating, customer rating, and reliability rating, had a direct effect on the orders and the shifts they were assigned.

76.    Members of Shopper Support were provided a Shopper Support Manual, which was

accessed online through the Instacart Google Documents database. This manual contained, among other things, stock answers to common questions the Instacart shoppers might ask, and technical support troubleshooting steps. The manual also contained specific timing requirements Plaintiffs and other shoppers had to meet when completing various stages of an order. Part of the job of Shopper Support team members was to address the shopper issues that could result in these time requirements not being met.

77.     Members of Shopper Support answered a variety of questions from Plaintiffs and other shoppers, including questions about the Instacart App, issues with the debits cards with which Plaintiffs and other Shoppers purchased groceries ("Pex cards"), where to park their cars, and how to complete a return, among others.

78.     Instacart's Shopper Support team also answered questions from Shoppers about what they were supposed to do in given situations, for example, when a customer was not home at the time the shopper attempted to deliver the groceries or if the Shopper got into an accident while fulfilling an order.

79.     Instacart's Shopper Support team was trained to instruct Shoppers that, in the event a customer was not home at the time the shopper attempted to deliver the groceries, the Shopper was to wait at the delivery location for a set number of minutes, call back to Shopper Support, then click a certain button on the Instacart App. If the customer was still not home, the Shopper Support team member was trained to instruct the Shopper to take the groceries back to a certain location, after which the Shopper was to call Shopper Support back to notify that they had completed the protocol and Shopper Support would "cancel" the order.

### Instacart Acknowledged That It Misclassified Its Shoppers

80.     At some time during the relevant period, Instacart began bifurcating the job duties of its Shoppers into two separate roles: in-store shoppers who remained at a given grocery store for the entirety of their shifts and performed the selection and purchasing of the dictated items; and delivery drivers who picked up the already-purchased orders from designated areas within the grocery stores and then delivered the batches to the customer.  Full-service roles (i.e., shopping and delivering) remained and are still available.

81.     In an acknowledgement that its model misclassifies workers, in or around June 2015, Instacart began to correctly classify in-store shoppers in various areas of the country by offering

part-time employment status. Full-service and delivery-only workers remained classified as independent contractors despite the fact that their job duties overlapped substantially with the "employee" in-store shoppers and the fact that the level of control exerted by Instacart was the same.

82.     Instacart stated that the change was to ensure more control over the in-store shoppers; however, nothing about the day-to-day work performance or control by Instacart over these workers changed. This shows that Instacart knew and/or recklessly disregarded that it was misclassifying its Shoppers from the outset.

83.     At a later point in the relevant period, Instacart began phasing out delivery-only positions and assigning full-service shoppers to take over delivery-only batches in addition to their usual responsibilities.

### Instacart Controlled Shoppers' Wages and Tips

84.     Instacart exerted sole control over Plaintiffs' wages. At all relevant times, Plaintiffs were paid in a manner completely dependent on the nature of the deliveries they made, including the quantity of items Plaintiffs were required to collect and deliver under each individual work order.

85.     On multiple occasions throughout the relevant period, Instacart unilaterally modified the compensation structure applicable to Plaintiffs and the other Shoppers without any negotiation or consent on the part of the Shoppers.

86.     At all relevant times, Instacart paid Plaintiffs via direct deposit.  A wage statement was provided on the Instacart App.  However, at all relevant times, the Instacart App never provided the Plaintiffs' hours worked or the hourly rate paid.  Nor did the App provide Plaintiffs information as to their piece rate compensation (i.e., per-batch commission) or the number of piece rate units earned.  Plaintiffs had no means of verifying they were being paid correctly.

87.     At all relevant times, Instacart customers were able to tip their Shopper via the Instacart App or in cash.

88.     After a customer selected the desired grocery items for delivery and entered their name, address, and payment information into the app, they were directed to a payment screen which displayed an itemized invoice.  The payment screen included a line item for "tip" through which the customer could input an optional tip amount.

89.     Prior to the initial bifurcation of job duties between in-store shoppers and full-service

shoppers, Instacart distributed 100% of any tips submitted by customers through the App to the full-service shoppers and delivery-only shoppers who delivered to that customer.  Sometime after the bifurcation, Instacart imposed a mandatory tip-pooling system under which tips were split equally between the in-store shopper and the delivery driver.

90.     Subsequently, Instacart once again changed the tipping structure to entitle full-service shoppers and delivery persons to one hundred percent of any tips.

91.     In or around September 2016, Instacart changed the payment screen on the App such that, instead of a line item for "tip," it instead only included a line item for "service." This "service" fee was defaulted to an amount equal to ten percent (10%) of the order total.  However, the "service" amount could be changed by the customer or waived altogether.

92.     Despite its name, the "service" amount was a tip under the FLSA as it was entirely optional, and customers had full discretion over whether or not to pay it at all.

93.     The customer was given an option to "edit" or change the "service" amount, whereupon they were taken to a separate screen with two options – "service" and "additional tip." From the this screen, customers could choose whether or not to leave a "service" amount and then whether or not to leave an "additional tip." For a period of time after the introduction of the "service" amount, customers could choose to leave a custom "service" amount. Subsequently, Instacart again changed the system such that customers could either leave a 10% "service" amount or to select "waive ($0)" and waive it entirely. The "additional tip" was, by default, set to "None (Adjust later)."

94.     On this screen, Instacart stated: "Instacart uses the service amount provide competitive pay to all the shoppers working with Instacart," and that "[u]nlike a tip, which goes directly to the shopper delivering your order, a service amount allows us to pay all the shoppers involved in your delivery (such as those that also shop in the store)."

95.     On this screen, Instacart further stated: "Additional tipping is optional. The amount you select goes directly and solely to the shopper delivering your order."

96.     Tipping shoppers is customary in the personal shopping industry and is always optional.

97.     Under the FLSA, service charges are compulsory charges that cannot be waived or changed and become part of the employer's gross receipts.

98.     Prior to the change in the tipping structure in or around September 2016, 50 to 60 percent

of Plaintiffs' income came from tips. Since the change, Plaintiffs have suffered a drastic decrease in tips received.

99.     The tips Instacart received from customers under the guise of a "service" amount were collected by Instacart and distributed amongst <u>all</u> Instacart Shoppers, including in-store shoppers who do not customarily and regularly receive tips and regardless of whether they worked on the particular order for which the service amount was given by the customer.   These monies were also distributed to Shoppers in the form of wages, not tips. In Plaintiffs' wage statements, the itemized payments are categorized as either some type of "commission" or as "tips."   There is no category for "service" amounts.   Additionally, on its website, Instacart states that:

     a.  "Instacart uses the service amount to provide high guaranteed commissions to shoppers on the platform. This payment is not a tip and won't go directly to the shopper delivering your order";

     b.  The "service" amount is used to "guarantee high commission for all shoppers to help smooth out variations in pay. Shoppers will no longer have to count on unpredictable tips for the majority of their compensation"; and

     c.  "[C]ustomers will have the option to pay a variable service amount. The customer can choose the amount, exactly the same way they did before for tips.  The difference is that 100% of the variable service amount is used to pay all shoppers more consistently for each and every delivery, not just the last shopper to touch the order."

100.    Instacart CEO Apoorva Mehta also stated the following with respect to the conversion of the "tip" option to a "service" amount: "We're going to pay a fair and competitive wage in every single market. If you're getting more than that, it's going to go down. And if you're getting less than that, it's going to go up." (Source: https://www.buzzfeed.com/carolineodonovan/instacarts-tipping-transparency-issues-could-lead-to-thanksg?utm_term=.dfDjpm2De#.utvV92Q6N).  Mehta stated that the goal is to have Shoppers earning an average "market clearing wage." (Source: https://www.buzzfeed.com/carolineodonovan/instacart-ceo-some-workers-must-earn-less-for-the-company-to?utm_term=.iu2z0Yldp#.biQG6MZEo.)

**Instacart Controlled When and How Long Plaintiffs Worked**

101.    Plaintiffs were required to provide windows of availability to Instacart on a weekly basis.

Plaintiffs could list availability for shifts of up to ten (10) hours in duration. Instacart then assigned Plaintiffs a schedule of shifts for the upcoming week. There was no guarantee that Plaintiffs would be scheduled for the hours they submitted as being available. Indeed, whether Plaintiffs were scheduled was solely up to Instacart. Instacart scheduled Plaintiffs and other Shoppers based on their Shopper Scores, prioritizing those with better scores.

102.   If Plaintiffs did not report to an assigned shift, reported late to a shift, or cancelled a shift within 24 hours, Plaintiffs were reprimanded by Instacart managers and Instacart lowered the "reliability score" component of their Shopper Grade. A low reliability score resulted in being assigned less or shorter shifts and/or being deactivated.

### Instacart Denied Shoppers Minimum Wage and Overtime

103.   At all relevant times, Plaintiffs were paid in a manner completely dependent on the nature of the deliveries they made, including the quantity of items Plaintiffs were required to collect and deliver under each individual work order.

104.   Plaintiffs were required to make themselves available to perform work within a predetermined range of time each day but were not compensated in a manner that guaranteed they were compensated at or above the applicable minimum wage during those hours. During non-productive time, or time during which Plaintiffs were required to make themselves available for work but were not given an assignment, Plaintiffs were not compensated in any manner whatsoever. On various occasions during the relevant period, Plaintiffs spent sometimes up to four hours of a designated shift sitting in their cars in a grocery store parking lot awaiting direction from Instacart. Plaintiffs were not compensated for this time in any manner.[2]

105.   Plaintiffs could sign up for shifts of up to ten (10) hours in duration. If, at the end of a shift, Instacart was experiencing high volumes of orders, Plaintiffs could extend their shifts, in some cases up to fifteen (15) hours. Plaintiffs sometimes worked up to eighty (80) hours per week. Despite these long hours, Plaintiffs were not compensated at the required overtime rates.

106.   Plaintiffs were also forced to work when they should have been given rest periods and/or

---

[2] At times, Instacart would effectuate an "hourly guarantee," in which case Plaintiffs did receive some amount of money for non-productive hours. However, Instacart regularly did not pay Plaintiffs the promised "hourly guarantee" and/or would take into consideration any tips received by Plaintiffs when calculating whether Instacart owed Plaintiffs additional wages under the "hourly guarantee."

meal periods.  While the Instacart App did have a feature which allowed a Shopper to temporarily suspend incoming orders in order to take a break, it only provided for a single twenty (20) minute break over the course of 24 hours regardless of the length of the shift.  As explained above, Instacart would terminate the remainder of Plaintiffs' shifts if they failed to acknowledge a batch within two minutes. Thus Plaintiffs were forced to forego taking any additional breaks or else risk having the remainder of their shift terminated.

107.    At no time during Plaintiffs' employment did Defendants provide Plaintiffs with any written or electronic wage statement showing hours worked, gross and net wages, hourly rates, and federal and state deductions.

108.    Plaintiffs were paid on a commission basis without regard to the hours worked above eight (8) or ten (10) in a given day or forty (40) in a given week.

**Instacart Failed to Reimburse Shoppers For Business-Related Expenses**

109.    Plaintiffs were required to bear many of the expenses of their employment, including expenses for their vehicles, gas, and other expenses. At times, these expenses caused Plaintiffs' wages to fall below minimum wage.

110.    The FLSA requires employers to reimburse employees for such expenses, which are for the benefit of the employer, when failing to do so would cause their wages to drop below the federal minimum wage. Similarly, a number of state laws require employers to reimburse employees for such expenses, which are for the benefit of the employer and are necessary for the employees to perform their jobs.

111.    At all relevant times, Defendants required Plaintiffs to use and maintain insured and licensed vehicles as a condition of their work.  Plaintiffs were required to pay all expenses related to the use and maintenance of their vehicles, including expenses related to liability insurance, fuel, routine maintenance, and the upkeep of their vehicles' appearance. Plaintiffs incurred costs related to parking, such as parking meter payments and parking tickets, which were necessitated by Defendants' directives to its drivers.  For example, Instacart directed its full-service and delivery-only shoppers to not park in the grocery store parking lots but instead to double-park near the store's entrance while they went in to pick up their order.  Defendants also required Plaintiffs to use their own smart phones and data from their personal cell phone service plans as a condition of their work in order to receive and carry out work orders. Defendants did not

reimburse Plaintiffs for these work-related expenses in any manner.

112.    At all relevant times, Defendants did not provide Plaintiffs with workers' compensation insurance.   Plaintiffs injured in the course and scope of their employment with Defendants were left to rely on either their own private medical insurance or make direct payments for medical treatment rendered as a result of industrial injuries.  Plaintiffs were additionally ineligible for workers' compensation disability benefits if they were physically unable to perform their work as a consequence of industrial injuries.

113.    At all relevant times, Defendants paid taxes in a manner consistent with Plaintiffs' misclassification as independent contractors.  As a consequence, Plaintiffs were required to pay increased state and federal taxes at the rate of independent contractors despite the fact they were employees.

### Instacart's Online Advertisements

114.    Instacart advertised on its website and elsewhere, including but not limited to the website Craigslist and Indeed.com, that Instacart Shoppers could "earn up to $25 per hour" (or other weekly amount, for example, $1,500 per week) performing services for Instacart.  Instacart made these representations in order to induce potential Shoppers to work for it but with knowledge that it was impossible to earn that hourly rate consistently.  Plaintiffs rarely earned an hourly rate of $25 per hour, and in fact, often earned below minimum wage.

115.    The advertisements also did not mention that Plaintiffs would be classified as independent contractors and did not mention anything about waiving their rights to participate in a class action or a jury trial or agreeing to arbitrate disputes with Instacart.

### Instacart's Willful and Reckless Violation of Labor Laws

116.    Instacart willfully violated the Fair Labor Standards Act ("FLSA"). Instacart knew that Plaintiffs were properly treated as employees but chose to misclassify them as independent contractors. Instacart's motivation in misclassifying Plaintiffs and the other Shoppers as independent contractors was to avoid the additional costs and financial responsibilities associated with an employer/employee relationship, including, *inter alia*, the payment of minimum wage and overtime under the FLSA and state labor laws, the payment of wages for non-productive time, expense reimbursements, payment of state and federal taxes, and other benefits.

117.    Instacart also specifically knew and/or recklessly disregarded whether it was violating the

FLSA by not paying Plaintiffs minimum wage for all hours worked and overtime for hours over 40 worked in a week.  Instacart knew of the FLSA, the financial obligations it imposes on employers, and its applicability to Instacart with respect to Plaintiffs and other Shoppers.  Again, it was Instacart's knowledge of these financial obligations and its desire to circumvent them that motivated Instacart to willfully misclassify Plaintiffs and the other Shoppers.

118.     Instacart is a sophisticated entity with operations in nineteen states and the District of Columbia, directing what it refers to as a "fleet" of grocery delivery personnel spread across the country.  Instacart even referred to Plaintiffs and other Shoppers as "employees." Further, as alleged above, with respect to in-store shoppers, Instacart is now complying with the FLSA but still chooses to violate the law with respect to full service shoppers and delivery-only drivers. Instacart Vice President of Communications Andrea Saul stated that the conversion of in-store shoppers to employees "is costlier for us."

119.     Instacart knew Plaintiffs were working more than 40 hours a week and that Instacart was not paying Plaintiffs overtime wages. As alleged above, Instacart calculated and tracked the average hourly wage it paid Plaintiffs and could easily see when Plaintiffs' effective hourly rate fell below the applicable minimum wage. Instacart also knew that there were hours during Plaintiffs shifts when they were not assigned orders and that they were not paid for those hours.

120.     As alleged herein, Instacart maintained extensive and pervasive control over Plaintiffs' and the other Shoppers' conduct, means and manner of work, appearance, actions, wages, and hours. Instacart had detailed knowledge of and control over how many hours Plaintiffs were working on a daily and weekly basis, including when Plaintiffs worked over 40 hours per week, and how many orders Plaintiffs were assigned and when. Instacart's system is designed to assign shifts up to ten (10) hours in duration, which could be extended to fifteen (15) hours but only allowed for a single twenty (20) minute break over the course of 24 hours regardless of the length of the shift.

121.     Instacart also knew how much it was paying Plaintiffs and that its method of compensation (i.e., on a piece rate/commission basis) gave no consideration to whether Plaintiffs worked more than 40 hours in a given week or whether there were hours during Plaintiffs' shifts when they were not assigned orders. Indeed, it was Instacart's practice to deny that overtime wages were due to be paid to Plaintiffs for work in excess of 40 hours per week and to deny that

any wages were due to be paid for non-productive hours even though Instacart knew that, under any set of circumstances or facts, Plaintiffs were entitled to be paid at least minimum wage for each hour that they worked.  Instacart has falsely denied and refused and continues to deny falsely and refuse payment for purposes of securing a material economic benefit to itself and with the intent to annoy, harass, oppress, hinder, and defraud Plaintiffs.

122.    Further compounding its willful actions is the fact that Instacart never provided Plaintiffs with any written or electronic wage statement that showed their hours worked, hourly rates, piece rate information, and federal and state deductions or wage statements that accurately reported their gross and net wages.

123.    Instacart chose to classify Instacart Shoppers as independent contractors to save money.

124.    On November 19, 2013, Instacart founder and CEO Apoorva Mehta stated the following:

> "The reason why Instacart is extremely disruptive, is because we don't have any physical infrastructure. We have not built any warehouses.  We don't have a fleet of trucks that we own or lease. And we don't hold any inventory. We have made grocery delivery possible with just software. And the way we've been able to do that is leveraging mobile based crowdsourcing.  This has allowed us to operate at extremely low fixed costs, get started with very low capital expenditure, and it has allowed us to expand to new cities extremely quickly."

(Source:  YouTube,  <https://www.youtube.com/watch?v=MSyYrOvBXMc>  at  3:00-3:41" (published Nov. 19, 2013).)

125.    Plaintiffs believe internal Instacart documents exist confirming that Instacart knew the shoppers were supposed to be treated as employees and that Instacart knew Shoppers could not make up to the promised wages advertised online. For example, Plaintiffs understand that Instacart held monthly all-hands meetings, led by CEO Apoorva Mehta. Plaintiffs understand that these meetings were live-streamed over the Internet so corporate employees who were not physically in attendance could watch and that Powerpoint presentations accompanied the meetings.

126.    During one of these meetings held in or around August 2015, Mr. Mehta addressed the issue of shopper misclassification, the conversion of in-store shoppers to employees, and the fact that other shoppers remained classified as independent contractors.

127.    Additionally, Instacart managers Susie Sun, Michelle Suwuannukul, and Heather Wake instructed Operations Associates to continue running the advertisements that represented that

Instacart Shoppers could make a certain amount of money per hour even though they were aware that Shoppers were making an average hourly rate that was well below the advertised rate.

128.    Additionally, in June 2016, the IRS issued a determination finding an Instacart Shopper to be an employee for federal employment tax purposes for work performed during 2015 and state labor commissions in both New York and Colorado have issued findings that Instacart Shoppers are properly classified as "employees."

129.    In misclassifying Plaintiffs as independent contractors and failing to pay Plaintiffs wages and compensation due to them, as well as by committing the numerous other violations detailed in this complaint, Defendants, by and through their officers, directors and/or managing agents, acted with malice, oppression and or conscious disregard for the statutory and/or other rights of Plaintiffs, and committed fraud by willfully and wrongly treating Plaintiffs as independent contractors and not employees.

**DECLARATORY JUDGMENT ACTION**
FIRST CAUSE OF ACTION
DECLARATORY JUDGMENT
(Declaratory Judgment Act, 28 U.S.C. § 2201(a))

Introduction

130.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

131.    Plaintiffs bring this action for declaratory judgment against Defendant Instacart, individually and on behalf of a proposed class of all other Shoppers who signed the Independent Contractor Agreement, attached hereto as Exhibit 1, regarding the Parties' respective rights and obligations under Section 7 the Independent Contractor Agreement ("ICA"), namely whether Plaintiffs are not obligated to submit their wage and hour claims to arbitration.

132.    Plaintiffs contend that they are not obligated to arbitrate their disputes with Instacart under the arbitration provision contained in Section 7 of the ICA because they contend that provision is unenforceable under the National Labor Relations Act of 1935, 29 U.S.C. §§ 151 *et seq.* ("NLRA"), and *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016) (hereinafter "*Morris*").

133.   To the contrary, Instacart contends that the arbitration provision is enforceable and is not rendered invalid by *Morris*.

<center>Jurisdiction and Venue</center>

134.   The potential underlying action by Defendants against Plaintiffs, that is, a petition to compel arbitration of Plaintiffs' claims pursuant to § 4 of the Federal Arbitration Act, 9 U.S.C. § 4 ("FAA"), would be subject to federal jurisdiction because the underlying dispute arises in part under federal law, namely the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

135.   The declaration sought herein is therefore regarding a matter within this Court's federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 since the claims underlying the dispute between the parties is subject to federal question jurisdiction.

136.   CAFA Jurisdiction: This Court also has diversity jurisdiction over this declaratory judgment action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and 1453(b). This action is a class action as defined by 28 U.S.C. § 1332(d)(1)(B). The action is characterized as a "Class Action" and Plaintiffs bring it "individually and on behalf of a proposed class." ¶ 131.

a.   Minimal Diversity: As alleged herein, Instacart is a Delaware corporation with its principal place of business at 50 Beale Street, San Francisco, CA. ¶ 27.  Additionally, Plaintiffs are residents of eleven different states and the proposed class consists of thousands of workers nationwide.  ¶¶ 8-9, 15-26.  Instacart has previously pled that there were 7,696 individuals who performed grocery delivery work for Instacart just between January 2012 and February 2015.  *See* Instacart's Notice of Removal of Class Action to Federal Court, ¶ 8, *Cobarruviaz v. Maplebear, Inc. dba Instacart*, Case No. 3:15-cv-00697-EMC (N.D. Cal. Feb. 13, 2015). This number has undoubtedly increased between February 2015 and the present. This satisfies the requirement of 28 U.S.C. § 1332(d)(5) that the proposed class include at least 100 persons. Further, because at least one Plaintiff is from a state other than California, and Instacart is a citizen of both Delaware and California, the diversity requirement of 28 U.S.C. § 1332(d)(2)(A) is met.

b.   Amount in Controversy Exceeds $5 Million: The amount in controversy in the underlying dispute exceeds $5 million, thus satisfying 28 U.S.C. § 1332(d)(2). Plaintiffs believe

there to be more than 14,000 members of the proposed class. Plaintiffs allege that they and the proposed class have been regularly denied proper minimum wage and overtime since December 1, 2012. Instacart has previously pled that:

- From July, 2014 through the first week of February, 2015, putative class members worked on-duty for 2,580,054 hours, for which they were compensated. Furthermore, during this time period, there were 2,229 grocery deliverers any given week, working an average of 35 hours a week each.
- Conservatively assuming that for every five hours worked, putative class members were not compensated for one additional "non-productive" hour, potential damages for non-productive hours worked would total $4,644,097.20 from July 2014 through the first week of February, 2015 *alone*.
- Similarly, conservatively assuming that putative class members worked 5 hours of overtime per week for the 33 week period from July, 2014 through the first week of February, 2015, putative class members could be entitled to aggregate damages totaling at least $1,655,032.

*See* Instacart's Notice of Removal of Class Action to Federal Court, ¶¶ 13-15, *Cobarruviaz*, Case No. C-15-cv-00697 (N.D. Cal. Feb. 13, 2015).

In addition to the non-productive time and overtime wages, Plaintiffs also seek expense reimbursement; restitution and disgorgement; various penalties; an order enjoining Instacart from continuing to engage in the alleged conduct described in the Complaint; and other further relief as the Court deems just and proper. Given these requests for relief, the amount in controversy far exceeds $5,000,000 in the aggregate, and this Court has jurisdiction under CAFA.

c. <u>No Exceptions Apply</u>: None of the exceptions to CAFA jurisdiction are met here. The "home-state" and "local-controversy" exceptions do not apply because less than two thirds of the proposed class is from California. On information and belief, Plaintiffs allege that approximately half of the proposed class members are from California with the other half being from elsewhere in the United States. The other exceptions are inapplicable here.

137. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, inter alia, Defendant Instacart is headquartered in and engages and performs business activities in and throughout San Francisco County. Additionally, many of Defendants' services involve San Francisco County residents, and many of the acts complained of herein occurred in this judicial district.

<u>Governing Law: The Ninth Circuit's Decision in *Morris v. Ernst & Young*</u>

138.    In *Morris,* the Ninth Circuit held that a labor contract that prevents employees from bringing, in any forum, a concerted legal claim, including a class action, regarding wages, hours, and terms of conditions of employment violates the NLRA, is therefore illegal, and cannot be enforced. 834 F.3d at 979, 983.

139.    In *Morris,* a class and collective action for alleged misclassification under the FLSA and California law, plaintiffs were required to sign, as a condition of employment, agreements that contained a collective action waiver that required employees to pursue claims exclusively through arbitration and only as individuals in separate proceedings.   834 F.3d at 979.   The plaintiffs claimed the "separate proceedings" clause contravened NLRA, among other statutes, relying heavily on determinations by the National Labor Relations Board ("NLRB") that concerted action waivers violate the NLRA. *Id.* at 979-80.

140.    In its decision, the Ninth Circuit formally adopted the NLRB's interpretation of sections 7 and 8 of the NLRA as announced in *D.R. Horton*, specifically that:

> [A]n employer violates the NLRA 'when it requires employees covered by the Act, as a condition of their employment, to sign an agreement that precludes them from filing joint, class, or collective claims addressing their wages, hours, or other working conditions against the employer in any form, arbitral or judicial.

*Morris*, 834 F.3d at 980 (quoting *D.R. Horton*, 357 NLRB No. 184, slip op. at 1); *see also id.* at  982-83 ("the Board's interpretation of § 7 and § 8 is correct").

141.    In so finding, the Ninth Circuit held that a labor contract imposed as a condition of employment, the terms of which prevent the "initiat[ion of] concerted work-related legal claims against the company in any forum," constitutes an "interference" of the worker's § 7 rights within the meaning of § 8, and is therefore illegal and unenforceable. 834 F.3d at 979, 982-83.

142.    In discussing the breadth and nature of workers' rights under § 7 of the NLRA, the Ninth Circuit explained that § 7 "includes the substantive right to collectively 'seek to improve working conditions'" (*id.* at 983) and that "employees must be able to initiate a work-related claim together in some forum." *Id.* at 980.  This holding recognizes the fundamental aspect of the right to pursue concerted legal activity under § 7 is the right to initiate legal action together.  *See*

*Morris*, 834 F.3d at 986, n.11 (discussing workers' "substantive labor right to initiate concerted activities" under § 7 of the NLRA); at 979-80 (holding § 8 was violated where effect of arbitration agreement was that "employees could not initiate concerted legal claims against the company in any forum"); at 982 (interference with "the initiation of any concerted work-related legal claim, in any forum" violates § 8); at 983-84 (same). For example, the *Morris* court found that a "lawsuit filed in good faith by a group of employees to achieve more favorable terms or conditions of employment" constitutes "concerted activity" under § 7. *Id.* at 981-82.

143.    Therefore, the Ninth Circuit found that the NLRA establishes a substantive right to pursue class and collective actions in some forum and that a labor contract that precludes workers from proceeding as a class in any forum violates the NLRA, is illegal, and cannot be enforced. *Id.* at 980 (citing *D.R. Horton*, 357 N.L.R.B. No. 184, slip op. at 4-5, 13 (2012)).

144.    Since *Morris* was issued on August 22, 2016, numerous other courts from this District have issued decisions interpreting and applying *Morris* to other arbitration agreements in labor contracts and ultimately invalidating them pursuant to *Morris*'s holding.  In *Gonzalez v. CEVA Logistics U.S., Inc.*, Case No. 16-cv-04282-WHO, 2016 WL 6427866, at *1 (N.D. Cal. Oct. 31, 2016) and *Mackall v. Healthsource Global Staffing, Inc.*, Case No. 16-cv-03810-WHO, 2016 WL 6462089, at *1 (N.D. Cal. Nov. 1, 2016), *appeal filed*, Case No. 16-17103 (9th Cir. Nov. 16, 2016), Judge William H. Orrick denied two motions to compel arbitration based on arbitration provisions in labor contracts that contained class action waivers.  In doing so, the court acknowledged it was bound by the holding in *Morris* that a class waiver with no opt out right is unenforceable under the NLRA. *Gonzalez*, 2016 WL 6427866, at *6-7; *Mackall*, 2016 WL 6462089, at *3.

145.    Similarly, in *Cashon v Kindred Healthcare Operating, Inc.*, Case No. 16-cv-04889-RS, 2016 WL 6611031, at *2 (N.D. Cal. Nov. 9, 2016), Judge Richard Seeborg recognized, in the context of denying a motion to stay a wage and hour class action pending a U.S. Supreme Court decision on *Morris*, that, under *Morris,* a mandatory arbitration clause in a labor contract that precludes class actions, like the one presented in that case, violates Section 7 of the NLRA.

146.    Most recently, in *Whitworth v. SolarCity Corp.*, Case No. 16-cv-01540-JSC, 2016 WL 6778662, at *3 (N.D. Cal. Nov. 16, 2016), Magistrate Judge Jacqueline Scott Corley denied a motion to compel arbitration, reaffirming that under *Morris* an arbitration provision in an employment contract that prohibits any dispute from being brought, heard, or arbitrated as a class or collective action is invalid and unenforceable.

<u>Factual Allegations</u>

147.    As alleged above, the Independent Contractor Agreement ("ICA") is a uniform contract drafted and imposed by Instacart as a condition of employment, which contains a provision requiring all disputes between Plaintiffs and Instacart be "submitted to and determined exclusively by binding arbitration." *See* Ex. 1, § 7.1.

148.    The ICA provides that it is a contract existing between Instacart and the individual signatory Shopper only. *See* Ex. 1, pg. 2 (defining the "Parties" as Instacart and the signatory shopper, as "an individual," defined as "Contractor").

149.    Section 7 (the arbitration provision) also provides that the scope of arbitrable disputes includes "any controversy, dispute or claim arising out of or relating to the Services performed *by the Contractor*." Ex. 1, § 7.1  (emphasis added).

150.    The arbitration provision further provides that "*the Parties*" (defined as Instacart and the individual Shopper) agree to a single neutral arbitrator, whose award "shall be final and binding on *the Parties*," that "*[t]he parties* will equally advance all of the arbitrator's expenses and fees," and that "*[t]he Parties* agree that the enforceability of the agreement shall be governed by the Federal Arbitration Act (9 U.S.C. §2)." Ex. 1, §§ 7.2-7.4 (emphases added).

151.    The agreement does not mention the possibility of class wide arbitration. *See generally*, Ex. 1.

152.    The arbitration provision incorporates only the JAMS Employment Arbitration Rules and Procedures and JAMS Policy on Employment Arbitration Minimum Standards, which make no mention of class actions and do not identify, reference, or incorporate the JAMS Class Action Procedures. *Id.* at § 7.2.

153.    All Plaintiffs signed the ICA prior to starting to work for Instacart. The FLSA and state labor law claims alleged by Plaintiffs herein would presumably be encompassed within the scope of the ICA's arbitration provision.[3]

154.    Plaintiffs' consent to the arbitration agreement requiring resolution of disputes through individual binding arbitration was a condition of being hired, and Plaintiffs and other Instacart Shoppers had no ability to opt out of the provision's terms.

155.    Instacart, the drafter of the Independent Contractor Agreement, intended for the arbitration provision to require Plaintiffs and other Instacart shoppers to proceed in arbitration on an individual basis and not as a class arbitration. Instacart has repeatedly maintained the arbitration agreement's enforceability and requirement of individual arbitration proceedings in two other cases. *See Cobarruviaz v. Maplebear, Inc. dba Instacart*, Case No. 3:15-cv-00697-EMC (N.D. Cal.) (Chen, J.) and *Sumerlin v. Maplebear, Inc. dba Instacart*, Case No. BC603030 (Los Angeles Sup. Ct.) (Wiley, J.).

156.    In *Cobarruviaz*, a different set of plaintiffs brought similar collective and class action wage and hour claims against Instacart, individually and on behalf of a putative national class of Instacart Shoppers.   *See* Collective Action Compl. and First Am. Class Action Compl., *Cobarruviaz*, Case No. 3:15-cv-00697-EMC (N.D. Cal. April 8, 2015).   Instacart moved to compel individual arbitration, and on November 3, 2015, the Honorable Edward M. Chen granted Instacart's motion, ordering all of the *Cobarruviaz* plaintiffs' claims to be resolved in arbitration on an individual basis, except for the representative claim brought under California's Private Attorney General Act of 2004 (Cal. Lab. Code, §§ 2698 *et seq.*) ("PAGA"). *Cobarruviaz*, 143 F.Supp.3d 930, 947 (N.D. Cal. Nov. 3, 2015).

157.    In granting the motion to compel arbitration, the *Cobarruviaz* court agreed with Instacart that the arbitration agreement required that the arbitrations proceed on an individual basis.  143

---

[3] Plaintiffs make these allegations without waiving the right to assert any and all other defenses to the enforcement of the arbitration agreement.

F.Supp.3d at 945-46 (rejecting Plaintiffs' arguments for why class arbitration was authorized and compelling arbitration "on an individual basis only").

158.   Specifically, the court found that "there is no evidence that the parties contemplated or agreed to class-wide arbitration."  143 F.Supp.3d at 945. The Court noted the agreement "does not mention the possibility of class wide arbitration" but instead focuses on "disputes that arise out of or are related to 'services performed by the *Contractor*' or the Agreement, which is specifically between Instacart and the *individual* Contractor."  *Id.* (emphasis in original).

159.   In *Sumerlin*, a California-only class action involving similar claims, Instacart has maintained that the arbitration agreement is enforceable and would preclude the possibility of class proceedings. *See* Ex. 2, Instacart's Resp. to Opp'n to Mot. for Prelim. Approval of Class Action Settlement, at pg. 5, *Sumerlin v. Maplebear, Inc. dba Instacart*, Case No. BC603030 (L.A. Sup. Ct. Aug. 2, 2016) (stating Instacart informed *Sumerlin* Plaintiffs' counsel about the *Cobarruviaz* order compelling individual arbitration and stated it would similarly move to compel arbitration in *Sumerlin*); at pg. 6-8 (stating key risk of continued litigation was that it was "highly improbable that the case would proceed as a class action in court" in light of the "enforceable" arbitration agreement).

160.   Similarly, in the context of arbitration demands filed with JAMS, Instacart has asserted that the arbitration agreement requires individual and separate proceedings.  For example, Instacart represented to JAMS that Plaintiffs' counsel, the Arns Law Firm, were required "to submit any other arbitration demands on an individual basis." Ex. 3, Instacart's Position Statement re Preliminary Status Conference, pg. 5, *Golden v. Maplebear, Inc. dba Instacart*, JAMS Ref. No. 1100083103 (Mar. 17, 2016).  Instacart also contended that the claimant to that arbitration proceeding "simply has no standing to litigate on behalf of other Instacart contractors or to take discovery regarding cases other than his own."  *Id.*

<u>An Actual Controversy Exists: Plaintiffs' Position</u>

161.    Notwithstanding their execution of the ICA, Plaintiffs contend that they are not obligated to arbitrate their disputes with Instacart under the arbitration provision contained in Section 7 of the ICA because *Morris* renders the ICA's arbitration provision unenforceable.

162.    The arbitration agreement here requires Plaintiffs to pursue their claims in arbitration on an individual basis only and not concertedly or as a class. This is not in dispute as Instacart's position is that the Independent Contractor Agreement does not contain any provisions permitting class-wide arbitration and that, under *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010), the lack of affirmative consent to class-wide arbitration requires Plaintiffs to proceed with individual arbitration.

163.    As alleged above, the contract is between the individual worker and Instacart, all terms are agreed to by "the Parties," which is defined as Instacart and the individual worker, and the scope or arbitration provision is limited to the work performed by that particular worker.  To borrow from the court's order compelling individual arbitration in *Cobarruviaz*, "there is no evidence that the parties contemplated or agreed to class-wide arbitration." 143 F.Supp.3d at 945. The agreement "does not mention the possibility of class wide arbitration" but instead focuses on "disputes that arise out of or are related to 'services performed by the *Contractor*' or the Agreement, which is specifically between Instacart and the *individual* Contractor." *Id.* (emphasis in original).

164.    In light of the clear import of the arbitration provision's terms, Plaintiffs contend it is unenforceable under *Morris* because Plaintiffs are precluded from initiating class and collective proceedings in all forums.

165.    Like the arbitration agreements in the post-*Morris* cases (*Gonzalez*, *supra,* 2016 WL 6427866; *Mackall*, *supra,* 2016 WL 6462089; *Cashon, supra*, 2016 WL 6611031; and *Whitworth*, *supra*, 2016 WL 6778662), the subject arbitration agreement's prohibition on class arbitration has the "same effect" as the unenforceable arbitration provision in *Morris*—that is, it violates the substantive federal statutory right under the NLRA to initiate concerted legal activity.  This is because, Plaintiffs are precluded, at the outset, from "initiat[ing] a work-related

legal claim together," *Morris*, 834 F.3d at 980, because they are limited to pursuing individual arbitrations.   Because Instacart's arbitration agreement has the "same effect" of waiving Plaintiffs' right to pursue concerted legal activity, including class arbitration, *Morris* therefore renders it illegal and unenforceable.

<center>An Actual Controversy Exists: Defendant's Position</center>

166.   To the contrary, Instacart contends that the arbitration provision is enforceable and is not rendered invalid by *Morris*.

167.   Instacart's position is that *Morris* does not apply to the arbitration provision in the ICA because it does not contain an express "separate proceedings" clause as did the arbitration agreement in *Morris*. Based on this purported distinction, Instacart contends that the arbitration provision does not violate the NLRA because Plaintiffs can engage in joinder of their individual claims in the arbitral forum.

168.   In light of the Parties' conflicting positions, a controversy therefore exists over whether, under *Morris*, the ICA's arbitration provision is enforceable and whether Plaintiffs in the present action are required to arbitrate their FLSA and state labor law claims.

<center>Declaratory Judgment Is Appropriate Here</center>

169.   An actual controversy has arisen and now exists between Plaintiffs and Instacart as to their respective rights and obligations under Section 7 the Independent Contractor Agreement signed by Plaintiffs and Instacart, namely whether Plaintiffs are not obligated to submit their wage and hour claims to arbitration.

170.   There being a present, actual controversy regarding the rights and obligations of the parties under the ICA, Plaintiffs seek a declaration of those rights and obligations in the present action.

171.   A declaratory judgment resolving this actual controversy is necessary and appropriate at this time.

172.   The requested declaratory judgment will serve a useful purpose in clarifying and settling the legal relations in issue. The issue of the enforceability of the arbitration agreement dictates

<center>Collective Action Complaint and Class Action Complaint</center>
<center>34</center>

whether the remainder of the claims herein should even be asserted in this forum. Declaratory judgment will also terminate and afford relief from the uncertainty, insecurity and controversy giving rise to this action. Finally, a declaratory judgment will advance (and not interfere with) resolution of the entire controversy and can be decided by the federal judge as a matter of law, with little or no discovery.

<div align="center">Prayer for Relief</div>

173.    WHEREFORE, Plaintiffs pray for a declaratory judgment against Defendant as follows:

      a.    That the Court declare the respective rights and duties of Plaintiffs and Defendant as under Section 7 the Independent Contractor Agreement signed by Plaintiffs and Instacart, namely whether Plaintiffs are not obligated to submit their wage and hour claims to arbitration because the arbitration provision is unenforceable under the NLRA and *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016);

      b.    That Plaintiffs be awarded its costs, expenses and attorney fees incurred herein; and

      c.    For such other and further relief as the Court deems just and proper.

174.    Plaintiffs request that this declaratory judgment action be determined on an expedited basis, as a determination of this controversy is a threshold matter of viability of the remaining claims.

<div align="center">

**THE NATIONWIDE COLLECTIVE ACTION**
SECOND CAUSE OF ACTION
VIOLATION OF THE FLSA
(29 U.S.C. §§ 201 et seq.)

</div>

175.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

176.    Plaintiffs bring this cause of action on behalf of themselves and all other Instacart Shoppers who have worked for or on behalf of one or more of the Defendants anywhere in the United States any time between December 1, 2012 and the date of final judgment in this matter.

177.    Plaintiffs bring this count under 29 U.S.C. § 216(b) of the Fair Labor Standards Act. Plaintiffs and other Instacart Shoppers are similarly situated in that they are all subject to Instacart's common plan or practice of classifying Shoppers as independent contractors, not

paying them overtime for all hours worked beyond forty (40) in a given week, and not ensuring that they receive at least the federal minimum wage for all hours worked.

178.    At all relevant times, Defendants, and each of them, have been the employers of Plaintiffs, their employees, and have been engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA.   Defendant's annual operating revenues exceed $500,000.

179.    Plaintiffs consent to sue for violations of the FLSA pursuant to 29 U.S.C. § 216(b) and 256. The written consent forms for Plaintiffs Husting, Clayton, Armstrong, Connolly, Parsons, Raines, Lester, Boven, and Nosek are attached hereto as Exhibit 4. The written consent forms for Plaintiffs Weidner, Richie, and Kendrick will be filed separately in the near future.

180.    The FLSA, 29 U.S.C. §§ 201 *et seq*., requires employers, such as Defendants, to compensate their non-exempt employees, such as Plaintiffs, at a rate of not less than the minimum wage for all hours worked.   The FLSA further requires employers to compensate employees at or above one and one-half times the regular rate of pay for all hours worked in excess of 40 hours in a single week.   In addition, the FLSA requires employers to record, report, and preserve records of hours worked by employees.

181.    Defendants, and each of them, pursuant to uniform policies and practices, failed to compensate Plaintiffs at a rate not less than the minimum wage for all hours worked, and failed to compensate Plaintiffs at or above one and one-half times the regular rate of pay for all hours worked in excess of 40 hours in a single week, in violation of the FLSA, including 29 U.S.C. § 207(a)(1) and § 215(a).

182.    The FLSA mandates that an employee's wages must be "free and clear" of "kickbacks," and requires employers to reimburse employees for such expenses, which are for the benefit of the employer, when failing to do so would cause their wages to drop below the federal minimum wage.

183.    Plaintiffs were required to bear many expenses related to their employment that were for the benefit of Defendants, including expenses related to the maintenance of their vehicles, gas, cell phone bills, and other expenses. Defendants did not reimburse Plaintiffs for these expenses. At times, these expenses caused Plaintiffs' wages to fall below minimum wage.

184.    Defendants, and each of them, have failed to record, report, or preserve records of hours

worked by Plaintiffs sufficient to determine wages, hours, and other conditions and practices of employment, in violation of the FLSA, including 29 U.S.C. § 211(c) and § 215(a).

185.     As alleged above, on or around September 28, 2016, Instacart renamed the "tip" option in the payment screen of its mobile app to "service."  The money Instacart received from customers under the guise of a "service" amount was distributed amongst other Instacart Shoppers, including in-store shoppers who do not customarily and regularly receive.  These monies were also distributed to Shoppers in the form of wages, not tips.

186.     Defendants' practice of redistributing the "service" amount among Shoppers who do not customarily and regularly receive tips constitutes an illegal tip pool in violation of the FLSA, including 29 U.S.C. § 203(m).

187.     At times, the retention and redistribution of tips caused Plaintiffs' wages to fall below the federal minimum wage.

188.     The conduct described herein constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a). *See* ¶¶ 112-124.

189.     Plaintiffs seek recovery of attorneys' fees and costs to be paid by Defendants, as provided under 29 U.S.C. § 216(b).

190.     Plaintiffs have incurred economic damages as a direct and proximate consequence of the acts of Defendants alleged herein.  Plaintiffs seek damages in the amount of their respective unpaid compensation, unpaid overtime compensation, liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), interest, and other such legal and equitable relief as the Court deems just and proper.

191.     This claim is brought on behalf of a class of similarly situated individuals who may choose to "opt in" to this case, pursuant to 29 U.S.C. § 216(b).

///

///

///

## STATE-SPECIFIC CLASS ACTION ALLEGATIONS

192.     The following Plaintiffs make the following additional claims:

a.      California: Plaintiffs Husting and Clayton assert, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly

situated Instacart Shoppers who have performed work for Instacart in California at any time from December 1, 2012 to the present, claims under California Labor Code §§ 204, 216, 224, 226, 226.7, 226.8, 510, 512, 1174, 1194, 1197, 1198, 2753 and 2802; the California Business & Professions Code § 17200; and for fraud/intentional misrepresentation, tortious interference with prospective economic advantage, and conversion; specifically the third through twelfth causes of action.

b.     New York: Plaintiff Armstrong asserts, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart Shoppers who have performed work for Instacart in New York at any time from December 1, 2010 to the present, claims under the New York Labor Law §§ 195 and 196-d; 652 and Part 142 of Title 12 of the New York Compilation of Codes, Rules, and Regulations Sections 142-2.2, 142-2.3, and 142-2.4; and for fraud/intentional misrepresentation, tortious interference with prospective economic advantage, and conversion; specifically, the thirteenth through twenty-first causes of action.

c.     Pennsylvania: Plaintiff Weidner asserts, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart Shoppers who have performed work for Instacart in Pennsylvania at any time from December 1, 2013 to the present, claims under the Pennsylvania Minimum Wage Act of 1968, 43 Pa. Cons. Stat. §§ 333.101 *et seq.*; the Pennsylvania Wage and Payment Collection Law, 43 Pa. Cons. Stat. §§ 260.1 *et seq.*; various provisions of the Pennsylvania Code; and for fraud/intentional misrepresentation, tortious interference with prospective economic advantage, and conversion; specifically the twenty-second through twenty-eighth causes of action.

d.     Colorado: Plaintiff Connolly asserts, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart Shoppers who have performed work for Instacart in Colorado at any time from December 1, 2013 to the present, claims under the Colorado Wage Claim Act, Colo. Rev. Stat. §§ 8-4-101 *et seq.*; the Colorado Minimum Wages of Workers Act, Colo. Rev. Stat. §§ 8-6-101 *et seq.*; Colorado Minimum Wage Order Number 31, 7 Colo. Code Regs. §§ 1103-1 *et seq*; and for fraud/intentional misrepresentation, tortious interference with prospective economic advantage, and conversion; specifically the twenty-ninth through thirty-fifth of action.

e.       Illinois: Plaintiffs Parsons asserts, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart Shoppers who have performed work for Instacart in Illinois at any time from December 1, 2013 to the present, claims under the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. Ann. 115/4; the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. Ann. 105/4, 105/4a, and 115/4; Title 56 of the Illinois Administrative Code, § 300.540; the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/2 and 505/7; and for fraud/intentional misrepresentation, tortious interference with prospective economic advantage, and conversion; specifically the thirty-sixth through forty-third causes of action.

f.       Washington: Plaintiff Lester asserts, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart Shoppers who have performed work for Instacart in Washington at any time from December 1, 2013 to the present, claims under the Washington Revised Code §§ 19.86.020, 19.86.090, 49.46.090, 49.46.020 and 49.46.130; Washington Administrative Code § 296-126-092; and for fraud/intentional misrepresentation, tortious interference with prospective economic advantage, and conversion; specifically, the forty-fourth through fifty-first causes of action.

g.       Indiana: Plaintiff Raines asserts, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart Shoppers who have performed work for Instacart in Indiana at any time from December 1, 2014 to the present, claims under the Indiana Minimum Wage Law, Ind. Code Ann. § 22-2-2-4, and for fraud/intentional misrepresentation, tortious interference with prospective economic advantage, and conversion; specifically, the fifty-second through fifty-seventh causes of action.

h.       Texas: Plaintiff Boven asserts, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart Shoppers who have performed work for Instacart in Texas at any time from December 1, 2014 to the present, claims under the Texas Lab. Code §§ 62.051 and 62.201; and for fraud/intentional misrepresentation, tortious interference with prospective economic advantage, and conversion; specifically, the fifty-eighth through sixty-first causes of action.

i.       Georgia: Plaintiff Nosek asserts, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart

Shoppers who have performed work for Instacart in Georgia at any time from December 1, 2014 to the present, claims under the Georgia Minimum Wage Law, Ga. Code Ann. §§ 34-4-3 and 34-4-6; and for fraud/intentional misrepresentation, tortious interference with prospective economic advantage, and conversion; specifically, the sixty-second through sixty-fifth causes of action.

j.      Oregon: Plaintiff Richie asserts, pursuant to Rule 23 of the Federal Rules of civil Procedure, individually and on behalf of a class of other similarly situated Instacart Shoppers who have performed work for Instacart in Oregon at any time from December 1, 2010 to the present, claims under Oregon Revised Statutes §§ 652.120, 652.200, 653.025, 653.055, and 653.261; Oregon Administrative Rules, Rule 839-020-0050; and for fraud/intentional misrepresentation, tortious interference with prospective economic advantage, and conversion; specifically, the sixty-sixth through seventy-second causes of action.

k.      Massachusetts: Plaintiff Kendrick asserts, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart Shoppers who have performed work for Instacart in Massachusetts at any time from December 1, 2013 to the present, claims under Chapter 151 of the Massachusetts Annotated Laws, §§ 1, 1A, 1B, and 20; and for fraud/intentional misrepresentation, tortious interference with prospective economic advantage, and conversion; specifically, the seventy-third through seventy-seventh causes of action.

**CALIFORNIA CLASS ACTION ALLEGATIONS**

193.    Plaintiffs Husting and Clayton bring the following causes of action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of similarly situated individuals who performed grocery shopping and/or delivery work for or on behalf of one or more of the Defendants in California anytime from December 1, 2012 to the present ("California Class"), specifically the third through twelfth causes of action.

194.    Plaintiffs reserve the right to amend this California Class definition if discovery and/or further investigation demonstrate that the California Class should be expanded or otherwise modified.

195.    Plaintiffs and other members of the California Class have uniformly been deprived reimbursement of their necessary business expenditures and minimum and overtime wages.

196.    The members of the California Class are so numerous that joinder of all members would

be impracticable.

197.    There are questions of law and fact common to the members of the California Class that predominate over any questions affecting only individual members, including:

    a.    Whether California class members have been required to follow uniform procedures and policies regarding their work for Instacart;

    b.    Whether the work performed by California class members—providing grocery shopping and/or delivery service to customers—is within Instacart's usual course of business, and whether such service is fully integrated into Instacart's business;

    c.    Whether Defendants failed to pay Plaintiffs for all hours of work performed in violation of California law;

    d.    Whether Defendants failed to reimburse Plaintiffs for expenses incurred during the course of their employment;

    e.    Whether Defendants' conduct violates the California Labor Code;

    f.    Whether Defendants' conduct violates Section 17200 of the California Business and Professions Code;

    g.    Whether Defendants' conduct otherwise violates California law; and

    h.    Whether, as a result of Defendants' misconduct, Plaintiffs are entitled to damages, restitution, equitable relief and/or other damages and relief, and, if so, the amount and nature of such relief.

198.    Named Plaintiffs Husting and Clayton are members of the California Class who suffered damages as a result of Defendant's conduct and actions alleged herein.

199.    Plaintiffs' claims are typical of the claims of the members of the California Class. Plaintiffs have no interests antagonistic to those of the California Class and are not subject to any unique defenses.

200.    Plaintiffs will fairly and adequately represent and protect the interests of all members of the California Class and have retained attorneys experienced in class action and complex litigation.

201.    The questions of law and fact common to the members of the California Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

202.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons:

a.      It is economically impractical for members of the California Class to prosecute individual actions;

b.      The California Class is readily definable;

c.      Prosecution as a class action will eliminate the possibility of repetitious litigation; and

d.      A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

203.   Plaintiffs do not anticipate any difficulty in the management of this litigation.

THIRD CAUSE OF ACTION
CALIFORNIA: UNPAID WAGES
(Cal. Labor Code §§ 216, 1194 & 1197)

204.   Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

205.   Defendants, and each of them, have violated and continue to violate California Labor Code §§ 216, 1194 & 1197 by willfully refusing to pay wages – including the benefits described above – due and payable to Plaintiffs.  As more fully set forth above, Plaintiffs are not compensated for non-productive hours worked.  Additionally, Plaintiffs work and have worked well in excess of 8 hours a day or 40 hours per week without being appropriately compensated for hours worked in excess of 40 hours per week and/or 8 hours per day.  These unpaid hours include overtime that should have been paid.

206.   Equally, Defendants denied that any wages due for non-productive work and work in excess of 40 hours per week and/or 8 hours per day were due to be paid to Plaintiffs even though each Defendants knew that under any set of circumstances or facts, Plaintiffs were entitled to be paid for each hour that they worked.  Defendants have falsely denied and refused and continue to deny falsely and refuse payment for purposes of securing a material economic benefit to themselves and with the intent to annoy, harass, oppress, hinder, and defraud Plaintiffs.

207.   Such a pattern, practice and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement to recovery by the Plaintiffs, in a civil action, for the unpaid balance of the amount of unpaid

wages, including interest thereon, and reasonable attorneys' fees and costs of suit, as well as the assessment of any other statutory penalties, including waiting time penalties, against Defendants.

208.    This claim is brought by Plaintiffs Husting and Clayton on behalf of themselves and a class of similarly situated individuals who have worked for Instacart in California.

### FOURTH CAUSE OF ACTION
### CALIFORNIA: FAILURE TO PAY OVERTIME WAGES
#### (Cal. Labor Code §§ 204, 510, 1194 & 1198)

209.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

210.    Plaintiffs have been and are expected to regularly work in excess of eight (8) hours or ten (10) per day and/or forty (40) hours per week.  Plaintiffs have regularly worked and continue to regularly work in excess of 8 or 10 hours per day or 40 hours per week.5

211.    At all relevant times, Defendants failed to pay Plaintiffs and all persons similarly situated wages when due, as required by Cal. Lab. Code §§ 204, 510, 1194 & 1198.

212.    Such a pattern, practice and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement to recovery by the Plaintiffs, in a civil action, for the unpaid balance of the amount of overtime and other compensation, including interest thereon, reasonable attorneys' fees and costs of suit, as well as the assessment of any other statutory penalties against Defendants.

213.    This claim is brought by Plaintiffs Husting and Clayton on behalf of themselves and a class of similarly situated individuals who have worked for Instacart in California.

### FIFTH CAUSE OF ACTION
### CALIFORNIA: FAILURE TO PAY MINIMUM WAGES
#### (Cal. Labor Code §§ 204, 1194, 1197)

214.    Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

215.    Defendants, and each of them, pursuant to uniform policies and practices, failed to compensate Plaintiffs at a rate not less than the minimum wage for all hours worked in violation of the California Labor Code, including sections 204, 1194 and 1197.

216.    As a result of Defendants' conduct, Plaintiffs are entitled to all monetary and other damages permitted under the California Labor Code and any other applicable law, including the unpaid balance of the amount of minimum wage, including interest thereon, reasonable attorneys'

fees and costs of suit, as well as the assessment of any other statutory penalties against Defendants.

217.    This claim is brought by Plaintiffs Husting and Clayton on behalf of themselves and a class of similarly situated individuals who have worked for Instacart in California.

<div align="center">

SIXTH CAUSE OF ACTION
CALIFORNIA: FAILURE TO PAY WAGES FOR MEAL PERIODS AND REST PERIODS
(Cal. Labor Code §§ 226.7 & 512)

</div>

218.    Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

219.    Defendants have required and continue to require Plaintiffs to work for periods of more than 5 hours per day with no provision of a meal period of at least 30 minutes.

220.    Defendants have required and continue to require Plaintiffs to work for periods of more than 10 hours per day with no provision of a second meal period of at least 30 minutes.

221.    Defendants have required and continue to require Plaintiffs to work for periods of more than 4 hours per day with no provision of a rest period of at least 10 minutes.

222.    Plaintiffs were not properly provided with meal or rest periods as required by California Labor Code §§ 226.7 and 512, and Industrial Welfare Commission Wage Order Nos. 4 and 7, for missed rest and/or meal periods on or after 2012.

223.    As a result of Defendants' conduct, Plaintiffs are entitled to all monetary and other damages permitted under the California Labor Code and any other applicable law, including, but not limited to, an additional hour of pay for every day that Plaintiffs were not provided meal or rest breaks pursuant to California Labor Code § 226.7.

224.    This claim is brought by Plaintiffs Husting and Clayton on behalf of themselves and a class of similarly situated individuals who have worked for Instacart in California.

<div align="center">

SEVENTH CAUSE OF ACTION
CALIFORNIA: FAILURE TO PROPERLY REPORT PAY
(Cal. Labor Code § 226 & 1174)

</div>

225.    Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

226.    At all relevant times, Defendants failed to keep accurate records of the hours worked by Plaintiffs in violation of California Labor Code §§ 226 & 1174.  Defendants' failure to do so was knowing and intentional.

227.     At all relevant times, Defendants failed to provide Plaintiffs with accurate records of pay indicating the wages paid for the hours worked.   In addition, Defednant failed to provide Plaintiffs with any information at all indicating the hours worked and state and federal deductions. Further, when Plaintiffs were paid on an hourly basis, Defendants failed to provide Plaintiffs with the applicable hourly rate.   When Plaintiffs were paid on a piece-rate basis, Defendants similarly failed to provide Plaintiffs with the applicable piece rate in effect during the relevant pay period and the number of piece-rate units earned.   The wage statements also failed to include the Plaintiffs' names, the last four digits of his/her social security number or other employee identification number, and Instacart's name and address. Defendants' failure to do so was knowing and intentional.

228.     Plaintiffs suffered actual injury as a result of Defendants' knowing and intentional failure to keep and provide accurate records of said information, because Plaintiffs could not promptly and easily determine from the wage statement alone the following information: (1) the total number of hours they worked, including how much overtime they had worked; (2) the piece rate and the number of piece-rate units earned (when Plaintiffs were paid based on a piece rate); (3) the hourly rate in effect (when Plaintiffs were paid on an hourly basis); (4) the deductions taken by Instacart, if any; and (5) Instacart's address. Plaintiffs could not readily ascertain this information without reference to other documents or information, if at all.

229.     As a result of Defendants' conduct, Plaintiffs are entitled pursuant to California Labor Code § 226(e) to all monetary and other damages permitted under the California Labor Code and any other applicable law, reasonable attorneys' fees and costs of suit, as well as the assessment of any other statutory penalties and injunctive relief against Defendants.

230.     This claim is brought by Plaintiffs Husting and Clayton on behalf of themselves and a class of similarly situated individuals who have worked for Instacart in California.

///

///

EIGHTH CAUSE OF ACTION
CALIFORNIA: FAILURE TO REIMBURSE EXPENSES
(Cal. Labor Code §§ 224 & 2802)

231.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

232.    Throughout their employment, Plaintiffs incurred expenditures or losses related to their employment and in direct consequence of the discharge of their duties as Defendants' employees, or of their obedience to the directions of Defendants.

233.    Defendants failed to reimburse or indemnify Plaintiffs for these expenditures or losses. Items and services that Plaintiffs were required to purchase include, but are not limited to gas, automotive insurance, other vehicle maintenance services, parking privileges, smartphones, and smartphone data packages.

234.    By the conduct described herein, Defendants have violated the California Labor Code.

235.    As a result of Defendants' violations, Plaintiffs are entitled to reimbursement of the incurred expenses pursuant to California Labor Code §§ 224 and 2802, as well as attorneys' fees and costs incurred as a result of such conduct.

236.    This claim is brought by Plaintiffs Husting and Clayton on behalf of themselves and a class of similarly situated individuals who have worked for Instacart in California.[4]

NINTH CAUSE OF ACTION
CALIFORNIA: UNFAIR, UNLAWFUL, FRAUDULENT BUSINESS PRACTICES
(Cal. Bus. & Prof. Code § 17200, et seq.)

237.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein. Instacart has engaged in unfair, unlawful, and fraudulent business practices as set forth above. By engaging in the above-described acts and practices, Instacart has committed one or more acts of unfair competition within the meaning of Section 17200 of the California Business and Professions Code ("UCL").  These acts and practices constitute a continuing and ongoing unfair and/or unlawful business activity defined by the UCL, and justify the issuance of an injunction, restitution, and other equitable relief pursuant to the UCL.

**Instacart's Unlawful Business Practices:**

238.    Instacart has unlawfully treated Plaintiffs as independent contractors for purposes of business-related expenses and wages to avoid payment of overtime wages and other benefits in

---

[4] Plaintiffs Husting and Clayton do not seek civil penalties in relation to their third through eighth causes of action alleged herein, because those civil penalties are being sought via a representative action brought pursuant to California's Private Attorney General Act of 2004 (Cal. Lab. Code, §§ 2698 *et seq.*) ("PAGA") by the plaintiffs in a related action, *Cobarruviaz v. Maplebear, Inc. dba Instacart*, Case No. 3:15-cv-00697-EMC (N.D. Cal.) (filed Jan. 5, 2015), which is currently pending before the Honorable Edward M. Chen of this District.

violation of, inter alia, the FLSA, the California Labor and Civil Code, and the applicable IWC Orders.  In addition, Instacart has wrongly, illegally, and unfairly failed to compensate Plaintiffs for work-related expenses including but not limited to gas, vehicle maintenance services, car insurance, smartphone, and smartphone data package.

239.   Instacart has violated and continues to violate Business & Professions Code § 17200's prohibition against engaging in "unlawful" business acts or practices by, inter alia:

- Violating, and continuing to violate, the FLSA, 29 U.S.C. §§ 207(a)(1) & 215(a), as set forth above;

- Violating, and continuing to violate, the FLSA, 29 U.S.C. § 211(c) and § 215(a), as set forth above;

- Violating, and continuing to violate, the FLSA, 29 U.S.C. § 255(a), as set forth above;

- Violating, and continuing to violate, Cal. Labor Code §§ 216, 1194 & 1197, as set forth above;

- Violating, and continuing to violate, Cal. Labor Code §§ 204, 510, 1194 & 1198, as set forth above;

- Violating, and continuing to violate, Cal. Labor Code §§ 226.7, 512, 1194 & 1197, as set forth above;

- Violating, and continuing to violate, Cal. Labor Code §§ 224 & 2802, as set forth above;

- For fraud/intentional misrepresentation, as set forth below;

- For tortious interference with a prospective economic advantage, as set forth below; and

- For conversion, as set forth below.

240.   Instacart has also violated and continues to violate Business & Professions Code § 17200's prohibition against engaging in "unlawful" business acts or practices by violating, and continuing to violate, Cal. Labor Code § 351.  As alleged above, in or around September 2016, Instacart renamed the "tip" option in the payment screen of its mobile app to be called a "service" amount.  Despite its name, the "service" amount was a gratuity. The "service" amount was entirely optional, and customers had full discretion over how much of a "service" amount to pay and whether or not to pay it at all.  Indeed, customers had the option of "waiving" the service amount all together.  Despite this payment being a tip, Defendants failed to remit the entirety of the tip to Plaintiffs. Defendants misled customers to think the "service" amount was a gratuity by

failing to properly disclose the nature of the payment and a reasonable customer would likely believe that the "service" amount was a gratuity intended for the shopper. As a result of this belief that the "service" amount was a tip, customers neglected to leave an "additional tip" for their shoppers.

241.    Plaintiffs have suffered injury in fact and lost money and/or property as a result of Instacart's unlawful business acts and practices by, *inter alia*, being deprived of compensation for all hours worked including overtime.

### Instacart's Fraudulent Business Practices:

242.    Instacart's acts and practices, as described above, constitute fraudulent business practices within the meaning of Business & Professions Code, §§ 17200, *et seq.*

243.    As described herein, Instacart failed to keep accurate records of the hours worked by Plaintiffs in violation of the FLSA, 29 U.S.C. § 211(c) and § 215(a). At all relevant times, Instacart provided Plaintiffs with false records of pay indicating the hours worked, wages paid for the hours worked, applicable pay rates, and other information as is alleged above in Plaintiffs' seventh cause of action.  In addition, based on fraudulent reporting of hours worked and wages paid, inaccurate information regarding state and federal deductions was provided to Plaintiffs.

244.    Additionally, as described herein, Instacart represented to Plaintiffs that they, alone, were responsible for the performance of her work and that they, alone, determined the method, details, and means of performing their work.  These representations were false.

245.    Intacart also represented Plaintiffs were independent contractors not entitled to the compensation and reimbursements set forth above, which was, in fact, also false.

246.    A reasonable person would likely have been deceived by all of these representations, acts, and practices and they therefore constitute fraudulent business within the meaning of the UCL.

247.    Intacart knew the falsehood of these representations and intended to, and did, induce Plaintiffs' reliance thereupon.  Plaintiffs relied upon the truth of the representations, causing economic harm.

248.    Plaintiffs suffered concrete and identifiable economic injuries as a consequence of Instacart's misleading and fraudulent conduct, including but not limited to unpaid wages, including overtime.

### Instacart's Unfair Business Practices:

249.    Instacart's acts and practices, as described above, constitute unfair business practices within the meaning of Business & Professions Code, §§ 17200, *et seq.*  Such acts and practices were against established public policy and were pursued to attain an unjustified monetary advantage for Instacart by creating personal disadvantage and hardship to its employees.

250.    Instacart's conduct does not benefit workers or competition. Indeed, the injury to Plaintiffs as a result of Instacart's conduct is far greater than any alleged countervailing benefit. Plaintiffs could not have reasonably avoided the injury they suffered.

251.    The gravity of the consequences of Instacart's conduct as described above outweighs any justification, motive or reason therefore, is immoral, unethical, oppressive, unscrupulous, and is contrary to the public welfare since it transgresses civil statutes of the State of California designed to protect workers from exploitation.

252.    Plaintiffs have suffered injury in fact and lost money and/or property as a result of Instacart's unfair business acts and practices by, inter alia, being deprived of compensation for all hours worked including overtime.

253.    By and through its unfair, fraudulent, and/ unlawful business practices and acts described herein, Instacart has obtained valuable services from Plaintiffs and has deprived Plaintiffs of valuable rights and benefits guaranteed by law, all to their detriment. Plaintiffs seek an award of restitution, disgorgement, injunctive relief and all other relief allowed under the UCL, including interest and attorneys' fees pursuant to, *inter alia*, Cal. Code of Civ. Proc. § 1021.5.

254.    This claim is brought by Plaintiffs Husting and Clayton on behalf of themselves and a class of similarly situated individuals who have worked for Instacart in California.

TENTH CAUSE OF ACTION
CALIFORNIA: FRAUD/INTENTIONAL MISREPRESENTATION
(California Common Law)

255.    Plaintiffs hereby reallege and incorporates by reference all paragraphs above as if set forth in detail herein.

256.    Instacart represented to Plaintiffs that they, alone, were responsible for the performance of their work and that they, alone, determined the method, details, and means of performing their work.  These representations were, in fact, false.

257.    Intacart also represented to Plaintiffs that Plaintiffs were independent contractors not entitled to the compensation and reimbursements set forth above, which was, in fact, also false.

258.   Instacart, at the time it made the representations set forth above, knew the falsehood of these representations and intended to, and did, induce Plaintiffs' reliance thereupon.  Plaintiffs reasonably relied upon the truth of the aforementioned statements and representations in entering into and continuing in an employment relationship with Instacart according to the terms established by Instacart.  Plaintiffs' reliance was a substantial factor in causing economic harm.

259.   As a direct, proximate and foreseeable result of Instacart's misrepresentations and fraudulent conduct, Plaintiffs suffered concrete and identifiable economic injuries, including but not limited to unpaid wages, including overtime.

260.   This claim is brought by Plaintiffs Husting and Clayton on behalf of themselves and a class of similarly situated individuals who have worked for Instacart in California.

<center>ELEVENTH CAUSE OF ACTION<br>CALIFORNIA: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE<br>(California Common Law)</center>

261.   Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

262.   As alleged above, in or around September 2016, Instacart renamed the "tip" option in the payment screen of its mobile app to "service."

263.   Prior to the change in the tipping structure, 50 to 60 percent of Plaintiffs' income came from tips. Since the change, Plaintiffs have suffered a drastic decrease in tips received.

264.   Instacart intentionally and maliciously recharacterized the tip as a "service" amount but kept it optional in order to mislead and confuse customers into believing that the extra compensation they chose to add to their bill was going to the shoppers, when in fact the money went directly to Instacart.

265.   Additionally, Instacart intentionally and maliciously created an "additional tip" option to mislead customers into believing that an "additional tip" would be duplicative of any discretionary payment they had already chosen to give under the guise of a "service" amount. Instacart did so in order to appropriate the money customers would otherwise have chosen to give directly to their Shoppers. Defendants misled customers to think the "service" amount was a gratuity by failing to properly disclose the nature of the payment and a reasonable customer would likely believe that the "service" amount was a gratuity intended for the Shopper.

266.    At the time a customer entered the payment screen, an economic relationship had formed between the customer and Shopper.

267.    At the time when the customer entered the payment screen, there was a high probability of future economic benefit to the Shopper in the form of a tip.

268.    Instacart's changes to the App's tipping structure were independent wrongful acts in violation of the FLSA's prohibition of invalid tip-pools.

269.    At all times, Instacart had knowledge of the economic relationship formed between Plaintiffs and the customers.

270.    At all times, Instacart acted intentionally and maliciously to disrupt the economic relationship between Plaintiffs and the customers by interfering with Plaintiffs' enjoyment of an expectancy of tips from customers.

271.    Instacart's changes to the tipping structure caused actual disruption of the economic relationship between Plaintiffs and the customers.

272.    As a direct, proximate, and foreseeable result of Defendant's intentional acts and conduct, Plaintiffs have suffered, and will continue to suffer, economic injuries.

273.    This claim is brought by Plaintiffs Husting and Clayton on behalf of themselves and a class of similarly situated individuals who have worked for Instacart in California.

<div align="center">

TWELFTH CAUSE OF ACTION
CALIFORNIA: CONVERSION
(California Common Law)

</div>

274.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

275.    Under the FLSA, tips are the property of the employees to whom they are paid. Thus, Plaintiffs had a right to possess the full amount of tips given to them by customers.

276.    As alleged above, the optional "service" amount paid by customers was actually a tip to which the Shopper was entitled.

277.    Defendants wrongfully and illegally took from Plaintiffs a portion of the tips given to Plaintiffs by customers.

278.    Plaintiffs suffered economic harm in the amount of the tips misappropriated by Defendants.

279.    This claim is brought by Plaintiffs Husting and Clayton on behalf of themselves and a

class of similarly situated individuals who have worked for Instacart in California.

**NEW YORK CLASS ACTION ALLEGATIONS**

280.    Plaintiff LaDia Armstrong asserts, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart Shoppers who have worked in New York anytime from December 1, 2010 to the present ("New York Class"), claims under New York state law, specifically, the thirteenth through twenty-first causes of action.

281.    Plaintiff Armstrong and other New York Class members have uniformly been deprived reimbursement of their necessary business expenditures and minimum and overtime wages.

282.    The members of the New York Class are so numerous that joinder of all members would be impracticable.

283.    There are questions of law and fact common to the members of the New York Class that predominate over any questions affecting only individual members, including:

a.    Whether New York Class members have been required to follow uniform procedures and policies regarding their work for Instacart;

b.    Whether the work performed by New York Class members—providing grocery shopping and/or delivery service to customers—is within Instacart's usual course of business, and whether such service is fully integrated into Instacart's business;

c.    Whether Defendants failed to pay Plaintiff for all hours of work performed in violation of New York law;

d.    Whether Defendants failed to reimburse Plaintiff for expenses incurred during the course of their employment;

e.    Whether Defendants' conduct violates the New York Labor Law;

f.    Whether Defendants' conduct violates Title 12, Sections 142-2.2, 142-2.3, and 142-2.4 of the New York Compilation of Codes, Rules, and Regulations;

g.    Whether Defendants' conduct otherwise violates New York law; and

h.    Whether, as a result of Defendants' misconduct, Plaintiff is entitled to damages, restitution, equitable relief and/or other damages and relief, and, if so, the amount and nature of such relief.

284.    Named Plaintiff LaDia Armstrong is a member of the New York Class who suffered

damages as a result of Defendants' conduct and actions alleged herein.

285.    The claims of Plaintiff Armstrong are typical of the claims of the members of the New York Class.  Plaintiff Armstrong has no interests antagonistic to those of the New York Class and is not subject to any unique defenses.

286.    Plaintiff Armstrong will fairly and adequately represent and protect the interests of all members of the New York Class and have retained attorneys experienced in class action and complex litigation.

287.    The questions of law and fact common to the members of the New York Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

288.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons:

   a.      It is economically impractical for members of the New York Class to prosecute individual actions;

   b.      The New York Class is readily definable;

   c.      Prosecution as a class action will eliminate the possibility of repetitious litigation; and

   d.      A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

289.    Plaintiff Armstrong does not anticipate any difficulty in the management of this litigation.

THIRTEENTH CAUSE OF ACTION
NEW YORK: FAILURE TO PAY OVERTIME WAGES
(N.Y. Comp. Codes R. & Regs. 12, § 142-2.2)

290.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

291.    Plaintiff has been and is expected to regularly work in excess of forty (40) hours per week.  Plaintiff has regularly worked and continues to regularly work in excess of 40 hours per week.

292.    At all relevant times, Defendants failed to pay Plaintiff and all persons similarly situated overtime wages when due, as required by N.Y. Comp. Codes R. & Regs. 12, § 142-2.2.

293.    Such a pattern, practice and uniform administration of a corporate policy designed to

deprive employees of compensation, as described herein, is unlawful and creates an entitlement to recovery by the Plaintiff, in a civil action, for the unpaid balance of the amount of overtime and other compensation, including interest thereon, civil penalties, including, but not limited to, penalties available under the New York Labor Law §§ 198 and 663, reasonable attorneys' fees and costs of suit, as well as the assessment of any other statutory penalties, including waiting time penalties, against Defendants.

294.    This claim is brought by Plaintiff Armstrong on behalf of herself and a class of similarly situated individuals who have worked for Instacart in New York.

<div align="center">

FOURTEENTH CAUSE OF ACTION
NEW YORK: FAILURE TO PAY MINIMUM WAGES
(N.Y. Lab. Law § 652)

</div>

295.    Plaintiff realleges and incorporates the above allegations by reference as if set forth fully herein.

296.    Defendants, and each of them, pursuant to uniform policies and practices, failed to compensate Plaintiff at a rate not less than the minimum wage for all hours worked in violation of New York state law, including N.Y. Lab. Law § 652 and N.Y. Comp. Codes R. & Regs. 12, § 142-2.1.

297.    As a result of Defendants' conduct, Plaintiff is entitled to all monetary and other damages permitted under the New York Labor Law and any other applicable law, including, but not limited to, civil penalties pursuant to N.Y. Labor Law §§ 198 and 663.

298.    This claim is brought by Plaintiff Armstrong on behalf of herself and a class of similarly situated individuals who have worked for Instacart in New York.

<div align="center">

FIFTEENTH CAUSE OF ACTION
NEW YORK: FAILURE TO PAY SPREAD OF HOURS PAY
(N.Y. Comp. Codes R. & Regs. 12, § 142-2.4)

</div>

299.    Plaintiff realleges and incorporates the above allegations by reference as if set forth fully herein.

300.    N.Y. Comp. Codes R. & Regs. 12, § 142-2.4 requires that employees receive one hour's pay at the basic minimum hourly wage rate, in addition to the statutorily required minimum wage, for any day which the spread of hours exceeds ten (10) hours.

301.    Defendants, and each of them, pursuant to uniform policies and practices, failed to compensate Plaintiff the required additional hour of compensation at the minimum hourly wage

rate for shifts that exceeded ten (10) hours, in violation of N.Y. Comp. Codes R. & Regs. 12, § 142-2.4.

302.    As a result of Defendants' conduct, Plaintiff is entitled to all monetary and other damages permitted under the New York Labor Law and any other applicable law, including, but not limited to, civil penalties pursuant to N.Y. Labor Law §§ 198 and 663.

303.    This claim is brought by Plaintiff Armstrong on behalf of herself and a class of similarly situated individuals who have worked for Instacart in New York.

<div align="center">

SIXTEENTH CAUSE OF ACTION
NEW YORK: FAILURE TO PAY CALL-IN PAY
(N.Y. Comp. Codes R. & Regs. 12, § 142-2.3)

</div>

304.    Plaintiff realleges and incorporates the above allegations by reference as if set forth fully herein.

305.    N.Y. Comp. Codes R. & Regs. 12, § 142-2.3 requires that employees who, by request or permission of the employer, report for work on any day be paid for at least four hours, or the number of hours in the regularly scheduled shift, whichever is less, at the basic minimum hourly wage.

306.    At all relevant times, Defendants failed to pay Plaintiff and all persons similarly situated wages when due, as required by N.Y. Comp. Codes R. & Regs. 12, § 142-2.3.

307.    Defendants, and each of them, pursuant to uniform policies and practices, failed to compensate Plaintiff at a rate not less than the minimum wage for at least four hours per day for each day on which Plaintiff reported for work at the request of Defendant, or the number of hours in the regularly scheduled shift where in excess of four hours, in violation of N.Y. Comp. Codes R. & Regs. 12, § 142-2.3.

308.    As a result of Defendants' conduct, Plaintiff is entitled to all monetary and other damages permitted under the New York Labor Law and any other applicable law, including, but not limited to, civil penalties pursuant to N.Y. Labor Law §§ 198 and 663.

309.    This claim is brought by Plaintiff Armstrong on behalf of herself and a class of similarly situated individuals who have worked for Instacart in New York.

<div align="center">

SEVENTEENTH CAUSE OF ACTION
NEW YORK: FAILURE TO PROVIDE PROPER WAGE STATEMENT
(N.Y. Lab. Law § 195)

</div>

310.    Plaintiff realleges and incorporates the above allegations by reference as if set forth fully

herein.

311.    At all relevant times, Defendants failed to keep accurate records of pay indicating the hours worked and/or the wages paid for the hours worked by Plaintiff in violation of N.Y. Labor Law § 195.

312.    At all relevant times, Defendants failed to provide Plaintiff with statutorily required wage statements provided for in N.Y. Labor Law § 195.  Defendant failed to provide wage statements that indicate the hours worked and/or the wages paid for the hours worked.  In addition, based on fraudulent reporting of hours worked and wages paid, inaccurate information regarding state and federal deductions were provided to Plaintiff.

313.    As a result of Defendants' conduct, Plaintiff is entitled to all monetary and other damages permitted under the New York Labor Law and any other applicable law, including, but not limited to, statutory damages in the amount of two hundred and fifty dollars ($250) for each workweek that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars ($5,000) per Plaintiff, together with costs and reasonable attorneys' fees, as provided by the N.Y. Lab. Law § 198, and such other legal and equitable relief as the Court deems just and proper.

314.    This claim is brought by Plaintiff Armstrong on behalf of herself and a class of similarly situated individuals who have worked for Instacart in New York.

## EIGHTEENTH CAUSE OF ACTION
## NEW YORK: EMPLOYER RETENTION OF GRATUITIES
### (NY CLS Labor § 196-d)

315.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

316.    As alleged above, on or around September 28, 2016, Instacart renamed the "tip" option in the payment screen of its mobile app to "service."

317.    This "service" amount was entirely optional, and customers had full discretion over whether or not to pay it at all. Despite its name, the "service" amount was a gratuity.

318.    The Defendants never provided clear written notice in the mobile app that the "service" amount was not a gratuity.

319.    A reasonable customer would likely believe that the "service" amount was a gratuity intended for the shopper.

320.    As a result of this belief that the "service" amount was a tip, customers neglected to leave an "additional tip" for their shoppers.

321.    Plaintiff seeks to recover the "service" amounts paid for her delivery orders, attorneys' fees, interests, and costs.

322.    This claim is brought by Plaintiff Armstrong on behalf of herself and a class of similarly situated individuals who have worked for Instacart in New York.

<div align="center">

NINETEENTH CAUSE OF ACTION
NEW YORK: FRAUD/INTENTIONAL MISPREPRESENTATION
(New York Common Law)

</div>

323.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

324.    Instacart represented to Plaintiff that she, alone, was responsible for the performance of her work and that she, alone, determined the method, details, and means of performing her work. These representations were, in fact, false.

325.    Intacart also represented Plaintiff was an independent contractor not entitled to the compensation and reimbursements set forth above, which was, in fact, also false.

326.    Instacart, at the time it made the representations set forth above, knew the falsehood of these representations and intended to, and did, induce Plaintiff's reliance thereupon.  Plaintiff reasonably relied upon the truth of the aforementioned statements and representations in entering into and continuing in an employment relationship with Instacart according to the terms established by Instacart.  Plaintiff's reliance was a substantial factor in causing economic harm.

327.    As a direct, proximate and foreseeable result of Instacart's misrepresentations and fraudulent conduct, Plaintiff suffered concrete and identifiable economic injuries, including but not limited to unpaid wages, including overtime.

328.    This claim is brought by Plaintiff Armstrong on behalf of herself and a class of similarly situated individuals who have worked for Instacart in New York.

<div align="center">

TWENTIETH CAUSE OF ACTION
NEW YORK: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC
ADVANTAGE
(New York Common Law)

</div>

329.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

330.   As alleged above, on or around September 28, 2016, Instacart renamed the "tip" option in the payment screen of its mobile app to "service."

331.   Prior to the change in the tipping structure, 50 to 60 percent of Plaintiff's income came from tips. Since the change, Plaintiff has suffered a drastic decrease in tips received.

332.   Instacart intentionally and maliciously recharacterized the tip as a "service" amount but kept it optional in order to mislead and confuse customers into believing that the extra compensation they chose to add to their bill was going to the shoppers, when in fact the money went directly to Instacart.

333.   Additionally, Instacart intentionally and maliciously created an "additional tip" option to mislead customers into believing that an "additional tip" would be duplicative of any discretionary payment they had already chosen to give. Instacart did so in order to appropriate the money customers would otherwise have chosen to give directly to their shoppers.

334.   At the time the customer entered the payment screen, an economic relationship had formed between the customer and shopper.

335.   At the time when the customer entered the payment screen, there was a high probability of future economic benefit to the shopper in the form of tips.

336.   Instacart's changes to the app's tipping structure were an independent wrongful act in violation of the FLSA's prohibition of invalid tip-pools.

337.   At all times, Instacart had knowledge of the economic relationship formed between Plaintiff and the customers.

338.   At all times, Instacart acted intentionally and maliciously to disrupt the economic relationship between Plaintiff and the customers by interfering with Plaintiff's enjoyment of an expectancy of tips from customers.

339.   Instacart's change in its tipping structure caused actual disruption of the economic relationship between Plaintiff and the customers.

340.   As a direct, proximate, and foreseeable result of Defendant's intentional acts and conduct, Plaintiff has suffered, and will continue to suffer, economic injuries.

341.   This claim is brought by Plaintiff Armstrong on behalf of herself and a class of similarly situated individuals who have worked for Instacart in New York.

TWENTY-FIRST CAUSE OF ACTION
NEW YORK: CONVERSION

(New York Common Law)

342.   Plaintiff hereby realleges and incorporate by reference all paragraphs above as if set forth in detail herein.

343.   Under the FLSA, tips are the property of the employees to whom they are paid. Thus, Plaintiff had a right to possess the full amount of tips given to her by customers.

344.   As alleged above, the optional "service" amount paid by customers was actually a tip.

345.   Defendants wrongfully and illegally took from Plaintiff a portion of the tips given to Plaintiff by customers.

346.   Plaintiff suffered economic harm in the amount of the tips misappropriated by Defendants.

347.   This claim is brought by Plaintiff Armstrong on behalf of herself and a class of similarly situated individuals who have worked for Instacart in New York.

## PENNSYLVANIA CLASS ACTION ALLEGATIONS

348.   Plaintiff Stefanie Weidner asserts, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart Shoppers who have worked in Pennsylvania anytime from November 2013 to the present ("Pennsylvania Class"), claims under Pennsylvania state law, specifically, the twenty-second through twenty-eighth causes of action.

349.   Plaintiff Weidner and other Pennsylvania Class members have uniformly been deprived reimbursement of their necessary business expenditures and minimum and overtime wages.

350.   The members of the Pennsylvania Class are so numerous that joinder of all members would be impracticable.

351.   There are questions of law and fact common to the members of the Pennsylvania Class that predominate over any questions affecting only individual members, including:

   a.   Whether Pennsylvania Class members have been required to follow uniform procedures and policies regarding their work for Instacart;

   b.   Whether the work performed by Pennsylvania Class members—providing grocery shopping and/or delivery service to customers—is within Instacart's usual course of business, and whether such service is fully integrated into Instacart's business;

   c.   Whether Defendants failed to pay Plaintiff for all hours of work performed in

violation of Pennsylvania law;

d.      Whether Defendants failed to reimburse Plaintiff for expenses incurred during the course of their employment;

e.      Whether Defendants' conduct violates the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 43 Pa. Cons. Stat. §§ 333.101 *et seq.*;

f.      Whether Defendants' conduct violates the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 Pa. Cons. Stat. §§ 260.1 *et seq.*;

g.      Whether Defendants' conduct violates the Pennsylvania Code of administrative regulations;

h.      Whether Defendants' conduct otherwise violates Pennsylvania law; and

i.      Whether, as a result of Defendants' misconduct, Plaintiff is entitled to damages, restitution, equitable relief and/or other damages and relief, and, if so, the amount and nature of such relief.

352.    Named Plaintiff Weidner is a member of the Pennsylvania Class who suffered damages as a result of Defendant's conduct and actions alleged herein.

353.    The claims of Plaintiff Weidner are typical of the claims of the members of the Pennsylvania Class.  Plaintiff Weidner has no interests antagonistic to those of the Pennsylvania Class and is not subject to any unique defenses.

354.    Plaintiff Weidner will fairly and adequately represent and protect the interests of all members of the Pennsylvania Class and have retained attorneys experienced in class action and complex litigation.

355.    The questions of law and fact common to the members of the Pennsylvania Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

356.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons:

a.      It is economically impractical for members of the Pennsylvania Class to prosecute individual actions;

b.      The Pennsylvania Class is readily definable;

c.      Prosecution as a class action will eliminate the possibility of repetitious litigation;

and

d.      A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

357.    Plaintiff Weidner does not anticipate any difficulty in the management of this litigation.

<div align="center">

TWENTY-SECOND CAUSE OF ACTION
PENNSYLVANIA: UNPAID WAGES
(Penn. Wage Payment and Collection Law, 43 Pa. Cons. Stat. § 260.3)

</div>

358.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

359.    Defendants, and each of them, have violated and continue to violate the PWPCL, 43 Pa. Cons. Stat. § 260.3 by willfully refusing to pay wages – including the benefits described above – due and payable to Plaintiff.  As more fully set forth above, Plaintiff was not compensated for non-productive hours worked.  Additionally, Plaintiff worked well in excess of 40 hours per week without being appropriately compensated for hours worked in excess of 40 hours per week. These unpaid hours include overtime that should have been paid.

360.    Equally, Defendants denied that any wages due for non-productive work and work in excess of 40 hours per week were due to be paid to Plaintiff even though each Defendants knew that under any set of circumstances or facts, Plaintiff was entitled to be paid for each hour that she worked.  Defendants have falsely denied and refused and continue to deny falsely and refuse payment for purposes of securing a material economic benefit to themselves and with the intent to annoy, harass, oppress, hinder, and defraud Plaintiff.

361.    Such a pattern, practice and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement to recovery by the Plaintiff, in a civil action pursuant to 43 Pa. Cons. Stat. § 260.9a, for the unpaid balance of the amount of overtime and other compensation, including interest thereon, civil penalties, including, but not limited to, penalties available under 43 Pa. Cons. Stat. § 260.10, reasonable attorneys' fees and costs of suit, as well as the assessment of any other statutory penalties and liquidated damages, pursuant to 43 Pa. Cons. Stat. § 260.9a, against Defendants and such other legal and equitable relief as the Court deems just and proper.

362.    This claim is brought by Plaintiff Weidner on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Pennsylvania.

<div align="center">

Collective Action Complaint and Class Action Complaint
61

</div>

### TWENTY-THIRD CAUSE OF ACTION
### PENNSYLVANIA: FAILURE TO PAY OVERTIME
(Penn. Minimum Wage Act, 43 Pa. Cons. Stat. § 333.104(c); 34 Pa. Code § 231.41)

363.   Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

364.   Plaintiff has been and are expected to regularly work in excess of forty (40) hours per week.  Plaintiff has regularly worked and continue to regularly work in excess of 40 hours per week.

365.   At all relevant times, Defendants failed to pay Plaintiff and all persons similarly situated overtime wages when due, as required by the PMWA, 43 Pa. Cons. Stat. § 333.104(c), and 34 Pa. Code § 231.41.

366.   Such a pattern, practice and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement to recovery by the Plaintiff, in a civil action pursuant to 43 Pa. Cons. Stat. § 333.113, for the unpaid balance of the amount of overtime and other compensation, including interest thereon, reasonable attorneys' fees and costs of suit, as well as civil penalties against Defendants and such other legal and equitable relief as the Court deems just and proper.

367.   This claim is brought by Plaintiff Weidner on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Pennsylvania.

### TWENTY-FOURTH CAUSE OF ACTION
### PENNSYLVANIA: FAILURE TO PAY MINIMUM WAGES
(Penn. Minimum Wage Act, 43 Pa. Cons. Stat. § 333.104(a))

368.   Plaintiff realleges and incorporates the above allegations by reference as if set forth fully herein.

369.   Defendants, and each of them, pursuant to uniform policies and practices, failed to compensate Plaintiff at a rate not less than the minimum wage for all hours worked in violation of the PMWA, 43 Pa. Cons. Stat. § 333.104(a).

370.   As a result of Defendants' conduct, Plaintiff is entitled to all monetary and other damages permitted under Pennsylvania law and any other applicable law, including, but not limited to, liquidated damages equal in amount to the unpaid compensation for the hours worked for which she did not receive compensation equal to the minimum wage, together with interest, costs and reasonable attorneys' fees, pursuant to 43 Pa. Cons. Stat. § 333.113.

371.    This claim is brought by Plaintiff Weidner on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Pennsylvania.

<div align="center">

TWENTY-FIFTH CAUSE OF ACTION
PENNSYLVANIA: FAILURE TO PROVIDE PROPER WAGE STATEMENT
(43 Pa. Cons. Stat. § 333.108; 34 Pa. Code §§ 231.31 & 231.36)

</div>

372.    Plaintiff realleges and incorporates the above allegations by reference as if set forth fully herein.

373.    Pursuant to 43 Pa. Cons. Stat. § 333.108 and 34 Pa. Code § 231.31, employers are required to keep a true and accurate record of, among other items, the hours worked each day and each workweek by its employees, and how much overtime was worked.  Additionally, pursuant to 34 Pa. Code § 231.36, employers are required to furnish a statement to all employees with each payment of wages indicating the number of hours worked during the specific pay period.

374.    At all relevant times, Defendants failed to keep accurate records of pay indicating the hours worked and/or the wages paid for the hours worked by Plaintiff in violation of 43 Pa. Cons. Stat. § 333.108 and 34 Pa. Code § 231.31.

375.    At all relevant times, Defendants did not furnish accurate statements to Plaintiff, in violation of 34 Pa. Code § 231.36.  Defendants failed to provide wage statements that indicate the hours worked and/or the wages paid for the hours worked.  In addition, based on fraudulent reporting of hours worked and wages paid, inaccurate information regarding state and federal deductions were provided to Plaintiff.

376.    Therefore, Plaintiff Weidner, on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Pennsylvania, request all such relief that this Court deems appropriate pursuant to Pennsylvania law and other applicable rules and regulations.

///

///

///

<div align="center">

TWENTY-SIXTH CAUSE OF ACTION
PENNSYLVANIA: FRAUD/INTENTIONAL MISPREPRESENTATION
(Pennsylvania Common Law)

</div>

377.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

378.     Instacart represented to Plaintiff that she, alone, was responsible for the performance of her work and that she, alone, determined the method, details, and means of performing her work. These representations were, in fact, false.

379.     Intacart also represented Plaintiff was an independent contractor not entitled to the compensation and reimbursements set forth above, which was, in fact, also false.

380.     Instacart, at the time it made the representations set forth above, knew the falsehood of these representations and intended to, and did, induce Plaintiff's reliance thereupon.  Plaintiff reasonably relied upon the truth of the aforementioned statements and representations in entering into and continuing in an employment relationship with Instacart according to the terms established by Instacart.  Plaintiff's reliance was a substantial factor in causing economic harm.

381.     As a direct, proximate and foreseeable result of Instacart's misrepresentations and fraudulent conduct, Plaintiff suffered concrete and identifiable economic injuries, including but not limited to unpaid wages, including overtime.

382.     This claim is brought by Plaintiff Weidner on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Pennsylvania.

<div align="center">

TWENTY-SEVENTH CAUSE OF ACTION
PENNSYLVANIA: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
(Pennsylvania Common Law)

</div>

383.     Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

384.     As alleged above, on or around September 28, 2016, Instacart renamed the "tip" option in the payment screen of its mobile app to "service."

385.     Prior to the change in the tipping structure, 50 to 60 percent of Plaintiff's income came from tips. Since the change, Plaintiff has suffered a drastic decrease in tips received.

386.     Instacart intentionally and maliciously recharacterized the tip as a "service" amount but kept it optional in order to mislead and confuse customers into believing that the extra compensation they chose to add to their bill was going to the shoppers, when in fact the money went directly to Instacart.

387.     Additionally, Instacart intentionally and maliciously created an "additional tip" option to mislead customers into believing that an "additional tip" would be duplicative of any

discretionary payment they had already chosen to give. Instacart did so in order to appropriate the money customers would otherwise have chosen to give directly to their shoppers.

388.    At the time the customer entered the payment screen, an economic relationship had formed between the customer and shopper.

389.    At the time when the customer entered the payment screen, there was a high probability of future economic benefit to the shopper in the form of tips.

390.    Instacart's changes to the app's tipping structure were an independent wrongful act in violation of the FLSA's prohibition of invalid tip-pools.

391.    At all times, Instacart had knowledge of the economic relationship formed between Plaintiff and the customers.

392.    At all times, Instacart acted intentionally and maliciously to disrupt the economic relationship between Plaintiff and the customers by interfering with Plaintiff's enjoyment of an expectancy of tips from customers.

393.    Instacart's change in its tipping structure caused actual disruption of the economic relationship between Plaintiff and the customers.

394.    As a direct, proximate, and foreseeable result of Defendant's intentional acts and conduct, Plaintiff has suffered, and will continue to suffer, economic injuries.

395.    This claim is brought by Plaintiff Weidner on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Pennsylvania.

<div align="center">

TWENTY-EIGHTH CAUSE OF ACTION
PENNSYLVANIA: CONVERSION
(Pennsylvania Common Law)

</div>

396.    Plaintiff hereby realleges and incorporate by reference all paragraphs above as if set forth in detail herein.

397.    Under the FLSA, tips are the property of the employees to whom they are paid. Thus, Plaintiff had a right to possess the full amount of tips given to her by customers.

398.    As alleged above, the optional "service" amount paid by customers was actually a tip.

399.    Defendants wrongfully and illegally took from Plaintiff a portion of the tips given to Plaintiff by customers.

400.    Plaintiff suffered economic harm in the amount of the tips misappropriated by Defendants.

401.    This claim is brought by Plaintiff Weidner on behalf of herself and a class of similarly situated individuals who have worked for Instacart in New York.

## COLORADO CLASS ACTION ALLEGATIONS

402.    Plaintiff Connolly asserts, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart shoppers, drivers and delivery persons who have worked in Colorado any time from December 1, 2013 to the present ("Colorado Class"), claims under Colorado state law, specifically, the twenty-ninth through thirty-fifth causes of action.

403.    Plaintiff Connolly and other Colorado Class members have uniformly been deprived reimbursement of their necessary business expenditures and minimum and overtime wages.

404.    The members of the Colorado Class are so numerous that joinder of all members would be impracticable.

405.    There are questions of law and fact common to the members of the Colorado Class that predominate over any questions affecting only individual members, including:

a.      Whether Colorado Class members have been required to follow uniform procedures and policies regarding their work for Instacart;

b.      Whether the work performed by Colorado Class members—providing grocery shopping and/or delivery service to customers—is within Instacart's usual course of business, and whether such service is fully integrated into Instacart's business;

c.      Whether Defendants failed to pay Plaintiff for all hours of work performed in violation of Colorado law;

d.      Whether Defendants failed to reimburse Plaintiff for expenses incurred during the course of their employment;

e.      Whether Defendants' conduct violates the Colorado Wage Claim Act ("CWCA"), Colo. Rev. Stat. §§ 8-4-101 *et seq.*;

f.      Whether Defendants' conduct violates the Colorado Minimum Wage of Workers Act ("CMWA"), Colo. Rev. Stat. §§ 8-6-101 *et seq.* as implemented by the Colorado Minimum Wage Order, No. 31 ("MWO"), 7 Colo. Code Regs. § 1103-1;

g.      Whether Defendants' conduct otherwise violates Colorado law; and

h.      Whether, as a result of Defendants' misconduct, Plaintiff is entitled to damages,

restitution, equitable relief and/or other damages and relief, and, if so, the amount and nature of such relief.

406.   Named Plaintiff Connolly is a member of the Colorado Class who suffered damages as a result of Defendant's conduct and actions alleged herein.

407.   Plaintiff Connolly's claims are typical of the claims of the members of the Colorado Class.  Plaintiff Connolly has no interests antagonistic to those of the Colorado Class and is not subject to any unique defenses.

408.   Plaintiff Connolly will fairly and adequately represent and protect the interests of all members of the Colorado Class and has retained attorneys experienced in class action and complex litigation.

409.   The questions of law and fact common to the members of the Colorado Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

410.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons:

a.   It is economically impractical for members of the Colorado Class to prosecute individual actions;

b.   The Colorado Class is readily definable;

c.   Prosecution as a class action will eliminate the possibility of repetitious litigation; and

d.   A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

411.   Plaintiff Connolly does not anticipate any difficulty in the management of this litigation.

<div align="center">

TWENTY-NINTH CAUSE OF ACTION
COLORADO: FAILURE TO PAY OVERTIME WAGES
(Colo. Rev. Stat. §§ 8-6-101 *et seq.*; 7 Colo. Code Regs. § 1103-1)

</div>

412.   Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

413.   Plaintiff has been and is expected to regularly work in excess of twelve (12) hours per day and/or forty (40) hours per week.  Plaintiff has regularly worked and continues to regularly work in excess of twelve (12) hours per day and/or 40 hours per week.

414.    At all relevant times, Defendants failed to pay Plaintiff and all persons similarly situated overtime wages when due, as required by the CMWA, Colo. Rev. Stat. §§ 8-6-101 *et seq*., as implemented by the MWO, 7 Colo. Code Regs. § 1103-1:4.

415.    Such a pattern, practice and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement to recovery by the Plaintiff, in a civil action pursuant to 7 Colo. Code Regs. § 1103-1:18, for the unpaid balance of the full amount of overtime and other compensation, including interest thereon, civil penalties, reasonable attorneys' fees and costs of suit pursuant to Colo. Rev. Stat. § 8-6-118 and such other legal and equitable relief as the Court deems just and proper.

416.    This claim is brought by Plaintiff Connolly on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Colorado.

<div align="center">

THIRTIETH CAUSE OF ACTION
COLORADO: FAILURE TO PAY MINIMUM WAGES
(Colo. Rev. Stat. §§ 8-6-101 *et seq*.; 7 Colo. Code Regs. § 1103-1)

</div>

417.    Plaintiff realleges and incorporates the above allegations by reference as if set forth fully herein.

418.    Defendants, and each of them, pursuant to uniform policies and practices, failed to compensate Plaintiff at a rate not less than the minimum wage for all hours worked in violation of Colorado state law, including the CMWA, Colo. Rev. Stat. § 8-6-108.5 and the MWO, 7 Colo. Code Regs. § 1103-1:3.

419.    Such a pattern, practice and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement to recovery by the Plaintiff, in a civil action pursuant to Colo. Rev. Stat. § 8-6-118 and 7 Colo. Code Regs. § 1103-1:18, to damages equal to the difference between the minimum wage and actual wages received after accounting for deduction for job-related expenses, including interest thereon, reasonable attorneys' fees and costs of suit pursuant to Colo. Rev. Stat. § 8-6-118 and such other legal and equitable relief as the Court deems just and proper.

420.    This claim is brought by Plaintiff Connolly on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Colorado.

<div align="center">

THIRTY-FIRST CAUSE OF ACTION
COLORADO: FAILURE TO PAY WAGES FOR MEAL AND REST PERIODS
(Colo. Rev. Stat. §§ 8-6-101 *et seq*.; 7 Colo. Code Regs. §§ 1103-1:7, 1103-1:8)

</div>

421.   Plaintiff realleges and incorporates the above allegations by reference as if set forth fully herein.

422.   Defendants are required under Colorado law to pay Plaintiff for their time worked, including the time they spent working during their unpaid meal periods.  7 Colo. Code Regs. §§ 1103-1:2, 1103-1:7.

423.   Defendants have required and continue to require Plaintiff to work for periods of more than 5 hours per day with no provision of a meal period of at least 30 minutes, in violation of the MWO, 7 Colo. Code Regs. § 1103-1:7.

424.   Defendants have required and continue to require Plaintiff to work for periods of more than 4 hours per day with no provision of a rest period of at least 10 minutes, in violation of the MWO, 7 Colo. Code Regs. § 1103-1:8.

425.   Plaintiff was not properly provided with meal or rest periods as required by 7 Colo. Code Regs. §§ 1103-1:7 and 1103-1:8 for missed rest and/or meal periods on or after 2012.  As such, Defendants have not paid Plaintiff for her overtime wages related to unpaid meal periods.

426.   As a result of Defendants' conduct, Plaintiff is entitled to all monetary and other damages permitted under Colorado law and any other applicable law, and such other legal and equitable relief as the Court deems just and proper.

427.   This claim is brought by Plaintiff Connolly on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Colorado.

THIRTY-SECOND CAUSE OF ACTION
COLORADO: FAILURE TO PROVIDE PROPER WAGE STATEMENT
(Colo. Rev. Stat. § 8-4-103(4); 7 Colo. Code Regs. § 1103-1:12)

428.   Plaintiff realleges and incorporates the above allegations by reference as if set forth fully herein.

429.   At all relevant times, Defendants failed to keep accurate records of pay indicating the hours worked and/or the wages paid for the hours worked by Plaintiff in violation of the MWO, 7 Colo. Code Regs. § 1103-1:12.

430.   At all relevant times, Defendants failed to provide Plaintiff with statutorily required wage statements provided for in the CWCA, Colo. Rev. Stat. § 8-4-103(4) and the MWO, 7 Colo. Code Regs. § 1103-1:12. Defendant failed to provide wage statements that indicate the hours worked and/or the wages paid for the hours worked.  In addition, based on fraudulent reporting of hours

worked and wages paid, inaccurate information regarding state and federal deductions were provided to Plaintiff.

431.    Therefore, Plaintiff Connolly, on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Colorado, request all such relief that this Court deems appropriate pursuant to Colorado law and other applicable rules and regulations, in addition to an award of reasonable attorney's fees and costs pursuant to Colo. Rev. Stat. § 8-4-110(1).

432.    This claim is brought by Plaintiff Connolly on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Colorado.

THIRTY-THIRD CAUSE OF ACTION
COLORADO: FRAUD/INTENTIONAL MISPREPRESENTATION
(Colorado Common Law)

433.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

434.    Instacart represented to Plaintiff that she, alone, was responsible for the performance of her work and that she, alone, determined the method, details, and means of performing her work. These representations were, in fact, false.

435.    Intacart also represented Plaintiff was an independent contractor not entitled to the compensation and reimbursements set forth above, which was, in fact, also false.

436.    Instacart, at the time it made the representations set forth above, knew the falsehood of these representations and intended to, and did, induce Plaintiff's reliance thereupon.  Plaintiff reasonably relied upon the truth of the aforementioned statements and representations in entering into and continuing in an employment relationship with Instacart according to the terms established by Instacart.  Plaintiff's reliance was a substantial factor in causing economic harm.

437.    As a direct, proximate and foreseeable result of Instacart's misrepresentations and fraudulent conduct, Plaintiff suffered concrete and identifiable economic injuries, including but not limited to unpaid wages, including overtime.

438.    This claim is brought by Plaintiff Connolly on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Colorado.

THIRTY-FOURTH CAUSE OF ACTION
COLORADO: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC
ADVANTAGE

(Colorado Common Law)

439.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

440.    As alleged above, on or around September 28, 2016, Instacart renamed the "tip" option in the payment screen of its mobile app to "service."

441.    Prior to the change in the tipping structure, 50 to 60 percent of Plaintiff's income came from tips. Since the change, Plaintiff has suffered a drastic decrease in tips received.

442.    Instacart intentionally and maliciously recharacterized the tip as a "service" amount but kept it optional in order to mislead and confuse customers into believing that the extra compensation they chose to add to their bill was going to the shoppers, when in fact the money went directly to Instacart.

443.    Additionally, Instacart intentionally and maliciously created an "additional tip" option to mislead customers into believing that an "additional tip" would be duplicative of any discretionary payment they had already chosen to give. Instacart did so in order to appropriate the money customers would otherwise have chosen to give directly to their shoppers.

444.    At the time the customer entered the payment screen, an economic relationship had formed between the customer and shopper.

445.    At the time when the customer entered the payment screen, there was a high probability of future economic benefit to the shopper in the form of tips.

446.    Instacart's changes to the app's tipping structure were an independent wrongful act in violation of the FLSA's prohibition of invalid tip-pools.

447.    At all times, Instacart had knowledge of the economic relationship formed between Plaintiff and the customers.

448.    At all times, Instacart acted intentionally and maliciously to disrupt the economic relationship between Plaintiff and the customers by interfering with Plaintiff's enjoyment of an expectancy of tips from customers.

449.    Instacart's change in its tipping structure caused actual disruption of the economic relationship between Plaintiff and the customers.

450.    As a direct, proximate, and foreseeable result of Defendant's intentional acts and conduct, Plaintiff has suffered, and will continue to suffer, economic injuries.

451.   This claim is brought by Plaintiff Connolly on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Colorado.

<div align="center">

THIRTY-FIFTH CAUSE OF ACTION
COLORADO: CONVERSION
(Colorado Common Law)

</div>

452.   Plaintiff hereby realleges and incorporate by reference all paragraphs above as if set forth in detail herein.

453.   Under the FLSA, tips are the property of the employees to whom they are paid. Thus, Plaintiff had a right to possess the full amount of tips given to her by customers.

454.   As alleged above, the optional "service" amount paid by customers was actually a tip.

455.   Defendants wrongfully and illegally took from Plaintiff a portion of the tips given to Plaintiff by customers.

456.   Plaintiff suffered economic harm in the amount of the tips misappropriated by Defendants.

457.   This claim is brought by Plaintiff Connolly on behalf of themselves and a class of similarly situated individuals who have worked for Instacart in New York.

<div align="center">

**ILLINOIS CLASS ACTION ALLEGATIONS**

</div>

458.   Plaintiff Parsons asserts, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart shoppers, drivers and delivery persons who have worked in Illinois anytime from November 2013 to the present ("Illinois Class"), claims under Illinois state law, specifically, the thirty-sixth through forty-third causes of action.

459.   Plaintiff Parson and other Illinois Class members have uniformly been deprived reimbursement of their necessary business expenditures and minimum and overtime wages.

460.   The members of the Illinois Class are so numerous that joinder of all members would be impracticable.

461.   There are questions of law and fact common to the members of the Illinois Class that predominate over any questions affecting only individual members, including:

a.     Whether Illinois Class members have been required to follow uniform procedures and policies regarding their work for Instacart;

b.     Whether the work performed by Illinois Class members—providing grocery

<div align="center">

Collective Action Complaint and Class Action Complaint
72

</div>

shopping and/or delivery service to customers—is within Instacart's usual course of business, and whether such service is fully integrated into Instacart's business;

c.      Whether Defendants failed to pay Plaintiff for all hours of work performed in violation of Illinois law;

d.      Whether Defendants failed to reimburse Plaintiff for expenses incurred during the course of his employment;

e.      Whether Defendants' conduct violates the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. Ann. 115/4;

f.      Whether Defendants' conduct violates the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. Ann. 105/4, 105/4a, and 115/4;

g.      Whether Defendants' conduct violates Title 56 of the Illinois Administrative Code, § 300.540;

h.      Whether Defendants' conduct violates the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/2 and 505/7;

i.      Whether Defendants' conduct otherwise violates Illinois law; and

j.      Whether, as a result of Defendants' misconduct, Plaintiff is entitled to damages, restitution, equitable relief and/or other damages and relief, and, if so, the amount and nature of such relief.

462.    Named Plaintiff Parsons is a member of the Illinois Class who suffered damages as a result of Defendant's conduct and actions alleged herein.

463.    Plaintiff Parsons' claims are typical of the claims of the members of the Illinois Class. Plaintiff Parsons has no interests antagonistic to those of the Illinois Class and is not subject to any unique defenses.

464.    Plaintiff Parsons will fairly and adequately represent and protect the interests of all members of the Illinois Class and has retained attorneys experienced in class action and complex litigation.

465.    The questions of law and fact common to the members of the Illinois Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

466.    A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy for, inter alia, the following reasons:

     a.     It is economically impractical for members of the Illinois Class to prosecute individual actions;

     b.     The Illinois Class is readily definable;

     c.     Prosecution as a class action will eliminate the possibility of repetitious litigation; and

     d.     A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

467.    Plaintiff Parsons does not anticipate any difficulty in the management of this litigation.

<div align="center">

THIRTY-SIXTH CAUSE OF ACTION
ILLINOIS: UNPAID WAGES
(Ill. Wage Payment and Collection Act, 820 Ill. Comp. Stat. Ann. 115/4)

</div>

468.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

469.    Instacart has violated and continues to violate Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. Ann. 115/4 and Illinois Minimum Wage Law, 820 Ill. Comp. Stat. Ann. 105/4 by refusing to pay wages – including the benefits described above – due and payable to Plaintiff. As more fully set above, Plaintiff was not compensated for non-productive hours worked. Additionally, Plaintiff worked in excess of 40 hours per week without being appropriately compensated for hours worked in excess of 40 hours per week. These unpaid hours include overtime that should have been paid.

470.    Equally, Instacart denied that any wages due for non-productive work were due to be paid to Plaintiff even though Instacart knew that under any set of circumstances or facts, Plaintiff was entitled to be paid for each hour that he worked. Instacart has falsely denied and refused and continues to falsely deny and refuse payment for purposes of securing a material economic benefit to themselves and with the intent to annoy, harass, oppress, hinder, and defraud Plaintiff.

471.    Such a pattern, practice, and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement to recovery by Plaintiff, in a civil action pursuant to 820 Ill. Comp. Stat. Ann. 115/14 and 820 Ill. Comp. Stat. Ann. 105/12, for the amount of any such underpayments, additional damages of two percent of the amount of any such underpayments for each month following the date of payment

during which such underpayments remain unpaid, and costs and reasonable attorneys fees, as well as civil penalties against Instacart and such other legal and equitable relief as the Court deems just and proper.

472.    This claim is brought by Plaintiff Parsons on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Illinois.

<div align="center">

THIRTY-SEVENTH CAUSE OF ACTION
ILLINOIS: FAILURE TO PAY MINIMUIM WAGES
(Ill. Minimum Wage Law, 820 Ill. Comp. Stat. Ann. 105/4)

</div>

473.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

474.    Instacart, pursuant to uniform policies and practices, failed to compensate Plaintiff at a rate not less than the minimum wage for all hours worked in violation of the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. Ann. 105/4.

475.    As a result of Instacart's conduct, pursuant to 820 Ill. Comp. Stat. Ann. 104/12, Plaintiff is entitled to the amount of any such underpayments, additional damages of two percent of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid, and costs and reasonable attorneys fees, as well as civil penalties against Instacart and such other legal and equitable relief as the Court deems just and proper.

476.    This claim is brought by Plaintiff Parsons on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Illinois.

<div align="center">

THIRTY-EIGHTH CAUSE OF ACTION
ILLINOIS: FAILURE TO PAY OVERTIME WAGES
(Ill. Minimum Wage Law, 820 Ill. Comp. Stat. Ann. 105/4a)

</div>

477.    Plaintiff hereby alleges and incorporates by reference all paragraphs above as if set forth in detail herein.

478.    Plaintiff was at various times throughout his employment expected to work in excess of forty (40) hours per week. Plaintiff at various times worked in excess of 40 hours per week. At all relevant times, Instacart failed to pay Plaintiff wages when due, as required by 820 Ill. Comp. Stat. Ann. 105/4a.

479.    Such a pattern, practice and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement

to recovery by Plaintiff, in a civil action, for the unpaid balance of the amount of overtime and other compensation, additional damages of two percent of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid, and reasonable attorneys' fees and costs of suit, as well as the assessment of any other statutory penalties, pursuant to 820 Ill. Comp. Stat. Ann. 105/12.

480.    This claim is brought by Plaintiff Parsons on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Illinois.

<div align="center">

THIRTY-NINTH CAUSE OF ACTION
ILLINOIS: FAILURE TO REIMBURSE EXPENSES
(Ill. Wage Payment and Collection Act, 820 Ill. Comp. Stat. Ann. 115/4; Ill. Admin. Code tit. 56, § 300.540)

</div>

481.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

482.    Throughout his employment, Plaintiff incurred expenditures or losses related to his employment and in direct consequence of the discharge of his duties as Instacart's employee, or of his obedience to the directions of Instacart.

483.    Instacart failed to reimburse or indemnify Plaintiff for these expenditures or losses.  Items and services that Plaintiff was required to purchase include, but are not limited to gas, automotive insurance, other vehicle maintenance services, parking privileges, his smartphone, and smartphone data package.

484.    By the conduct described herein, Instacart has violated the Illinois Wage Payment and Collection Act.

485.    As a result of Instacart's violation, Plaintiff is entitled to all monetary and other damages permitted under Illinois law and any other applicable law, including, but not limited to, damages equal in amount to the expenses for which he did not receive reimbursement, additional damages of two percent of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid, and costs and reasonable attorneys fees.

486.    This claim is brought by Plaintiff Parsons on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Illinois.

<div align="center">

FORTIETH CAUSE OF ACTION
ILLINOIS: UNFAIR AND DECEPTIVE BUSINESS PRACTICES ACT

</div>

(Ill. Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/2; 815 Ill. Comp. Stat. Ann. 505/7)

487.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

488.    Instacart has engaged in unfair and deceptive business practices as set forth above. By engaging in the above-described acts and practices, Instacart has committed one or more acts of unfair competition within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/2. These acts and practices constitute a continuing and ongoing unfair and deceptive business practice and justify an award of actual damages, the issuance of an injunction, and other equitable relief pursuant to the 815 Ill. Comp. Stat. Ann. 505/10a.

### a.  Instacart's Deceptive Business Practices:

489.    Instacart's acts and practices, as described above, constitute fraudulent business practices within the meaning of 815 Ill. Comp. Stat. Ann. 505/2.

490.    As described herein, Instacart failed to keep accurate records of the hours worked by Plaintiff. At all relevant times, Instacart failed to provide Plaintiff with accurate records of pay indicating the hours worked and/or the wages paid for the hours worked.  In addition, based on fraudulent reporting of hours worked and wages paid, inaccurate information regarding state and federal deductions were provided to Plaintiff.

491.    Additionally, as described herein, Instacart represented to Plaintiff that he, alone, was responsible for the performance of his work and that he, alone, determined the method, details, and means of performing his work.  These representations were false.

492.    Intacart also represented Plaintiff was an independent contractor not entitled to the compensation and reimbursements set forth above, which was, in fact, also false.

493.    Instacart knew the falsehood of these representations and intended to, and did, induce Plaintiff's reliance thereupon.  Plaintiff relied upon the truth of the representations, causing economic harm.

494.    Plaintiff suffered concrete and identifiable economic injuries as a consequence of Instacart's misleading and fraudulent conduct, including but not limited to unpaid wages including overtime.

### b.  Instacart's Unfair Business Practices:

495.    Instacart's acts and practices, as described above, constitute unfair business practices within the meaning of 815 Ill. Comp. Stat. Ann. 505/2.  Such acts and practices were against established public policy and were pursued to attain an unjustified monetary advantage for Instacart by creating personal disadvantage and hardship to its employees.

496.    Instacart's conduct does not benefit workers or competition. Indeed, the injury to Plaintiff as a result of Instacart's conduct is far greater than any alleged countervailing benefit. Plaintiff could not have reasonably avoided the injury he suffered.

497.    The gravity of the consequences of Instacart's conduct as described above outweighs any justification, motive or reason therefore, is immoral, unethical, oppressive, unscrupulous, and is contrary to the public welfare since it transgresses civil statutes of the State of Illinois designed to protect workers from exploitation.

498.    Plaintiff has suffered injury in fact and lost money and/or property as a result of Instacart's unfair business acts and practices by, inter alia, being deprived of compensation for all hours worked including overtime and being paid at a rate substantially less than the promised amount that Instacart advertised he could make.

499.    By and through its unfair and deceptive business practices and acts described herein, Instacart has obtained valuable services from Plaintiff and has deprived Plaintiff of valuable rights and benefits guaranteed by law, all to his detriment. Plaintiff seeks an order of the Court awarding restitution, disgorgement, injunctive relief and all other relief allowed under the Illinois Unfair and Deceptive Business Practices Act.

500.    This claim is brought by Plaintiff Parsons on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Illinois.

///
///

<div align="center">

**FORTY-FIRST CAUSE OF ACTION**
**ILLINOIS: FRAUD/INTENTIONAL REPRESENTATION**
(Illinois Common Law)

</div>

501.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

502.    Instacart represented to Plaintiff that he, alone, was responsible for the performance of his work and that he, alone, determined the method, details, and means of performing his work. These representations were, in fact, false.

503.    Intacart also represented Plaintiff was an independent contractor not entitled to the compensation and reimbursements set forth above, which was, in fact, also false.

504.    Instacart, at the time it made the representations set forth above, knew the falsehood of these representations and intended to, and did, induce Plaintiff's reliance thereupon.  Plaintiff reasonably relied upon the truth of the aforementioned statements and representations in entering into and continuing in an employment relationship with Instacart according to the terms established by Instacart.  Plaintiff's reliance was a substantial factor in causing economic harm.

505.    As a direct, proximate and foreseeable result of Instacart's misrepresentations and fraudulent conduct, Plaintiff suffered concrete and identifiable economic injuries, including but not limited to unpaid wages, including overtime.

506.    This claim is brought by Plaintiff Parsons on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Illinois.

<div align="center">FORTY-SECOND CAUSE OF ACTION<br>ILLINOIS: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC<br>ADVANTAGE<br>(Illinois Common Law)</div>

507.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

508.    As alleged above, on or around September 28, 2016, Instacart renamed the "tip" option in the payment screen of its mobile app to "service."

509.    Prior to the change in the tipping structure, 50 to 60 percent of Plaintiff's income came from tips. Since the change, Plaintiff has suffered a drastic decrease in tips received.

510.    Instacart intentionally and maliciously recharacterized the tip as a "service" amount but kept it optional in order to mislead and confuse customers into believing that the extra compensation they chose to add to their bill was going to the shoppers, when in fact the money went directly to Instacart.

511.    Additionally, Instacart intentionally and maliciously created an "additional tip" option to mislead customers into believing that an "additional tip" would be duplicative of any discretionary payment they had already chosen to give. Instacart did so in order to appropriate the money customers would otherwise have chosen to give directly to their shoppers.

512.    At the time the customer entered the payment screen, an economic relationship had

formed between the customer and shopper.

513.    At the time when the customer entered the payment screen, there was a high probability of future economic benefit to the shopper in the form of tips.

514.    Instacart's changes to the app's tipping structure were an independent wrongful act in violation of the FLSA's prohibition of invalid tip-pools.

515.    At all times, Instacart had knowledge of the economic relationship formed between Plaintiff and the customers.

516.    At all times, Instacart acted intentionally and maliciously to disrupt the economic relationship between Plaintiff and the customers by interfering with Plaintiff's enjoyment of an expectancy of tips from customers.

517.    Instacart's change in its tipping structure caused actual disruption of the economic relationship between Plaintiff and the customers.

518.    As a direct, proximate, and foreseeable result of Defendant's intentional acts and conduct, Plaintiff has suffered, and will continue to suffer, economic injuries.

519.    This claim is brought by Plaintiff Parsons on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Illinois.

<div align="center">

FORTY-THIRD CAUSE OF ACTION
ILLINOIS: CONVERSION
(Illinois Common Law)

</div>

520.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

521.    Under the FLSA, tips are the property of the employees to whom they are paid. Thus, Plaintiff had a right to possess the full amount of tips given to him by customers.

522.    As alleged above, the optional "service" amount paid by customers was actually a tip.

523.    Defendants wrongfully and illegally took from Plaintiff a portion of the tips given to Plaintiff by customers.

524.    Plaintiff suffered economic harm in the amount of the tips misappropriated by Defendants.

525.    This claim is brought by Plaintiff Parsons on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Illinois.

<div align="center">

**WASHINGTON CLASS ACTION ALLEGATIONS**

</div>

526.    Plaintiff Lester asserts, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart shoppers, drivers and delivery persons who have worked in Washington anytime from December 1, 2013 to the present ("Washington Class"), claims under Washington state law, specifically, the forty-fourth through fifty-first causes of action.

527.    Plaintiff Lester and other Washington Class members have uniformly been deprived reimbursement of their necessary business expenditures and minimum and overtime wages.

528.    The members of the Washington Class are so numerous that joinder of all members would be impracticable.

529.    There are questions of law and fact common to the members of the Washington Class that predominate over any questions affecting only individual members, including:

a.    Whether Washington Class members have been required to follow uniform procedures and policies regarding their work for Instacart;

b.    Whether the work performed by Washington Class members—providing grocery shopping and/or delivery service to customers—is within Instacart's usual course of business, and whether such service is fully integrated into Instacart's business;

c.    Whether Defendants failed to pay Plaintiff for all hours of work performed in violation of Illinois law;

d.    Whether Defendants failed to reimburse Plaintiff for expenses incurred during the course of their employment;

e.    Whether Defendants' conduct violates the Washington Revised Code §§ 19.86.020, 19.86.090, 49.46.090, 49.46.020, and 49.46.130;

f.    Whether Defendants' conduct violates the Washington Administrative Code §§ 296-126-092;

g.    Whether Defendants' conduct otherwise violates Washington law; and

h.    Whether, as a result of Defendants' misconduct, Plaintiff is entitled to damages, restitution, equitable relief and/or other damages and relief, and, if so, the amount and nature of such relief.

530.    Named Plaintiff Lester is a member of the Washington Class who suffered damages as a result of Defendant's conduct and actions alleged herein.

531.    Plaintiff Lester's claims are typical of the claims of the members of the Washington Class.  Plaintiff Lester has no interests antagonistic to those of the Washington Class and is not subject to any unique defenses.

532.    Plaintiff Lester will fairly and adequately represent and protect the interests of all members of the Washington Class and has retained attorneys experienced in class action and complex litigation.

533.    The questions of law and fact common to the members of the Washington Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

534.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons:

    a.    It is economically impractical for members of the Washington Class to prosecute individual actions;

    b.    The Washington Class is readily definable;

    c.    Prosecution as a class action will eliminate the possibility of repetitious litigation; and

    d.    A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

535.    Plaintiff Lester does not anticipate any difficulty in the management of this litigation.

///

///

///

///

<div align="center">

FORTY-FOURTH CAUSE OF ACTION
WASHINGTON: UNPAID WAGES
((Wash. Rev. Code Ann. §§ 49.46.090, 49.46.020 & 49.46.130; Wash. Admin. Code § 296-126-092)

</div>

536.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

537.    Instacart has violated and continues to violate the Revised Code of Washington §§ 49.46.090, 49.46.020 & 49.46.130 by willfully refusing to pay wages – including the benefits

described above – due and payable to Plaintiff.  As more fully set forth above, Plaintiff was not compensated for non-productive hours worked.  Additionally, Plaintiff worked well in excess of 40 hours per week without being appropriately compensated for hours worked in excess of 40 hours per week.  These unpaid hours include overtime that should have been paid.

538.    Equally, Instacart denied that any wages due for non-productive work and work in excess of 40 hours per week were due to be paid to Plaintiff even though Instacart knew that under any set of circumstances or facts, Plaintiff was entitled to be paid for each hour that she worked. Instacart has falsely denied and refused and continue to deny falsely and refuse payment for purposes of securing a material economic benefit to themselves and with the intent to annoy, harass, oppress, hinder, and defraud Plaintiff.

539.    This claim is brought by Plaintiff Lester on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Washington.

<div align="center">

FORTY-FIFTH CAUSE OF ACTION
WASHINGTON: FAILURE TO PAY OVERTIME WAGES
(Wash. Rev. Code Ann. § 49.46.130)

</div>

540.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

541.    Plaintiff was expected to regularly work in excess of forty (40) hours per week.  Plaintiff regularly worked in excess of 40 hours per week. At all relevant times, Instacart failed to pay Plaintiff wages when due, as required by Wash. Rev. Code Ann. § 49.46.130. Further, Plaintiff was not compensated the additional hours of wages owed to her for each day she was not provided meal or rest breaks in accordance with Wash. Admin. Code § 296-126-092.

542.    Such a pattern, practice and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement to recovery by Plaintiff, in a civil action, for the unpaid balance of the amount of overtime and other compensation, including interest thereon, reasonable attorneys' fees and costs of suit, as well as the assessment of any other statutory penalties, including waiting time penalties, against Instacart.

543.    This claim is brought by Plaintiff Lester on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Washington.

<div align="center">

FORTY-SIXTH CAUSE OF ACTION

</div>

WASHINGTON: FAILURE TO PAY MINIMUM WAGES
(Wash. Rev. Code Ann. § 49.46.020)

544.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

545.    Instacart, pursuant to uniform policies and practices, failed to compensate Plaintiff at a rate not less than the minimum wage for all hours worked in violation of the Revised Code of Washington, including section 49.46.020.

546.    As a result of Instacart's conduct, Plaintiff is entitled to all monetary and other damages permitted under the Revised Code of Washington and any other applicable law.

547.    This claim is brought by Plaintiff Lester on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Washington.

FORTY-SEVENTH CAUSE OF ACTION
WASHINGTON: UNFAIR AND DECEPTIVE BUSINESS PRACTICES
(Wash. Rev. Code Ann. §§ 19.86.020, 19.86.090)

548.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein. Instacart has engaged in unfair and deceptive business practices as set forth above. By engaging in the above-described acts and practices, Instacart has committed one or more acts of unfair competition within the meaning of Section 19.86.020 of the Revised Code of Washington.   These acts and practices constitute a continuing and ongoing unfair and/or deceptive business activity, and justify the issuance of an injunction, restitution, and other equitable relief pursuant to Wash. Rev. Code Ann. §19.86.090.

**Instacart's Deceptive Business Practices:**

549.    Instacart's acts and practices, as described above, constitute fraudulent business practices within the meaning of Wash. Rev. Code Ann. §§ 19.86.020.

550.    As described herein, Instacart failed to keep accurate records of the hours worked by Plaintiff in violation of the FLSA, 29 U.S.C. § 211(c) and § 215(a). At all relevant times, Instacart failed to provide Plaintiff with accurate records of pay indicating the hours worked and/or the wages paid for the hours worked.  In addition, based on fraudulent reporting of hours worked and wages paid, inaccurate information regarding state and federal deductions were provided to Plaintiff.

551.    Instacart also misrepresented to Plaintiff through its advertisement on Craigslist that she could make $25 per hour.

552.    Additionally, as described herein, Instacart represented to Plaintiff that she, alone, was responsible for the performance of her work and that she, alone, determined the method, details, and means of performing her work.  These representations were false.

553.    Instacart also represented Plaintiff was an independent contractor not entitled to the compensation and reimbursements set forth above, which was, in fact, also false.

554.    Instacart knew the falsehood of these representations and intended to, and did, induce Plaintiff's reliance thereupon.  Plaintiff relied upon the truth of the representations, causing economic harm.

555.    Plaintiff suffered concrete and identifiable economic injuries as a consequence of Instacart's misleading and fraudulent conduct, including but not limited to unpaid wages, including overtime, car repair payments, and higher car insurance premiums.

### Instacart's Unfair Business Practices:

556.    Instacart's acts and practices, as described above, constitute unfair business practices within the meaning of Wash. Rev. Code Ann. § 19.86.020. Such acts and practices were against established public policy and were pursued to attain an unjustified monetary advantage for Instacart by creating personal disadvantage and hardship to its employees.

557.    Instacart's conduct does not benefit workers or competition. Indeed, the injury to Plaintiff as a result of Instacart's conduct is far greater than any alleged countervailing benefit. Plaintiff could not have reasonably avoided the injury she suffered.

558.    The gravity of the consequences of Instacart's conduct as described above outweighs any justification, motive or reason therefore, is immoral, unethical, oppressive, unscrupulous, and is contrary to the public welfare since it transgresses civil statutes of the State of Washington designed to protect workers from exploitation.

559.    Plaintiff has suffered injury in fact and lost money and/or property as a result of Instacart's unfair business acts and practices by, inter alia, being deprived of compensation for all hours worked including overtime and being paid at a rate substantially less than the $25 per hour that Instacart advertised she could make.

560.    By and through its unfair and/or deceptive practices and acts described herein, Instacart has obtained valuable services from Plaintiff and has deprived Plaintiff of valuable rights and benefits guaranteed by law, all to her detriment. Plaintiff seeks an order of the Court awarding restitution, injunctive relief and all other relief allowed under Wash. Rev. Code Ann. § 19.86.090, including reasonable attorneys' fees.

561.    This claim is brought by Plaintiff Lester on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Washington.

<div align="center">

FORTY-EIGTH CAUSE OF ACTION
WASHINGTON: FRAUD/INTENTIONAL MISREPRESENTATION
(Washington Common Law)

</div>

562.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

563.    Instacart represented to Plaintiff that she, alone, was responsible for the performance of her work and that she, alone, determined the method, details, and means of performing her work. These representations were, in fact, false.

564.    Intacart also represented Plaintiff was an independent contractor not entitled to the compensation and reimbursements set forth above, which was, in fact, also false.

565.    Instacart, at the time it made the representations set forth above, knew the falsehood of these representations and intended to, and did, induce Plaintiff's reliance thereupon.  Plaintiff reasonably relied upon the truth of the aforementioned statements and representations in entering into and continuing in an employment relationship with Instacart according to the terms established by Instacart.  Plaintiff's reliance was a substantial factor in causing economic harm.

566.    As a direct, proximate and foreseeable result of Instacart's misrepresentations and fraudulent conduct, Plaintiff suffered concrete and identifiable economic injuries, including but not limited to unpaid wages, including overtime.

567.    This claim is brought by Plaintiff Lester on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Washington.

<div align="center">

FORTY-NINTH CAUSE OF ACTION
WASHINGTON: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC
ADVANTAGE
(Washington Common Law)

</div>

568.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth

in detail herein.

569.    As alleged above, on or around September 28, 2016, Instacart renamed the "tip" option in the payment screen of its mobile app to "service."

570.    Prior to the change in the tipping structure, 50 to 60 percent of Plaintiff's income came from tips. Since the change, Plaintiff has suffered a drastic decrease in tips received.

571.    Instacart intentionally and maliciously recharacterized the tip as a "service" amount but kept it optional in order to mislead and confuse customers into believing that the extra compensation they chose to add to their bill was going to the shoppers, when in fact the money went directly to Instacart.

572.    Additionally, Instacart intentionally and maliciously created an "additional tip" option to mislead customers into believing that an "additional tip" would be duplicative of any discretionary payment they had already chosen to give. Instacart did so in order to appropriate the money customers would otherwise have chosen to give directly to their shoppers.

573.    At the time the customer entered the payment screen, an economic relationship had formed between the customer and shopper.

574.    At the time when the customer entered the payment screen, there was a high probability of future economic benefit to the shopper in the form of tips.

575.    Instacart's changes to the app's tipping structure were an independent wrongful act in violation of the FLSA's prohibition of invalid tip-pools.

576.    At all times, Instacart had knowledge of the economic relationship formed between Plaintiff and the customers.

577.    At all times, Instacart acted intentionally and maliciously to disrupt the economic relationship between Plaintiff and the customers by interfering with Plaintiff's enjoyment of an expectancy of tips from customers.

578.    Instacart's change in its tipping structure caused actual disruption of the economic relationship between Plaintiff and the customers.

579.    As a direct, proximate, and foreseeable result of Defendant's intentional acts and conduct, Plaintiff has suffered, and will continue to suffer, economic injuries.

580.    This claim is brought by Plaintiff Lester on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Washington.

FIFTIETH CAUSE OF ACTION
WASHINGTON: CONVERSION
(Washington Common Law)

581.    Plaintiff hereby realleges and incorporate by reference all paragraphs above as if set forth in detail herein.

582.    Under the FLSA, tips are the property of the employees to whom they are paid. Thus, Plaintiff had a right to possess the full amount of tips given to her by customers.

583.    As alleged above, the optional "service" amount paid by customers was actually a tip.

584.    Defendants wrongfully and illegally took from Plaintiff a portion of the tips given to Plaintiff by customers.

585.    Plaintiff suffered economic harm in the amount of the tips misappropriated by Defendants.

586.    This claim is brought by Plaintiff Lester on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Washington.

FIFTY-FIRST CAUSE OF ACTION
WASHINGTON: UNPAID WAGES FOR MEAL AND REST PERIODS
(Wash. Admin. Code § 296-126-092)

587.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

588.    Plaintiff was not properly provided with meal or rest periods as required by Washington Administrative Code § 296-126-092.

589.    Instacart required Plaintiff to work for periods of more than 5 hours per day with no provision of a meal period of at least 30 minutes. Instacart required Plaintiff to work for periods of more than 10 hours per day with no provision of a second meal period of at least 30 minutes.

590.    To the extent Instacart provided Plaintiff with a break, the break was unpaid and less than 30 minutes.

591.    Instacart required Plaintiff to work for periods of more than 4 hours per day with no provision of a rest period of at least 10 minutes.

592.    As a result of Instacart's conduct, Plaintiff is entitled to all monetary and other damages permitted under the Revised Code of Washington and any other applicable law, including, but not limited to, the full amount of unpaid wages for meal and/or rest breaks, and costs including reasonable attorney's fees, pursuant to Wash. Rev. Code Ann. § 49.46.090.

593.    This claim is brought by Plaintiff Lester on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Washington.

## INDIANA CLASS ACTION ALLEGATIONS

594.    Plaintiff Raines asserts, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart shoppers, drivers and delivery persons who have worked in Indiana anytime from December 1, 2014 to the present ("Indiana Class"), claims under Indiana state law, specifically, the fifty-two through fifty-seventh causes of action.

595.    Plaintiff Raines and other Indiana Class members have uniformly been deprived reimbursement of their necessary business expenditures and minimum and overtime wages.

596.    The members of the Indiana Class are so numerous that joinder of all members would be impracticable.

597.    There are questions of law and fact common to the members of the Indiana Class that predominate over any questions affecting only individual members, including:

a.    Whether Indiana Class members have been required to follow uniform procedures and policies regarding their work for Instacart;

b.    Whether the work performed by Indiana Class members—providing grocery shopping and/or delivery service to customers—is within Instacart's usual course of business, and whether such service is fully integrated into Instacart's business;

c.    Whether Defendants failed to pay Plaintiff for all hours of work performed in violation of Illinois law;

d.    Whether Defendants failed to reimburse Plaintiff for expenses incurred during the course of their employment;

e.    Whether Defendants' conduct violates the Indiana Minimum Wage Law, Ind. Code Ann. § 22-2-2-4;

f.    Whether Defendants' conduct otherwise violates Indiana law; and

g.    Whether, as a result of Defendants' misconduct, Plaintiff is entitled to damages, restitution, equitable relief and/or other damages and relief, and, if so, the amount and nature of such relief.

598.    Named Plaintiff Raines is a member of the Indiana Class who suffered damages as a

result of Defendant's conduct and actions alleged herein.

599.   Plaintiff Raines claims are typical of the claims of the members of the Indiana Class. Plaintiff Raines has no interests antagonistic to those of the Indiana Class and is not subject to any unique defenses.

600.   Plaintiff Raines will fairly and adequately represent and protect the interests of all members of the Indiana Class and has retained attorneys experienced in class action and complex litigation.

601.   The questions of law and fact common to the members of the Indiana Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

602.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons:

      a.     It is economically impractical for members of the Indiana Class to prosecute individual actions;

      b.     The Indiana Class is readily definable;

      c.     Prosecution as a class action will eliminate the possibility of repetitious litigation; and

      d.     A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

603.   Plaintiff Raines does not anticipate any difficulty in the management of this litigation.

<div align="center">

FIFTY-SECOND CAUSE OF ACTION
INDIANA: UNPAID WAGES
(Ind. Code Ann. §§ 22-2-5-1 & 22-2-5-2)

</div>

604.   Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

605.   Instacart has violated and continues to violate the Indiana Code §§ 22-2-5-1 and 22-2-5-2 by willfully refusing to pay wages – including the benefits described above – due and payable to Plaintiff.  As more fully set forth above, Plaintiff was not compensated for non-productive hours worked.   Additionally, Plaintiff worked well in excess of 40 hours per week without being appropriately compensated for hours worked in excess of 40 hours per week.   These unpaid hours include overtime that should have been paid.

606.   Equally, Instacart denied that any wages due for non-productive work and work in excess of 40 hours per week were due to be paid to Plaintiff even though Instacart knew that under any set of circumstances or facts, Plaintiff was entitled to be paid for each hour that he worked. Instacart has falsely denied and refused and continue to deny falsely and refuse payment for purposes of securing a material economic benefit to themselves and with the intent to annoy, harass, oppress, hinder, and defraud Plaintiff.

607.   This claim is brought by Plaintiff Raines on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Indiana.

FIFTY-THIRD CAUSE OF ACTION
INDIANA: FAILURE TO PAY MINIMUM WAGES
(Ind. Code Ann. § 22-2-2-4)

608.   Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

609.   Instacart, pursuant to uniform policies and practices, failed to compensate Plaintiff at a rate not less than the minimum wage for all hours worked in violation of the Indiana Minimum Wage Law.

610.   As a result of Instacart's conduct, Plaintiff is entitled to all monetary and other damages permitted under the Indiana Minimum Wage Law.

611.   This claim is brought by Plaintiff Raines on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Indiana.

FIFTY-FOURTH CAUSE OF ACTION
INDIANA: FAILURE TO PAY OVERTIME WAGES
(Ind. Code Ann. § 22-2-2-4)

612.   Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

613.   Plaintiff was expected to regularly work in excess of forty (40) hours per week.  Plaintiff regularly worked in excess of 40 hours per week. At all relevant times, Instacart failed to pay Plaintiff wages when due, as required by Ind. Code Ann. § 22-2-2-4.

614.   Such a pattern, practice and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement to recovery by Plaintiff, in a civil action, for the unpaid balance of the amount of overtime and other compensation, including interest thereon, an additional amount in liquidated damages, and

reasonable attorneys' fees and costs of suit, as well as the assessment of any other statutory penalties.

615.    This claim is brought by Plaintiff Raines on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Indiana.

FIFTY-FIFTH CAUSE OF ACTION
INDIANA: FRAUD/INTENTIONAL MISPREPRESENTATION
(Indiana Common Law)

616.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

617.    Instacart represented to Plaintiff that he, alone, was responsible for the performance of her work and that he, alone, determined the method, details, and means of performing his work. These representations were, in fact, false.

618.    Intacart also represented Plaintiff was an independent contractor not entitled to the compensation and reimbursements set forth above, which was, in fact, also false.

619.    Instacart, at the time it made the representations set forth above, knew the falsehood of these representations and intended to, and did, induce Plaintiff's reliance thereupon.  Plaintiff reasonably relied upon the truth of the aforementioned statements and representations in entering into and continuing in an employment relationship with Instacart according to the terms established by Instacart.  Plaintiff's reliance was a substantial factor in causing economic harm.

620.    As a direct, proximate and foreseeable result of Instacart's misrepresentations and fraudulent conduct, Plaintiff suffered concrete and identifiable economic injuries, including but not limited to unpaid wages, including overtime.

621.    This claim is brought by Plaintiff Raines on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Indiana.

FIFTY-SIXTH CAUSE OF ACTION
INDIANA: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC
ADVANTAGE
(Indiana Common Law)

622.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

623.    As alleged above, on or around September 28, 2016, Instacart renamed the "tip" option in the payment screen of its mobile app to "service."

624.   Prior to the change in the tipping structure, 50 to 60 percent of Plaintiff's income came from tips. Since the change, Plaintiff has suffered a drastic decrease in tips received.

625.   Instacart intentionally and maliciously recharacterized the tip as a "service" amount but kept it optional in order to mislead and confuse customers into believing that the extra compensation they chose to add to their bill was going to the shoppers, when in fact the money went directly to Instacart.

626.   Additionally, Instacart intentionally and maliciously created an "additional tip" option to mislead customers into believing that an "additional tip" would be duplicative of any discretionary payment they had already chosen to give. Instacart did so in order to appropriate the money customers would otherwise have chosen to give directly to their shoppers.

627.   At the time the customer entered the payment screen, an economic relationship had formed between the customer and shopper.

628.   At the time when the customer entered the payment screen, there was a high probability of future economic benefit to the shopper in the form of tips.

629.   Instacart's changes to the app's tipping structure were an independent wrongful act in violation of the FLSA's prohibition of invalid tip-pools.

630.   At all times, Instacart had knowledge of the economic relationship formed between Plaintiff and the customers.

631.   At all times, Instacart acted intentionally and maliciously to disrupt the economic relationship between Plaintiff and the customers by interfering with Plaintiff's enjoyment of an expectancy of tips from customers.

632.   Instacart's change in its tipping structure caused actual disruption of the economic relationship between Plaintiff and the customers.

633.   As a direct, proximate, and foreseeable result of Defendant's intentional acts and conduct, Plaintiff has suffered, and will continue to suffer, economic injuries.

634.   This claim is brought by Plaintiff Raines on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Indiana.

FIFTY-SEVENTH CAUSE OF ACTION
INDIANA: CONVERSION
(Indiana Common Law)

635.   Plaintiff hereby realleges and incorporate by reference all paragraphs above as if set forth

in detail herein.

636.    Under the FLSA, tips are the property of the employees to whom they are paid. Thus, Plaintiff had a right to possess the full amount of tips given to him by customers.

637.    As alleged above, the optional "service" amount paid by customers was actually a tip.

638.    Defendants wrongfully and illegally took from Plaintiff a portion of the tips given to Plaintiff by customers.

639.    Plaintiff suffered economic harm in the amount of the tips misappropriated by Defendants.

640.    This claim is brought by Plaintiff Raines on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Indiana.

**TEXAS CLASS ACTION ALLEGATIONS**

641.    Plaintiff Boven asserts, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart shoppers, drivers and delivery persons who have worked in Texas anytime from December 1, 2014 to the present ("Texas Class"), claims under Texas state law, specifically, the fifty-eighth through sixty-one causes of action.

642.    Plaintiff Boven and other Texas Class members have uniformly been deprived reimbursement of their necessary business expenditures and minimum and overtime wages.

643.    The members of the Texas Class are so numerous that joinder of all members would be impracticable.

644.    There are questions of law and fact common to the members of the Texas Class that predominate over any questions affecting only individual members, including:

a.      Whether Texas Class members have been required to follow uniform procedures and policies regarding their work for Instacart;

b.      Whether the work performed by Texas Class members—providing grocery shopping and/or delivery service to customers—is within Instacart's usual course of business, and whether such service is fully integrated into Instacart's business;

c.      Whether Defendants failed to pay Plaintiff for all hours of work performed in violation of Illinois law;

d.      Whether Defendants failed to reimburse Plaintiff for expenses incurred during the

course of their employment;

e.      Whether Defendants' conduct violates the Texas Lab. Code §§ 62.051 and 62.201;

f.      Whether Defendants' conduct otherwise violates Texas law; and

g.      Whether, as a result of Defendants' misconduct, Plaintiff is entitled to damages, restitution, equitable relief and/or other damages and relief, and, if so, the amount and nature of such relief.

645.   Named Plaintiff Boven is a member of the Texas Class who suffered damages as a result of Defendant's conduct and actions alleged herein.

646.   Plaintiff Boven's claims are typical of the claims of the members of the Texas Class. Plaintiff Boven has no interests antagonistic to those of the Texas Class and is not subject to any unique defenses.

647.   Plaintiff Boven will fairly and adequately represent and protect the interests of all members of the Texas Class and has retained attorneys experienced in class action and complex litigation.

648.   The questions of law and fact common to the members of the Texas Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

649.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons:

a.      It is economically impractical for members of the Texas Class to prosecute individual actions;

b.      The Texas Class is readily definable;

c.      Prosecution as a class action will eliminate the possibility of repetitious litigation; and

d.      A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

650.   Plaintiff Boven does not anticipate any difficulty in the management of this litigation.

<div align="center">

FIFTY-EIGHTH CAUSE OF ACTION
TEXAS: FAILURE TO PAY MINIMUM WAGES
(Texas Lab. Code §§ 62.051 & 62.201 *et seq.*)

</div>

651.   Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

652.   Instacart, pursuant to uniform policies and practices, failed to compensate Plaintiff at a rate not less than the minimum wage for all hours worked in violation of the Texas Labor Code.

653.   As a result of Instacart's conduct, Plaintiff is entitled to all monetary and other damages permitted under the Texas Labor Code, including, but not limited to, the amount of the unpaid wages plus an additional equal amount as liquidated damages, as well as reasonable attorney's fees and costs.

654.   This claim is brought by Plaintiff Boven on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Texas.

<div align="center">

FIFTY-NINTH CAUSE OF ACTION
TEXAS: FRAUD/INTENTIONAL MISPREPRESENTATION
(Texas Common Law)

</div>

655.   Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

656.   Instacart represented to Plaintiff that he, alone, was responsible for the performance of her work and that she, alone, determined the method, details, and means of performing her work. These representations were, in fact, false.

657.   Intacart also represented Plaintiff was an independent contractor not entitled to the compensation and reimbursements set forth above, which was, in fact, also false.

658.   Instacart, at the time it made the representations set forth above, knew the falsehood of these representations and intended to, and did, induce Plaintiff's reliance thereupon.  Plaintiff reasonably relied upon the truth of the aforementioned statements and representations in entering into and continuing in an employment relationship with Instacart according to the terms established by Instacart.  Plaintiff's reliance was a substantial factor in causing economic harm.

659.   As a direct, proximate and foreseeable result of Instacart's misrepresentations and fraudulent conduct, Plaintiff suffered concrete and identifiable economic injuries, including but not limited to unpaid wages, including overtime.

660.   This claim is brought by Plaintiff Boven on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Texas.

<div align="center">

SIXTIETH CAUSE OF ACTION

</div>

TEXAS: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
(Texas Common Law)

661.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

662.    As alleged above, on or around September 28, 2016, Instacart renamed the "tip" option in the payment screen of its mobile app to "service."

663.    Prior to the change in the tipping structure, 50 to 60 percent of Plaintiff's income came from tips. Since the change, Plaintiff has suffered a drastic decrease in tips received.

664.    Instacart intentionally and maliciously recharacterized the tip as a "service" amount but kept it optional in order to mislead and confuse customers into believing that the extra compensation they chose to add to their bill was going to the shoppers, when in fact the money went directly to Instacart.

665.    Additionally, Instacart intentionally and maliciously created an "additional tip" option to mislead customers into believing that an "additional tip" would be duplicative of any discretionary payment they had already chosen to give. Instacart did so in order to appropriate the money customers would otherwise have chosen to give directly to their shoppers.

666.    At the time the customer entered the payment screen, an economic relationship had formed between the customer and shopper.

667.    At the time when the customer entered the payment screen, there was a high probability of future economic benefit to the shopper in the form of tips.

668.    Instacart's changes to the app's tipping structure were an independent wrongful act in violation of the FLSA's prohibition of invalid tip-pools.

669.    At all times, Instacart had knowledge of the economic relationship formed between Plaintiff and the customers.

670.    At all times, Instacart acted intentionally and maliciously to disrupt the economic relationship between Plaintiff and the customers by interfering with Plaintiff's enjoyment of an expectancy of tips from customers.

671.    Instacart's change in its tipping structure caused actual disruption of the economic relationship between Plaintiff and the customers.

672.    As a direct, proximate, and foreseeable result of Defendant's intentional acts and conduct, Plaintiff has suffered, and will continue to suffer, economic injuries.

673.    This claim is brought by Plaintiff Boven on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Texas

<div align="center">

SIXTY-FIRST CAUSE OF ACTION
TEXAS: CONVERSION
(Texas Common Law)

</div>

674.    Plaintiff hereby realleges and incorporate by reference all paragraphs above as if set forth in detail herein.

675.    Under the FLSA, tips are the property of the employees to whom they are paid. Thus, Plaintiff had a right to possess the full amount of tips given to him by customers.

676.    As alleged above, the optional "service" amount paid by customers was actually a tip.

677.    Defendants wrongfully and illegally took from Plaintiff a portion of the tips given to Plaintiff by customers.

678.    Plaintiff suffered economic harm in the amount of the tips misappropriated by Defendants.

679.    This claim is brought by Plaintiff Boven on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Texas.

<div align="center">

**GEORGIA CLASS ACTION ALLEGATIONS**

</div>

680.    Plaintiff Nosek asserts, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart shoppers, drivers and delivery persons who have worked in Georgia anytime from December 1, 2014 to the present ("Georgia Class"), claims under Georgia state law, specifically, the sixty-second through sixty-fifth causes of action.

681.    Plaintiff Nosek and other Georgia Class members have uniformly been deprived reimbursement of their necessary business expenditures and minimum and overtime wages.

682.    The members of the Georgia Class are so numerous that joinder of all members would be impracticable.

683.    There are questions of law and fact common to the members of the Georgia Class that predominate over any questions affecting only individual members, including:

      a.    Whether Georgia Class members have been required to follow uniform procedures and policies regarding their work for Instacart;

      b.    Whether the work performed by Georgia Class members—providing grocery

<div align="center">

</div>

shopping and/or delivery service to customers—is within Instacart's usual course of business, and whether such service is fully integrated into Instacart's business;

c.       Whether Defendants failed to pay Plaintiff for all hours of work performed in violation of Illinois law;

d.       Whether Defendants failed to reimburse Plaintiff for expenses incurred during the course of their employment;

e.       Whether Defendants' conduct violates the Georgia Minimum Wage Law, Ga. Code Ann. §§ 34-4-3 and 34-4-6;

f.       Whether Defendants' conduct otherwise violates Georgia law; and

g.       Whether, as a result of Defendants' misconduct, Plaintiff is entitled to damages, restitution, equitable relief and/or other damages and relief, and, if so, the amount and nature of such relief.

684.    Named Plaintiff Nosek is a member of the Georgia Class who suffered damages as a result of Defendant's conduct and actions alleged herein.

685.    Plaintiff Nosek's claims are typical of the claims of the members of the Georgia Class. Plaintiff Nosek has no interests antagonistic to those of the Georgia Class and is not subject to any unique defenses.

686.    Plaintiff Nosek will fairly and adequately represent and protect the interests of all members of the Georgia Class and has retained attorneys experienced in class action and complex litigation.

687.    The questions of law and fact common to the members of the Georgia Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

688.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons:

a.       It is economically impractical for members of the Georgia Class to prosecute individual actions;

b.       The Georgia Class is readily definable;

c.       Prosecution as a class action will eliminate the possibility of repetitious litigation; and

d.      A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

689.    Plaintiff Nosek does not anticipate any difficulty in the management of this litigation.

<div align="center">

SIXTY-SECOND CAUSE OF ACTION
GEORGIA: FAILURE TO PAY MINIMUM WAGES
(Ga. Code Ann. §§ 34-4-3 & 34-4-6)

</div>

690.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

691.    Instacart, pursuant to uniform policies and practices, failed to compensate Plaintiff at a rate not less than the minimum wage for all hours worked in violation of Georgia law.

692.    As a result of Instacart's conduct, Plaintiff is entitled to all monetary and other damages permitted under the Georgia Minimum Wage Law, Ga. Code Ann. §§ 34-4-3, including, but not limited to, the amount of the unpaid wages plus an additional equal amount as liquidated damages, as well as reasonable attorney's fees and costs.

693.    This claim is brought by Plaintiff Nosek on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Georgia.

<div align="center">

SIXTY-THIRD CAUSE OF ACTION
GEORGIA: FRAUD/INTENTIONAL MISPREPRESENTATION
(Georgia Common Law)

</div>

694.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

695.    Instacart represented to Plaintiff that she, alone, was responsible for the performance of her work and that she, alone, determined the method, details, and means of performing her work. These representations were, in fact, false.

696.    Intacart also represented Plaintiff was an independent contractor not entitled to the compensation and reimbursements set forth above, which was, in fact, also false.

697.    Instacart, at the time it made the representations set forth above, knew the falsehood of these representations and intended to, and did, induce Plaintiff's reliance thereupon.  Plaintiff reasonably relied upon the truth of the aforementioned statements and representations in entering into and continuing in an employment relationship with Instacart according to the terms established by Instacart.  Plaintiff's reliance was a substantial factor in causing economic harm.

698.    As a direct, proximate and foreseeable result of Instacart's misrepresentations and fraudulent conduct, Plaintiff suffered concrete and identifiable economic injuries, including but not limited to unpaid wages, including overtime.

699.    This claim is brought by Plaintiff Nosek on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Georgia.

SIXTY-FOURTH CAUSE OF ACTION
GEORGIA: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
(Georgia Common Law)

700.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

701.    As alleged above, on or around September 28, 2016, Instacart renamed the "tip" option in the payment screen of its mobile app to "service."

702.    Prior to the change in the tipping structure, 50 to 60 percent of Plaintiff's income came from tips. Since the change, Plaintiff has suffered a drastic decrease in tips received.

703.    Instacart intentionally and maliciously recharacterized the tip as a "service" amount but kept it optional in order to mislead and confuse customers into believing that the extra compensation they chose to add to their bill was going to the shoppers, when in fact the money went directly to Instacart.

704.    Additionally, Instacart intentionally and maliciously created an "additional tip" option to mislead customers into believing that an "additional tip" would be duplicative of any discretionary payment they had already chosen to give. Instacart did so in order to appropriate the money customers would otherwise have chosen to give directly to their shoppers.

705.    At the time the customer entered the payment screen, an economic relationship had formed between the customer and shopper.

706.    At the time when the customer entered the payment screen, there was a high probability of future economic benefit to the shopper in the form of tips.

707.    Instacart's changes to the app's tipping structure were an independent wrongful act in violation of the FLSA's prohibition of invalid tip-pools.

708.    At all times, Instacart had knowledge of the economic relationship formed between Plaintiff and the customers.

709.    At all times, Instacart acted intentionally and maliciously to disrupt the economic relationship between Plaintiff and the customers by interfering with Plaintiff's enjoyment of an expectancy of tips from customers.

710.    Instacart's change in its tipping structure caused actual disruption of the economic relationship between Plaintiff and the customers.

711.    As a direct, proximate, and foreseeable result of Defendant's intentional acts and conduct, Plaintiff has suffered, and will continue to suffer, economic injuries.

712.    This claim is brought by Plaintiff Nosek on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Georgia.

<div align="center">

SIXTY-FIFTH CAUSE OF ACTION
GEORGIA: CONVERSION
(Georgia Common Law)

</div>

713.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

714.    Under the FLSA, tips are the property of the employees to whom they are paid. Thus, Plaintiff had a right to possess the full amount of tips given to her by customers.

715.    As alleged above, the optional "service" amount paid by customers was actually a tip.

716.    Defendants wrongfully and illegally took from Plaintiff a portion of the tips given to Plaintiff by customers.

717.    Plaintiff suffered economic harm in the amount of the tips misappropriated by Defendants.

718.    This claim is brought by Plaintiff Nosek on behalf of herself and a class of similarly situated individuals who have worked for Instacart in Georgia.

<div align="center">

**OREGON CLASS ACTION ALLEGATIONS**

</div>

719.    Plaintiff Richie asserts, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart shoppers, drivers and delivery persons who have worked in Oregon from December 1, 2010 to the present ("Oregon Class"), claims under Oregon state law, specifically, the sixty-sixth through seventy-second causes of action.

720.    Plaintiff Richie and other Oregon Class members have uniformly been deprived reimbursement of their necessary business expenditures and minimum and overtime wages.

721.    The members of the Oregon Class are so numerous that joinder of all members would be impracticable.

722.    There are questions of law and fact common to the members of the Oregon Class that predominate over any questions affecting only individual members, including:

      a.      Whether Oregon Class members have been required to follow uniform procedures and policies regarding their work for Instacart;

      b.      Whether the work performed by Oregon Class members—providing grocery shopping and/or delivery service to customers—is within Instacart's usual course of business, and whether such service is fully integrated into Instacart's business;

      c.      Whether Defendants failed to pay Plaintiff for all hours of work performed in violation of Illinois law;

      d.      Whether Defendants failed to reimburse Plaintiff for expenses incurred during the course of his employment;

      e.      Whether Defendants' conduct violates the Oregon Revised Statutes §§ 652.120, 652.200, 653.025, and 653.261;

      f.      Whether Defendants' conduct violates Rule 839-020-0050 of the Oregon Administrative Rules;

      g.      Whether Defendants' conduct otherwise violates Oregon law; and

      h.      Whether, as a result of Defendants' misconduct, Plaintiff is entitled to damages, restitution, equitable relief and/or other damages and relief, and, if so, the amount and nature of such relief.

723.    Named Plaintiff Richie is a member of the Oregon Class who suffered damages as a result of Defendant's conduct and actions alleged herein.

724.    Plaintiff Richie's claims are typical of the claims of the members of the Oregon Class. Plaintiff Richie has no interests antagonistic to those of the Oregon Class and is not subject to any unique defenses.

725.    Plaintiff Richie will fairly and adequately represent and protect the interests of all members of the Oregon Class and has retained attorneys experienced in class action and complex litigation.

726.    The questions of law and fact common to the members of the Oregon Class predominate

over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

727.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons:

    a.      It is economically impractical for members of the Oregon Class to prosecute individual actions;

    b.      The Oregon Class is readily definable;

    c.      Prosecution as a class action will eliminate the possibility of repetitious litigation; and

    d.      A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

728.    Plaintiff Richie does not anticipate any difficulty in the management of this litigation.

<div align="center">

SIXTY-SIXTH CAUSE OF ACTION
OREGON: UNPAID WAGES
(Or. Rev. Stat. Ann. §§ 652.120 & 652.200)

</div>

729.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

730.    Defendants, and each of them, have violated and continue to violate Oregon Revised Statutes §§ 652.120 and 652.200 by willfully refusing to pay wages – including the benefits described above – due and payable to Plaintiff.  As more fully set forth above, Plaintiff is not compensated for non-productive hours worked.  Additionally, Plaintiff works and has worked well in excess of 8 hours a day or 40 hours per week without being appropriately compensated for hours worked in excess of 40 hours per week and/or 8 hours per day.  These unpaid hours include overtime that should have been paid.

731.    Equally, Defendants denied that any wages due for non-productive work and work in excess of 40 hours per week and/or 8 hours per day were due to be paid to Plaintiff even though each Defendants knew that under any set of circumstances or facts, Plaintiff was entitled to be paid for each hour that they worked.  Defendants have falsely denied and refused and continue to deny falsely and refuse payment for purposes of securing a material economic benefit to themselves and with the intent to annoy, harass, oppress, hinder, and defraud Plaintiff.

732.    This claim is brought by Plaintiff Richie on behalf of himself and a class of similarly

situated individuals who have worked for Instacart in Oregon.

<div align="center">

SIXTY-SEVENTH CAUSE OF ACTION
OREGON: FAILURE TO PAY OVERTIME WAGES
(Or. Rev. Stat. Ann. §§ 653.261 & 653.055)

</div>

733.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

734.    Plaintiff has been and is expected to regularly work in excess of eight (8) hours per day and/or forty (40) hours per week.  Plaintiff has regularly worked and continue to regularly work in excess of 8 hours per day or 40 hours per week.

735.    At all relevant times, Defendants failed to pay Plaintiff and all persons similarly situated wages when due, as required by Or. Rev. Stat. Ann. §§ 653.261 & 653.055.

736.    Such a pattern, practice and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement to recovery by the Plaintiff, in a civil action, for the unpaid balance of the amount of overtime and other compensation, including interest thereon, civil penalties, including, but not limited to, penalties available under Oregon Revised Statutes § 652.150 and reasonable attorneys' fees and costs of suit, as well as the assessment of any other statutory penalties, against Defendants.

737.    This claim is brought by Plaintiff Richie on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Oregon.

<div align="center">

SIXTY-EIGHTH CAUSE OF ACTION
OREGON: FAILURE TO PAY MINIMUM WAGES
(Or. Rev. Stat. Ann. §§ 653.025 & 653.055)

</div>

738.    Plaintiff realleges and incorporates the above allegations by reference as if set forth fully herein.

739.    Defendants, and each of them, pursuant to uniform policies and practices, failed to compensate Plaintiff at a rate not less than the minimum wage for all hours worked in violation of the Oregon Revised Statutes § 653.025.

740.    As a result of Defendants' conduct, Plaintiff is entitled to all monetary and other damages permitted under the Oregon Revised Statutes and any other applicable law, including, but not limited to, civil penalties pursuant to Oregon Revised Statutes § 652.150.

741.    This claim is brought by Plaintiff Richie on behalf of themselves and a class of similarly situated individuals who have worked for Instacart in Oregon.

SIXTY-NINTH CAUSE OF ACTION
OREGON: FAILURE TO PAY WAGES FOR MEAL PERIODS AND REST PERIODS
(Or. Rev. Stat. Ann. §§ 653.025; Or. Admin. R. 839-020-0050)

742.    Plaintiff realleges and incorporates the above allegations by reference as if set forth fully herein.

743.    Defendants have required and continue to require Plaintiff to work for periods of more than 6 hours per day with no provision of a meal period of at least 30 minutes.

744.    Defendants have required and continue to require Plaintiff to work for periods of more than 8 hours per day with no provision of a second meal period of at least 30 minutes.

745.    Defendants have required and continue to require Plaintiff to work for periods of more than 4 hours per day with no provision of a rest period of at least 10 minutes.

746.    Plaintiff was not properly provided with meal or rest periods as required by Oregon Revised Statutes § 653.025, and Oregon Administrative Rules, Rule 839-020-0050..

747.    As a result of Defendants' conduct, Plaintiff is entitled to all monetary and other damages permitted under the Oregon Revised Statutes and any other applicable law, including, but not limited to, civil penalties pursuant to Oregon Revised Statutes § 652.150.

748.    This claim is brought by Plaintiff Richie on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Oregon.

SEVENTIETH CAUSE OF ACTION
OREGON: FRAUD/INTENTIONAL MISPREPRESENTATION
(Oregon Common Law)

749.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

750.    Instacart represented to Plaintiff that he, alone, was responsible for the performance of her work and that he, alone, determined the method, details, and means of performing his work. These representations were, in fact, false.

751.    Intacart also represented Plaintiff was an independent contractor not entitled to the compensation and reimbursements set forth above, which was, in fact, also false.

752.    Instacart, at the time it made the representations set forth above, knew the falsehood of these representations and intended to, and did, induce Plaintiff's reliance thereupon.  Plaintiff reasonably relied upon the truth of the aforementioned statements and representations in entering

into and continuing in an employment relationship with Instacart according to the terms established by Instacart.  Plaintiff's reliance was a substantial factor in causing economic harm.

753.    As a direct, proximate and foreseeable result of Instacart's misrepresentations and fraudulent conduct, Plaintiff suffered concrete and identifiable economic injuries, including but not limited to unpaid wages, including overtime.

754.    This claim is brought by Plaintiff Richie on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Oregon.

<div align="center">

SEVENTY-FIRST CAUSE OF ACTION
OREGON: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
(Oregon Common Law)

</div>

755.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

756.    As alleged above, on or around September 28, 2016, Instacart renamed the "tip" option in the payment screen of its mobile app to "service."

757.    Prior to the change in the tipping structure, 50 to 60 percent of Plaintiff's income came from tips. Since the change, Plaintiff has suffered a drastic decrease in tips received.

758.    Instacart intentionally and maliciously recharacterized the tip as a "service" amount but kept it optional in order to mislead and confuse customers into believing that the extra compensation they chose to add to their bill was going to the shoppers, when in fact the money went directly to Instacart.

759.    Additionally, Instacart intentionally and maliciously created an "additional tip" option to mislead customers into believing that an "additional tip" would be duplicative of any discretionary payment they had already chosen to give. Instacart did so in order to appropriate the money customers would otherwise have chosen to give directly to their shoppers.

760.    At the time the customer entered the payment screen, an economic relationship had formed between the customer and shopper.

761.    At the time when the customer entered the payment screen, there was a high probability of future economic benefit to the shopper in the form of tips.

762.    Instacart's changes to the app's tipping structure were an independent wrongful act in violation of the FLSA's prohibition of invalid tip-pools.

763.    At all times, Instacart had knowledge of the economic relationship formed between Plaintiff and the customers.

764.    At all times, Instacart acted intentionally and maliciously to disrupt the economic relationship between Plaintiff and the customers by interfering with Plaintiff's enjoyment of an expectancy of tips from customers.

765.    Instacart's change in its tipping structure caused actual disruption of the economic relationship between Plaintiff and the customers.

766.    As a direct, proximate, and foreseeable result of Defendant's intentional acts and conduct, Plaintiff has suffered, and will continue to suffer, economic injuries.

767.    This claim is brought by Plaintiff Richie on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Oregon.

<div align="center">

SEVENTY-SECOND CAUSE OF ACTION
OREGON: CONVERSION
(Oregon Common Law)

</div>

768.    Plaintiff hereby realleges and incorporate by reference all paragraphs above as if set forth in detail herein.

769.    Under the FLSA, tips are the property of the employees to whom they are paid. Thus, Plaintiff had a right to possess the full amount of tips given to her by customers.

770.    As alleged above, the optional "service" amount paid by customers was actually a tip.

771.    Defendants wrongfully and illegally took from Plaintiff a portion of the tips given to Plaintiff by customers.

772.    Plaintiff suffered economic harm in the amount of the tips misappropriated by Defendants.

773.    This claim is brought by Plaintiff Richie on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Oregon.

**MASSACHUSETTS CLASS ACTION ALLEGATIONS**

774.    Plaintiff Kendrick asserts, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart shoppers, drivers and delivery persons who have worked in Massachusetts anytime from December 1, 2013 to the present ("Massachusetts Class"), claims under Massachusetts state law, specifically, the seventy-

third through seventy-seventh causes of action.

775.   Plaintiff Kendrick and other Massachusetts Class members have uniformly been deprived reimbursement of their necessary business expenditures and minimum and overtime wages.

776.   The members of the Massachusetts Class are so numerous that joinder of all members would be impracticable.

777.   There are questions of law and fact common to the members of the Massachusetts Class that predominate over any questions affecting only individual members, including:

a.      Whether Massachusetts Class members have been required to follow uniform procedures and policies regarding their work for Instacart;

b.      Whether the work performed by Massachusetts Class members—providing grocery shopping and/or delivery service to customers—is within Instacart's usual course of business, and whether such service is fully integrated into Instacart's business;

c.      Whether Defendants failed to pay Plaintiff for all hours of work performed in violation of Illinois law;

d.      Whether Defendants failed to reimburse Plaintiff for expenses incurred during the course of their employment;

e.      Whether Defendants' conduct violates Chapter 151 of the Massachusetts Annotated Laws, §§ 1, 1A, 1B, and 20;

f.      Whether Defendants' conduct otherwise violates Massachusetts law; and

g.      Whether, as a result of Defendants' misconduct, Plaintiff is entitled to damages, restitution, equitable relief and/or other damages and relief, and, if so, the amount and nature of such relief.

778.   Named Plaintiff Kendrick is a member of the Massachusetts Class who suffered damages as a result of Defendant's conduct and actions alleged herein.

779.   Plaintiff Kendrick's claims are typical of the claims of the members of the Massachusetts Class.  Plaintiff Kendrick has no interests antagonistic to those of the Massachusetts Class and is not subject to any unique defenses.

780.   Plaintiff Kendrick will fairly and adequately represent and protect the interests of all members of the Massachusetts Class and has retained attorneys experienced in class action and complex litigation.

781.   The questions of law and fact common to the members of the Massachusetts Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

782.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons:

a.   It is economically impractical for members of the Massachusetts Class to prosecute individual actions;

b.   The Massachusetts Class is readily definable;

c.   Prosecution as a class action will eliminate the possibility of repetitious litigation; and

d.   A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

783.   Plaintiff Kendrick does not anticipate any difficulty in the management of this litigation.

## SEVENTY-THIRD CAUSE OF ACTION
## MASSACHUSETTS: FAILURE TO PAY OVERTIME WAGES
### (Mass. Ann. Laws ch. 151, §§ 1A, 1B & 20)

784.   Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

785.   Plaintiff has been and are expected to regularly work in excess of forty (40) hours per week.  Plaintiff has regularly worked and continue to regularly work in excess 40 hours per week.

786.   At all relevant times, Defendants failed to pay Plaintiff and all persons similarly situated wages when due, as required by Mass. Ann. Laws ch. 151, §§ 1A, 1B, & 20.

787.   Such a pattern, practice and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement to recovery by the Plaintiff, in a civil action, for the unpaid balance of the amount of overtime and other compensation, including interest thereon, reasonable attorneys' fees and costs of suit, as well as treble damages for each day Plaintiff was uncompensated.

788.   This claim is brought by Plaintiff Kendrick on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Massachusetts.

## SEVENTY-FOURTH CAUSE OF ACTION
## MASSACHUSETTS: FAILURE TO PAY MINIMUM WAGES
### (Mass. Ann. Laws ch. 151, § § 1 & 20)

789.   Plaintiff realleges and incorporate the above allegations by reference as if set forth fully herein.

790.   Defendants, and each of them, pursuant to uniform policies and practices, failed to compensate Plaintiff at a rate not less than the minimum wage for all hours worked in violation of the Chapter 151 of Massachusetts Annotated Laws, including sections 1 and 20.

791.   As a result of Defendants' conduct, Plaintiff is entitled to all monetary and other damages permitted under the Massachusetts Annotated Laws and any other applicable law.

792.   This claim is brought by Plaintiff Kendrick on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Massachusetts.

### SEVENTY-FIFTH CAUSE OF ACTION
### MASSACHUSETTS: FRAUD/INTENTIONAL MISPREPRESENTATION
#### (Massachusetts Common Law)

793.   Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

794.   Instacart represented to Plaintiff that he, alone, was responsible for the performance of her work and that she, alone, determined the method, details, and means of performing her work. These representations were, in fact, false.

795.   Intacart also represented Plaintiff was an independent contractor not entitled to the compensation and reimbursements set forth above, which was, in fact, also false.

796.   Instacart, at the time it made the representations set forth above, knew the falsehood of these representations and intended to, and did, induce Plaintiff's reliance thereupon.  Plaintiff reasonably relied upon the truth of the aforementioned statements and representations in entering into and continuing in an employment relationship with Instacart according to the terms established by Instacart.  Plaintiff's reliance was a substantial factor in causing economic harm.

797.   As a direct, proximate and foreseeable result of Instacart's misrepresentations and fraudulent conduct, Plaintiff suffered concrete and identifiable economic injuries, including but not limited to unpaid wages, including overtime.

798.   This claim is brought by Plaintiff Kendrick on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Massachusetts.

### SEVENTY-SIXTH CAUSE OF ACTION
### MASSACHUSETTS: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC
### ADVANTAGE

(Massachusetts Common Law)

799.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

800.    As alleged above, on or around September 28, 2016, Instacart renamed the "tip" option in the payment screen of its mobile app to "service."

801.    Prior to the change in the tipping structure, 50 to 60 percent of Plaintiff's income came from tips. Since the change, Plaintiff has suffered a drastic decrease in tips received.

802.    Instacart intentionally and maliciously recharacterized the tip as a "service" amount but kept it optional in order to mislead and confuse customers into believing that the extra compensation they chose to add to their bill was going to the shoppers, when in fact the money went directly to Instacart.

803.    Additionally, Instacart intentionally and maliciously created an "additional tip" option to mislead customers into believing that an "additional tip" would be duplicative of any discretionary payment they had already chosen to give. Instacart did so in order to appropriate the money customers would otherwise have chosen to give directly to their shoppers.

804.    At the time the customer entered the payment screen, an economic relationship had formed between the customer and shopper.

805.    At the time when the customer entered the payment screen, there was a high probability of future economic benefit to the shopper in the form of tips.

806.    Instacart's changes to the app's tipping structure were an independent wrongful act in violation of the FLSA's prohibition of invalid tip-pools.

807.    At all times, Instacart had knowledge of the economic relationship formed between Plaintiff and the customers.

808.    At all times, Instacart acted intentionally and maliciously to disrupt the economic relationship between Plaintiff and the customers by interfering with Plaintiff's enjoyment of an expectancy of tips from customers.

809.    Instacart's change in its tipping structure caused actual disruption of the economic relationship between Plaintiff and the customers.

810.    As a direct, proximate, and foreseeable result of Defendant's intentional acts and conduct, Plaintiff has suffered, and will continue to suffer, economic injuries.

811.    This claim is brought by Plaintiff Kendrick on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Massachusetts.

<div align="center">

SEVENTY-SEVENTH CAUSE OF ACTION
MASSACHUSETTS: CONVERSION
(Massachusetts Common Law)

</div>

812.    Plaintiff hereby realleges and incorporate by reference all paragraphs above as if set forth in detail herein.

813.    Under the FLSA, tips are the property of the employees to whom they are paid. Thus, Plaintiff had a right to possess the full amount of tips given to her by customers.

814.    As alleged above, the optional "service" amount paid by customers was actually a tip.

815.    Defendants wrongfully and illegally took from Plaintiff a portion of the tips given to Plaintiff by customers.

816.    Plaintiff suffered economic harm in the amount of the tips misappropriated by Defendants.

817.    This claim is brought by Plaintiff Kendrick on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Massachusetts.

///

///

///

///

///

///

///

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, pray for judgment against Defendants as follows:

A.     An order certifying this case as a class action and appointing Plaintiffs Husting, Clayton, Armstrong, Weidner, Connolly, Parsons, Raines, Lester, Boven, Nosek, Richie, and Kendrick, and their counsel to represent the Class;

B.     For a declaration that the arbitration provision in the Independent Contractor Agreement is unenforceable under the National Labor Relations Act and *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016);

C.     For a declaratory judgment that the practices complained of herein are unlawful under the FLSA;

D.     For a declaratory judgment that the practices complained of herein are unlawful under appropriate state law;

E.     For actual and compensatory damages according to proof pursuant to the FLSA; the California Labor Code, applicable California IWC Orders; the New York Labor Law, applicable New York codes, rules, and regulations; Pennsylvania law and applicable codes, rules, orders, and regulations;  Colorado law and applicable code, rules, orders, and regulations; Illinois law and applicable code, rules, orders, and regulations, and all other applicable laws and regulations; Washington law and applicable code, rules, orders, and regulations, and all other applicable laws and regulations; Indiana law and applicable code, rules, orders, and regulations, and all other applicable laws and regulations; Texas law and applicable code, rules, orders, and regulations, and all other applicable laws and regulations; Georgia law and applicable code, rules, orders, and regulations, and all other applicable laws and regulations; Oregon law and applicable code, rules, orders, and regulations, and all other applicable laws and regulations; and Massachusetts law and applicable code, rules, orders, and regulations, and all other applicable laws and regulations.

F.     For restitution and disgorgement to the extent permitted by applicable law;

G.     For an order enjoining Defendants from continuing to engage in the conduct described herein;

H.     For civil and statutory penalties available under applicable law;

I.     For pre-judgment and post-judgment interest;

J.     For an award of attorneys' fees, costs and expenses as authorized by applicable law; and

K.   For punitive damages according to proof;

L.   For such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all causes of action so triable.

_____

Robert S. Arns (SBN 65071)
Jonathan E. Davis (SBN 191346)
Julie C. Erickson (SBN 293111)
515 Folsom Street, Third Floor
San Francisco, CA 94105
Telephone: (415) 495-7800
Facsimile: (415) 495-7888